# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TWANA AHMED, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:23-cv-02823 |
| | : | |
| v. | : | Hon. Judge Lee H. Rosenthal |
| | : | |
| UNIVERSAL PROTECTION SERVICE, | : | |
| LP d/b/a ALLIED UNIVERSAL | : | |
| SECURITY SERVICES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

### DEFENDANT UNIVERSAL PROTECTION SERVICE LP'S
### MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

Consistent with Fed. R. Civ. P. 39(a)(2), Defendant Universal Protection Service, LP d/b/a Allied Universal Security Services ("Allied Universal"), moves this Court to strike Plaintiff Twana Ahmed's demand for a trial by jury because Plaintiff knowingly, voluntarily, and intelligently executed a jury waiver. The parties conferred on October 3, 2024, and were unable to agree on disposition. In support of its motion, Allied Universal respectfully submits the following:

### RELEVANT BACKGROUND

On December 15, 2021, Plaintiff completed a series of new hire documents as part of his onboarding process with Allied Universal. *See* **Exhibit A** (Plaintiff's new hire checklist). Plaintiff electronically signed this checklist to acknowledge his receipt and completion of the required new hire documents. *See id*. As indicated, the documents – or "items" – are designed to help new employees become familiar with Allied Universal's policies and procedures, including designation of payroll elections, tax withholdings, voluntary self-disclosure forms, and receipt of its employee handbook. *See id*.

1

The same day, and as included in his new hire documents, Plaintiff electronically signed a separate document entitled "Arbitration Policy and Agreement" (the "Agreement"). *See* **Exhibit B** (Plaintiff's Agreement). The Agreement is six-and-one-half pages long, printed in English, and contains enumerated paragraphs one through 17 with each paragraph heading printed in bold and underline format. *See id*. Acceptance of the bilateral Agreement was not a mandatory condition of employment; however, in signing the Agreement, Plaintiff acknowledged receipt, the intent to be bound, and specifically that he was provided the opportunity to read, ask questions, and understood the Agreement. *See id*., ¶ 3, and pp. 6-7. Plaintiff further acknowledged that he could read and understand English. *See id*., p. 7; *see also,* **Exhibit C** (Pl. Dep., p. 13:11-23; 264:5-19) (describing ability understand English, including as a linguistic translator for the U.S. Armed Forces).[1] Plaintiff graduated high school and obtained professional certifications, including as a commissioned security officer. *See* **Ex. C** (Pl. Dep., pp. 262:1-6; 263:2-15).

The Agreement contained an express and conspicuous jury waiver, styled in the same font typeface, size, bolding, and underline:

> 14. **<u>Waiver of Trial By Judge or Jury:</u>** The Parties understand and fully agree that by entering into this Agreement providing for binding arbitration, they are giving up their right to have a trial in front of a judge or jury. The Parties anticipate that by entering this Agreement they will gain the benefits of a speedy, impartial dispute resolution procedure.

*See* **Ex. B**, ¶ 14. The Agreement further explained Plaintiff's right to opt out, the procedures for doing so, and the results of acceptance. *See id*., ¶ 3. Plaintiff was informed and encouraged to "consult with counsel of [his] choice concerning this Agreement" before signing. *See id*. Plaintiff

---

[1] On September 3, 2024, Allied Universal served Plaintiff with a Notice of Videotaped Deposition. Included in this notice was a request for written notification if Plaintiff required/preferred the use of an interpreter. Allied Universal did not receive such notification. On September 19, 2024, Allied Universal took Plaintiff's deposition exclusively using the English language. Plaintiff testified for approximately six hours and fifty-three minutes responding to Allied Universal, and further testified for approximately forty-six minutes responding to his counsel.

did not exercise his right to opt out of the Agreement, thereby acknowledging his acceptance and agreement to enforcement of a jury waiver. *See id*, p. 7; **Ex. C** (Pl. Dep., pp. 57:9-24; 59:22-25).

On June 26, 2023, Plaintiff initiated a lawsuit[2] against Allied Universal alleging it subjected him to unlawful discrimination and retaliation because of his race, ancestry, national origin, and religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, and Chapter 21 of the Texas Labor Code, and demanded a jury trial. *See* ECF No. 1-1, pp. 4, ¶ 1; 19, ¶ 85. Allied Universal reserved its right to compel individual arbitration of claims and/or to file a motion to strike Plaintiff's jury demand. *See* ECF No. 2, p. 25. Accordingly, Allied Universal respectfully moves this Court to enforce Plaintiff's knowing, voluntary, and intelligent waiver and strike Plaintiff's demand for trial by jury.

## LEGAL STANDARD

The right of trial by jury in civil actions is a protected right and its availability in federal court is a question of federal law. U.S. Const. amend. VII; *Simler v. Conner*, 372 U.S. 221, 222 (1963); *Whitney Nat'l Bank v. Air Ambulance by B & C Flight Mgmt. Inc.*, No. CIV.A. H-04-2220, 2006 WL 3741903, at *3 (S.D. Tex. Dec. 15, 2006) (Rosenthal, J.). This right, however, can be waived by the parties' prior written consent. *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 813 (N.D. Tex. 2002) (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986)). Parties may challenge whether the right to a jury trial exists by motion. *See* Fed. R. Civ. P. 39(a)(2). Although a presumption against waiver is recognized, courts will generally enforce the agreement if the written waiver is made knowingly, voluntarily, and intelligentially. *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 3d 598, 619 (N.D. Tex. 2018)

---

[2] Despite Plaintiff's execution and agreement to an enforceable jury waiver, Plaintiff filed his Original Petition in the Harris County District Court. Allied Universal removed this case to this Court on August 1, 2023. *See* ECF No. 1.

(citing *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998)); *Harris v. G4S Security Sols. (USA), Inc.*, No. CV H-22-2837, 2023 WL 2090293, at *1 (S.D. Tex. Feb. 16, 2023) (Lake, J.); *Whitney Nat'l Bank*, 2006 WL 3741903, at *3. The party seeking enforcement of a waiver bears the burden of showing it was knowingly, voluntarily, and intelligently made. *RDO Financial*, 191 F. Supp. 2d at 813.

In deciding whether a waiver was knowingly, voluntarily, and intelligently made, courts within the Fifth Circuit consider the: (1) negotiability; (2) conspicuousness of the waiver provision; (3) relative bargaining power; and (4) business acumen or professional experience of the opposing party. *See*, *e.g.*, S*ervicios Comerciales*, 328 F. Supp. 3d at 619-20; *RDO Financial*, 191 F. Supp. 2d at 813-14; *Seven Seas Petroleum, Inc. v. CIBC World Markets Corp.*, 2012 WL 175415, at *2 (S.D. Tex. Jan. 20, 2012) (Atlas, J.); *Whitney Nat'l Bank*, 2006 WL 3741903, at *3. As applied here, these factors weigh in favor of enforcement.

## ARGUMENT AND CITATION TO AUTHORITY

### I. **Plaintiff Knowingly, Voluntarily, and Intelligently Waived His Right to a Jury**.

Plaintiff knowingly, voluntarily, and intelligently waived his right to a jury when he signed an express plain language waiver during his employment with Allied Universal. *See* **Exs. B**; **C** (Pl. Dep., pp. 57:9-24; 59:22-25).

#### A. The Employment Agreement was Negotiable.

The negotiability of an employment agreement is not contingent upon a showing that the parties negotiated, rather that the party opposing had the *opportunity* to negotiate. *Jones v. Tubal-Cain Hydraulic Sols., Inc.*, No. 4:16-CV-01282, 2017 WL 3887235, at *2 (S.D. Tex. Sept. 5, 2017) (Harmon, J.); *see Zavala v. Aaron's, Inc.*, No. 4:15-CV-123, 2015 WL 5604766, at *3 (E.D. Tex. Sept. 23, 2015) (Mazzant, J.) ("just because the terms of an agreement were not negotiated does

4

not mean that the agreement is not negotiable"); *see also, Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (rejecting argument against negotiability of a waiver provision where employees "feared that they would not get the job unless their signed"); *Jeffrey J. Glaser, MSD, P.A. v. Compass Bank, N.A.*, 2010 WL 11553124, at *3 (E.D. Tex. July 14, 2010) (Mazzant, J.) (rejecting argument against negotiability because the opposing party "was never informed that the contract terms were negotiable").

In evaluating negotiability of an employment agreement, one indicator of such opportunity is the unilateral or bilateral nature of the waiver provision. *RDO Financial*, 191 F. Supp. 2d at 814; *Miramontes v. Peratons Inc.*, No. 3:21-CV-3019-B, 2022 WL 17364263, at *3 (N.D. Tex. Dec. 1, 2022) (Boyle, J.). When a term or provision binds only one party, this generally suggests the party "lacked a realistic opportunity to negotiate." *RDO Financial*, 191 F. Supp. 2d at 814. However, a term or provision binding on both parties suggests the parties "had a meaningful opportunity to negotiate." *Miramontes*, 2022 WL 17364263, at *3.

The waiver executed by Plaintiff includes bilateral agreement and supports enforcing waiver. *See* **Ex. B**, ¶ 14 ("The Parties understand and fully agree"). The meaning of the express language is clear, Allied Universal was also bound, and it too was forfeiting its right to a jury trial. Notwithstanding the bilateral waiver, Plaintiff additionally had the opportunity to opt out. *See id.*, ¶ 3 ("neither you nor the Company will be bound" if Plaintiff elected to opt out). This provision, although unilateral in favor of Plaintiff, further supports enforcing waiver because Plaintiff could have elected to opt out without consequence. *See id.* (agreement "is not a mandatory condition of employment").

### B. The Waiver Provision is Conspicuous.

Assessment of the conspicuousness of a waiver provision is made on a case-by-case basis

and accounts for factors such as "the typeface, the length of the document, and the location of the waiver clause." *Miramontes*, 2022 WL 17364263, at *3 (citation omitted). Consideration is given to whether waiver clauses have labeled headings. *See Servicios Comerciales*, 328 F. Supp. 3rd at 611 (finding waiver with labeled heading, capital lettering, and bold-faced font to be conspicuous); *BMC Software, Inc. v. Int'l Bus. Machines Corp.*, No. CV H-17-2254, 2018 WL 7291425, at *4 (S.D. Tex. Aug. 30, 2018) (Johnson, Mag. J.) (capital letters, clear headings, and placement near a signature line favor enforcement).

The Agreement is six-and-one-half pages long, printed in English, and contains enumerated paragraphs one through 17 with each paragraph heading printed in bold and underline format. *See* **Ex. B**. Distinguished by a separate paragraph heading, the font size of the jury waiver is identical in size to the rest of the Agreement. *See id.*, ¶ 14 ("Waiver of Trial by Judge or Jury"). The waiver language is not fine print or otherwise illegible. *See id.*; *see also, Glasser*, 2010 WL 11553124, at *2 (upholding jury waiver because the language was in the "same font as the rest of the text" of the agreements); *cf. RDO Financial*, 191 F. Supp. 2d at 814 (waiver was not conspicuous because the paragraph containing the waiver was "printed in a very small font making it difficult, if not impossible, for the average person to read"). The waiver provision is concisely and clearly stated, near the signature line, in a directly conspicuous style enough for enforcement.

### C. The Parties had Equal Bargaining Power.

Inequality in the respective bargaining positions and power between the parties can be a basis for invalidating a jury waiver provision. *Zavala*, 2015 WL 5604766, at *3. However, the "bargaining differential must be the kind of extreme bargaining disadvantage or gross disparity in bargaining position that occurs only in certain exceptional situations." *Miramontes*, 2022 WL 17364263, at *4 (citing *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 56 F. Supp. 2d 694,

6

709 (E.D. La. 1999)). A court may consider whether the party opposing was represented by an attorney; however, it is not necessary that the party consulted an attorney, rather that the party had the *opportunity* to do so. *See Servicios Comerciales*, 328 F. Supp. 3rd at 620 (inquiry into legal representation is subsumed within assessment of bargaining disparity and business or professional acumen); *Williams v. Aire Serv, LLC*, No. 6:18-CV-00304, 2019 WL 13150025, at *4 (W.D. Tex. June 12, 2019) (Manske, Mag. J.) (enforcement of waiver provision supported where plaintiff was informed of opportunity to consult with counsel despite decision to forego legal representation).

As applied in the employer-employee context, the inherent disparity that is the inevitable consequence of that relationship itself does not automatically render a waiver unenforceable. *Miramontes*, 2022 WL 17364263m at *4; *see Zavala*, 2015 WL 5604766, at *3 ("the relative bargaining positions of the parties in their roles as employer and employee are not so disparate as to render the jury waiver unenforceable under these circumstances alone"); *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1295 (M.D. Fla. 2010) (waiver is not unenforceable just because one party is a corporation and the other is an individual). Even when presented on a "take it or leave it" basis, it may still be enforceable. *Miramontes*, 2022 WL 17364263, at *4. The mere "possibility of being fired/not hired alone is not sufficient to constitute the type of disparity in bargaining position that would nullify [a jury waiver]." *Zavala*, 2015 WL 5604766, at *3 n.1.

In practice, the required "gross disparity in bargaining power" occurs only in certain exceptional circumstances. *See Williams*, 2019 WL 13150023, at *3 ("only when the party with less bargaining power is completely unable to reject the terms of the agreement, even if those terms are utterly unacceptable"); *Zavala*, 2015 WL 5604766, at *3 (situations where an employee "could not have found employment with another company that did not require a jury trial waiver"); *Jones*, 2017 WL 3887235, at *3 (gross disparity may be found when employee's "personal circumstances

7

were dire, he was under duress, or had no other option than to accept the job on the terms [the employer] offered"); *see also*, *MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-444, 2020 WL 4370138, at *2 (W.D. Tex. July 30, 2020) (Pitman, J.) ("a unilateral jury waiver suggests a sufficient disparity of bargaining power").

No gross disparity existed here. Plaintiff has not plead any facts to suggest that his situation was extreme or exceptional, that his personal circumstances were dire, that he was under duress, or that he had no other option than to accept employment with Allied Universal on the terms offered. Indeed, the terms offered were negotiable. Plaintiff had an express and conspicuous opportunity to opt out of the Agreement. *See* **Ex. B**, ¶ 3 ("Arbitration is not a mandatory condition of employment with the Company"). Plaintiff was further informed and afforded the opportunity to consult with counsel of his choice prior to his acceptance. *See id*., p. 2 ("You have the right to consult with counsel or your choice concerning this Agreement"). Additionally, the waiver provision is bilateral and equally binding and enforceable against Allied Universal. *See id*., ¶ 14 ("The Parties understand and fully agree that […] they are giving up their right to have a trial in front of a judge or jury"). The relative bargaining power, therefore, heavily weighs in support of enforcing the waiver provision.

### D. Plaintiff had Sufficient Business Acumen or Professional Experience.

Plaintiff is experienced and sophisticated enough to comprehend the import of the language contained in the Agreement, including the waiver provision. Courts routinely consider the business and professional experience, including education level, of the party seeking to avoid enforcement of a waiver. *Miramontes*, 2022 WL 17364263, at *4. The use of clear, routine, and unsophisticated language in the jury waiver provision is sufficient for the party to have ordinary sophistication. *See*, *Zavala* 2015 WL 5604766, at *2 ("An understanding of the clear and unambiguous language

of the jury waiver requires no extraordinary level of sophistication"); *Glaser*, 2010 WL 11553124, at *2 (legal training is not required to have sufficient sophistication); *see also*, *Jones*, 2017 WL 3887235, at *4 (unambiguous language weighed in favor of enforcement despite plaintiff not being "uniquely qualified" to appreciate consequence of waiver).

The consequence of the Agreement could not have been clearer and is easily understood by an ordinarily sophisticated person. Allied Universal employed Plaintiff as an armed security professional requiring a "Commissioned Security Officer" license issued by the State of Texas. Tex. Occ. Code § 1702.161 ("Security Officer Commission Requirements"); *see generally*, license and registration requirements at https://www.dps.texas.gov/section/private-security (last accessed October 27, 2024). In this capacity, Plaintiff was entrusted with carrying a firearm during the performance and execution of his job duties. The commission would not have issued if Plaintiff was incapable of exercising sound judgment with respect to the proper use and storage of a firearm. Tex. Occ. Code § 1702.163(b)(2). By the very nature of the licensing requirements for his position, Plaintiff is of minimal sophistication required to appreciate the comport of a waiver provision.

However, Plaintiff is of more than ordinary sophistication. Plaintiff graduated from high school. *See* **Ex. C** (Pl. Dep., p. 262:1-6). He speaks three languages – Kurdish, Arabic, and English – and acknowledged that he reads and understands the English language "well." *See id*. (Pl. Dep., p. 13:11-23). Plaintiff further holds, or held, other professional or personal certifications including as a noncommissioned security officer, for the operation of a forklift, and for the safe performance of cardiopulmonary resuscitation. *See id*. (Pl. Dep., p. 263:2-15). Additionally, Plaintiff served in a civilian capacity as a linguistic translator for the U.S. Army and the U.S. Marine Corps. *See id*. (Pl. Dep., p. 264:5-19). His ability to speak multiple languages and professional experience with language translation, each alone and certainly in conjunction, clearly demonstrate that Plaintiff had

9

sufficient business acumen or professional experience to comprehend the comport of signing the waiver provision and heavily weighs in support of enforcement.

## II. The Parties Agreed to an Enforceable Jury Waiver.

This motion reminds us that "the smallest of word and punctuation choices may matter the most." *Navigators Ins. Co. v. Rio Marine, Inc.*, No. CV H-19-461, 2020 WL 13413981, at *1 (S.D. Tex. July 2, 2020) (Rosenthal, J.). The question of whether there is a valid agreement between the parties is determined according to state law. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 132 (Tex. 2004) (contractual jury waivers do not violate public policy and are enforceable if the waiver is voluntary, knowing, and intelligent). In recognition of the strong public policy favoring freedom of contract, the "primary concern of a court in construing a written contract is to ascertain the true intent of the parties." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020).

It is well understood that there is "no reason to treat the effect of the at-will employment relationship on a waiver of jury trial differently from its effect on an arbitration agreement." *In re Frank Kent Motor Co.*, 361 S.W.3d 628, 632 (Tex. 2012). An agreement to arbitrate effectively removes the case from the court system and "is every bit as much of a surrender of the right to a jury trial as a contractual jury waiver." *Id.* "Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (citation omitted); *see Carillo v. ROICOM USA, LLC*, 486 F. Supp. 3d 1052, 1063 (W.D. Tex. 2020) ("Although a party may argue that a contract was never formed, by signing a contract, he is presumed to have read it and grasped its contents and legal effects").

Here, the jury waiver provision includes the disjunctive term "or". *See* **Ex. B**, ¶ 14 ("The

Parties understand and fully agree that […] they are giving up their right to have a trial in front of a judge *or* jury.") (emphasis added). By its very definition, the term "or" is often placed between two contraries; by affirming one, the other is taken away. *See* CONJUNCTIVE/DISJUNCTIVE CANON, Black's Law Dictionary (12th ed. 2024) (the term "*or* joins a disjunctive list to create alternatives") (emphasis original); *see also*, *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings"); *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 823 (S.D. Tex. 2008) (Rosenthal, J.) ("or" as "giving independent meaning to the words it separates") (citation omitted); *Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV A H-07-3973, 2009 WL 780889, at *11 (S.D. Tex. Mar. 23, 2009) (Rosenthal, J.) ("or" requires "one or the other").

The jury waiver is not ambiguous, and use of the disjunctive is the difference that matters here. *See Navigators*, 2020 WL 13413981, at *8 (discussing disjunctive word choice). Here, the parties are litigating in court, at Plaintiff's choice, despite his execution of the Agreement that eliminates his ability to do so. His unilateral election not to demand arbitration was made with full knowledge and appreciation for proceeding without a jury. *See Wellogix Inc. v. BP Am., Inc.*, No. CV 08-119, 2008 WL 11342260, at *6 (S.D. Tex. Dec. 8, 2008) (Ellison, J.) ("loss of a jury trial is a fairly obvious consequence of an agreement to arbitrate") (citation omitted); *In re Prudential*, 148 S.W. 3d at 132 (observing that party who agrees to arbitrate waives both the right to jury trial and right to appeal and finding it "preferable to enforce that agreement [to limit dispute resolution to non-jury trial] rather than leave them with arbitration as their only enforceable option").

A valid agreement between Plaintiff and Allied Universal exists. Plaintiff has not plead, nor could he, that he signed the Agreement because of fraud, misrepresentation, or deceit, and therefore, the jury waiver is enforceable. By agreeing to otherwise arbitrate his claims, and as a

necessary consequence of signing the Agreement, Plaintiff relinquished his right to a jury.

## CONCLUSION

Plaintiff knowingly, voluntarily, and intelligently waived his right to a jury when he signed an express plain language waiver during his employment with Allied Universal. The bilateral Agreement was clear and conspicuous. Plaintiff's acceptance of the Agreement was not a condition of employment, he was afforded the express ability to opt out, and he was informed that he may consult with an attorney of his choice. Plaintiff held an equal bargaining position and power and is of sufficient (if not heightened) sophistication. Where both parties agreed to waive their right to a jury trial – Plaintiff's waiver being made knowingly, voluntarily, and intelligently – and that agreement should be enforced by the Court.

WHEREFORE, Allied Universal respectfully requests that this Court grant Defendant's Motion to Strike Plaintiff's Jury Demand, this lawsuit be set on the Court's non-jury docket, and that Allied Universal be granted any further relief to which it may be equitably or legally entitled.

Dated: October 28, 2024                     Respectfully submitted,

**MARTENSON, HASBROUCK & SIMON LLP**

*/s/ Kelly Eisenlohr-Moul*
Kelly Eisenlohr-Moul, attorney-in-charge
(Tex. Bar No. 24112896, SDTX No. 3146632)
Nathan A. Shine (admitted *pro hac vice*)
Jennifer L. Pope (admitted *pro hac vice*)
Martenson, Hasbrouck & Simon LLP
500 Davis Street, Suite 1003
Evanston, Illinois 60201
(224) 350-3123
keisenlohr-moul@martensonlaw.com
nshine@martensonlaw.com
jpope@martensonlaw.com

*Counsel for Defendant Universal Protective Service, LP d/b/a Allied Universal Security Services*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I caused to be served a true and correct copy of the foregoing *Defendant's Motion to Strike Plaintiff's Jury Demand* on all counsel of record via electronic mail as follows:

Amanda C. Hernandez
AH Law, PLLC
5718 Westheimer, Suite 1000
Houston, Texas 77057
amanda@ahfirm.com

Amy Gibson
David Wiley
Gibson Wiley PLLC
1500 Jackson Street, #109
Dallas, Texas 75201
amy@gwfirm.com
david@gwfirm.com

                                                  */s/ Nathan A. Shine*