**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TWANA AHMED,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL PROTECTION SERVICE, LP d/b/a ALLIED UNIVERSAL SECURITY SERVICES,<br><br>Defendant. | : | Case No. 4:23-cv-02823<br><br>Hon. Judge Lee H. Rosenthal |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Dated: November 18, 2024

Respectfully submitted,

**MARTENSON, HASBROUCK & SIMON LLP**

*/s/ Kelly Eisenlohr-Moul*
Kelly Eisenlohr-Moul, attorney-in-charge
(Tex. Bar No. 24112896, SDTX No. 3146632)
Nathan A. Shine (admitted *pro hac vice*)
Martenson, Hasbrouck & Simon LLP
500 Davis Street, Suite 1003
Evanston, Illinois 60201
(224) 350-3123
keisenlohr-moul@martensonlaw.com
nshine@martensonlaw.com

*Counsels for Defendant Universal Protection Service, LP d/b/a Allied Universal Security Services*

# TABLE OF CONTENTS

**STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ..................................... 1**

**SUMMARY OF ARGUMENT............................................................................................. 1**

**FACTUAL BACKGROUND ................................................................................................ 2**

A. ABOUT ALLIED ................................................................................................ 2
B. ALLIED STRICTLY PROHIBITS HARASSMENT, DISCRIMINATION & RETALIATION .................. 2
C. PLAINTIFF'S EMPLOYMENT WITH ALLIED ......................................................... 3
*i. Allied's Elite Training Program ....................................................................... 4*
*ii. Allied's Use of Force Policy ............................................................................ 4*
*iii. Client Manager Patrick Freeney ...................................................................... 5*
*iv. Uniform and Issued Equipment ........................................................................ 5*
*v. Plaintiff's Beard ............................................................................................. 6*
*vi. Plaintiff's Religious Beliefs ............................................................................. 7*
*vii. Plaintiff's Race, Ancestry, Ethnicity, and National Origin .................................... 7*
D. PLAINTIFF'S ASSIGNMENT TO H-E-B ................................................................ 7
E. PLAINTIFF'S ALLEGATIONS OF DISCRIMINATORY STATEMENTS AND THREATS ...................... 8
F. PLAINTIFF'S APRIL 4, 2022, USE OF FORCE INCIDENT ........................................... 8
H. PLAINTIFF'S SUSPENSION ................................................................................ 9
I. PLAINTIFF IS TERMINATED FOR VIOLATING ALLIED'S USE OF FORCE POLICY ..................... 9
J. ALLIED'S INVESTIGATION OF PLAINTIFF'S MAY 25, 2022, HOTLINE COMPLAINT. .............. 10

**ARGUMENTS & AUTHORITIES .......................................................................................11**

A. SUMMARY JUDGMENT STANDARD.......................................................................11
B. PLAINTIFF'S RACE AND ANCESTRY DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW. 13
*i. Plaintiff Cannot Establish a Prima Facie Case of Race or Ancestry Discrimination Under TCHRA, Title VII and Section 1981 ............................................................ 15*
*ii. Allied Had a Legitimate, Non-Discriminatory Reason For Terminating Plaintiff's Employment ................................................................................................. 17*
*iii. Plaintiff Cannot Establish Pretext ................................................................... 18*
C. ALLIED IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S NATIONAL ORIGIN AND RELIGION CLAIM .................................................................................................. 19
*i. Plaintiff's National Origin Claim Fails as a Matter of Law....................................... 19*
*ii. Plaintiff's Religion Claim Fails as a Matter of Law Under TCHRA and Title VII........ 20*
D. ALLIED IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM UNDER TCHRA, TITLE VII AND SECTION 1981............................................................. 22
*i. Plaintiff Cannot Establish That His Protected Conduct Was the But-For Cause of Suspension And Termination. ............................................................................. 23*
*ii. Allied Had Legitimate, Non-Retaliatory Reasons For Suspending And Ultimately Terminating Plaintiff. ..................................................................................... 24*
*iii. Plaintiff Cannot Demonstrate Allied's Legitimate, Non-Retaliatory Reasons For Pretext For Retaliation. ........................................................................................ 25*

**CONCLUSION ................................................................................................................ 25**

**TABLE OF AUTHORITIES**

**CASES:**

*Adams v. Travelers Indem. Co. of Conn.*,

65 F.3d 156, 164 (5th Cir. 2006)……… ……………………………………...…...….…13

*Agoh v. Hyatt Corp.*,

992 F. Supp. 2d 722, 749 (S.D. Tex. 2014)……………………………………………......14

*Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986)……………………...…....12

*Bienkowski v. Am. Airlines, Inc.*,

851 F.2d 1503, 1507-1508 (5th Cir. 1988)………………..........................................…....13

*Brewer v. College of the Mainland,*

441 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2014)……..……..…………..…23, 24

*Bruff v. North Mississippi Health Svcs.,*

244 F.3d 495, 499-500 (5th Cir. 2001)……………...………………..……………….....22

*Boyd v. State Farm Ins. Companies*,

158 F.3d 326, 329 (5th Cir. 1998)……………………………………….………..…...17

*Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53 (2006)……………………..……………………………………...……….....17

*Cantu v. Hidalgo County,*

*398 S.W.3d 824, 827 (Tex. App.—Corpus Christi 2012 pet. Denied)*…………………………..25

*Celotex Corp. v. Cartrett*,

477 U.S. 317, 323 (1986)…………………………………………………………..….12

*City of Granbury v. Willsey*,

No. 02-17-00343-CV, 2018 WL 1324774, at *6 (Tex. App.—Fort Worth Mar. 15, 2018, no pet.)…………………………………………………….………..………….……25

Crawford v. Formosa Plastics, Corp.,

234 F.3d 899, 902 (5th Cir. 2000)………………...……………………………………...….15

*Deines v. Tex. Dep't of Protective and Regulatory Servs*.,

164 F.3d 277, 281 (5th Cir.1999)………………………………………………………....18

*Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1430 (5th Cir.1996)……………………………………………...……...18

*EEOC v. Texas Instruments, Inc.*,
100 F.3d 1173, 1180 (5th Cir. 1996)……………………..……………………………………………15

*E.E.O.C. v. WC&M Enters., Inc.*,
496 F.3d 393, 401 (5th Cir. 2007)……………………………………………………...………20

*Green v. Armstrong Rubber Co.*,
612 F.2d 967, 968 (5th Cir.1980)……………………………………..…………...……..14

*Harvill v. Westward Commc'ns, LLC*,
433 F.3d 428, 433 (5th Cir. 2005)……………………………………...………...……12

*Herbert v. City of Forest Hill*,
189 S.W.3d 369, 375 (Tex.App.—Fort Worth 2006, no pet.)…………………………..…21

*Hernandez v. Crawford Bldg. Material Co.*,
321 F.3d 528, 532 n.2 (5th Cir.2003)...…………………………………………….………..17

*Hernandez v. Yellow Transp., Inc.,*
670 F.3d 644, 650 (5th Cir. 2012)………………………………………………..…...……..13

*Hunt v. Rapides Healthcare Sys. LLC*,
277 F.3d 757, 769 (5th Cir. 2001)……………...……………………………………………24

*Hunter v. Union Pac. R. Co.*,
No. CIV.A. H-11-3408, 2013 WL 3229910 (S.D. Tex. June 25,2013)…………………………19

*Kindred v. Con/Chem, Inc.*,
650 S.W.2d 61, 63 (Tex. 1983)………..……………………………………...………………..21

*Laxton v. Gap Inc.,*
333 F.3d 572, 579 (5th Cir. 2003)……………………...……………………………………..…..13

*LeMaire v. Louisiana*,
480 F.3d 383, 388-89 (5th Cir. 2007)………………………………...…...…………………24

*Little v. Liquid Air Corp.,*
37 F.3d 1069, 1075 (5th Cir. 1994)…………………………………………...…………..12

*Little v. Republic Ref. Co.,*
924 F.2d 93, 96 (5th Cir. 1991)…………………………………..…………...…………...15

*Long v. Eastfield College*,
88 F.3d 300, 308 (5th Cir. 1996)……………………………..…………………..…………….24

*Mattern v. Eastman Kodak Co.,*
104 F.3d 702, 708 (5th Cir.1997)…………………………..…………...…………...17

*Mayberry v. Mundy Contract Maint. Inc.,*

197 F. App'x. 314, 317 (5th Cir. 2006)……...……………………………………………….……...24

*Mayberry v. Vought Aircraft Co.,*
55 F.3d 1086, 1090 (5th Cir.1995)…………………………………………………...…….14, 18

*Navigators Ins. Co. v. Rio Marine, Inc.*,
No. CV H-19-461, 2020 WL 13413981, at *4 (S.D. Tex. July 2, 2020)………………………..12

*Owens v. Circassia Pharms., Inc.*,
33 F.4th 814, 833 (5th Cir. 2022)……………………………………………………………19

*Raggs v. Miss. Power & Light Co.*,
278 F.3d 463, 471-72 (5th Cir. 2002)……………………………......…………………21

*Ramsey v. Henderson,*
286 F.3d 264, 269 (5th Cir. 2002)……………………...……………...…………………13

*Reese v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133, 150 (2000)…………………………………………………………………..12

*Reeves v. Sanderson Plumbing Prods., Inc.,*
120 S. Ct. 2097, 2109 (2000)………..………………………………………..…..14, 15, 16

*Rubinstein v. Administrators of Tulane Educ. Fund,*
218 F.3d 382, 400 (5th Cir. 2000)…..........................................................................……...16

*Sagaral v. Wal-Mart Stores Tex. LP,*
516 F. Supp. 2d 782, 793-94 (S.D. Tex. 2007)……………………………………………19

*Seaman v. CSPH, Inc.,*
179 F.3d 297, 301 (5th Cir. 1999)…………………………………………..………………21

*Septimus v. University of Houston,*
399 F.3d 601 (5th Cir. 2005)……………………………………………….…………14, 20

*Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*,
328 F. Supp. 3d 598, 611 (N.D. Tex. 2018)...……………………………………………..12

*Smith v. United States,*
391 F.3d 621, 625 (5th Cir. 2004)………………………..…………………..……….12

*St. Mary's Honor Ctr. v. Hicks,*
509 U.S. 502, 507 (1993)…………………………………………………..……………15

*Stone v. La. Dep't of Revenue,*
*590 Fed.Appx. 332, 341 (5th Cir. 2014)*…………...……………………………..…...…….25

*Tiemeyer v. Quality Pub., Inc.,*
144 F. Supp.2d 727, 733-34 (S.D. Tex. 2001)…………………………………...……..15

*United States ex rel. Longhi v. United States*,
575 F.3d 458, 465 (5th Cir. 2009)……………………………………………..…………….12
*Vadie v. Mississippi State Univ.*,
218 F.3d 365, 374-75 & n.23 (5th Cir. 2000)………….....…………………………….….….…16
*Vance v. Union Planters Corp*.,
209 F.3d 438, 444 (5th Cir. 2000)…………………………………………...……….………...19
*Waggoner v. City of Garland*,
987 F.2d 1160, 1165 (5th Cir.1993)……………………………..…………...….………….....18
*Walker v. Norris Cylinder Co*.,
No. 3:03 CV 1009 D, 2005 WL 2278080, at *6 (N.D. Tex. Sept. 19, 2005)……………………18
*Weber v. Roadway Express, Inc.*,
199 F.3d 270 (5th Cir. 2000)………………………………………...…………………22
*Weems v. Dall. Indep. Sch. Dist*.,
260 F. Supp. 3d 719, 736 (N.D. Tex. 2017)……..……………………………………..……24
*Yancy v. U.S. Airways,*
*469 F. App'x 339, 344 (5th Cir.2012)* …………………………...…………………...……...25
*Zamora v. City of Houston,*
798 F.3d 326, 331 (5th Cir. 2015)……………….……………………………...……...………….23

**FEDERAL STATUTES:**

42 U.S.C. § 1981..........................................................................................1, 13, 15, 18, 22, 23, 24, 25
42 U.S.C. § 2000e et. Seq (“Title VII)................................1, 13, 15, 16, 18, 20, 21, 22, 23, 24, 25

**STATE STATUTE:**

Tex. Lab. Code § 21.001 (“TCHRA”)..............................................1, 13, 15, 18, 20, 21, 22, 24, 25

**FEDERAL RULES:**

Fed. R. Civ. P. 56 ..................................................................................................................1, 11, 12

# INDEX OF EXHIBITS

Exhibit 1: Deposition of Anna Soja

Exhibit 2: Declaration of Kareem McKinnon

Exhibit 3: Declaration of Wayne Oliver

Exhibit 4: Excerpts from Allied's Employee Handbook

Exhibit 5: Deposition of Katherine Alyea

Exhibit 6: Deposition of Twana Ahmed

Exhibit 7: Twana Ahmed's Training Compliance Record

Exhibit 8: Plaintiff's iCIMS Forms

Exhibit 9: Declaration of Monroe McClain

Exhibit 10: Declaration of Patrick Freeney

Exhibit 11: Declaration of Mauricio Zepeda

Exhibit 12: Declaration of Alexzander Bergeron

Exhibit 13: Declaration of Martin Hernandez

Exhibit 14: Elite Security Professional Job Description

Exhibit 15: H-E-B Elite Team Mandatory Training

Exhibit 16: Elite Officer: Firearm, Less-Lethal Weapon & Life Saving Training Program

Exhibit 17: Allied's Discipline Matrix

Exhibit 18: Allied's 2nd Supplemental Answer to Interrogatory No. 2 and RFP 30

Exhibit 19: Declaration of James Grant

Exhibit 20: Client Manager Job Description

Exhibit 21: Filed Supervisor Job Description

Exhibit 22: Twana Ahmed's Security Professional ID Badge Receipt

Exhibit 23:      Photographs of Twana Ahmed

Exhibit 24:      Bellaire Police Department Incident Report

Exhibit 25:      Twana Ahmed's Written Statement

Exhibit 26:      Use of Force Panel Communication

Exhibit 27:      Twana Ahmed's Personnel Action Notice

Exhibit 28:      Twana Ahmed's EEOC Charge of Discrimination

Defendant Universal Protection Service, LP d/b/a Allied Universal Security Services ("Defendant" or "Allied") files this Motion for Summary Judgment under Federal Rule of Civil Procedure 56.

**STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT**

1. Is Defendant entitled to summary judgment on Plaintiff's claim that he was subjected to discrimination because of his race and ancestry?

2. Is Defendant entitled to summary judgment on Plaintiff's claim that he was subjected to discrimination because of his national origin and religion?

3. Is Defendant entitled to summary judgment on Plaintiff's retaliation claim?

**SUMMARY OF ARGUMENT**

Plaintiff Twana Ahmed ("Plaintiff") has filed suit against Allied alleging race, ancestry, national origin, and religious discrimination, as well as retaliation, in violation of the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001 *et seq.* ("TCHRA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"). Allied is entitled to summary judgment on all of Plaintiff's claims.

Plaintiff's claims arise from his termination, which followed his use of unjustifiable force while detaining a shoplifter—conduct that violated Allied's policies. Allied's decision to terminate Plaintiff's employment was based on legitimate, non-discriminatory reasons. Notably, Plaintiff did not raise any complaints of discrimination during his employment; instead, he submitted a discrimination complaint only *after* his termination.

Plaintiff's discrimination and retaliation claims under the TCHRA, Title VII, and Section 1981 fail as a matter of law due to insufficient evidence and reliance on speculation. First, Plaintiff alleges race and ancestry discrimination based on his Kurdish heritage. However, there is no

evidence that Allied was aware of his ancestry or that non-Kurdish employees received more favorable treatment for similar violations of the Use of Force policy. Alleged racial slurs and threats by a colleague were unrelated to the termination decision. Allied provided a legitimate, non-discriminatory reason for its actions, which Plaintiff failed to refute. Second, Plaintiff's national origin claim also fails because he provides no evidence that Allied knew of his Iraqi heritage or treated similarly situated employees outside his protected class more favorably. Third, Plaintiff's religious discrimination claim lacks merit. He has not demonstrated a bona fide religious conflict or shown that he suffered an adverse action due to such a conflict, including with regard to his beard. Finally, Plaintiff's retaliation claim fails because the alleged protected activities occurred *after* his suspension and termination, negating any causal connection. Allied offered legitimate, nonretaliatory reasons for its actions, which Plaintiff could not show were pretextual. For these reasons, summary judgment is warranted in Allied's favor on all claims.

## FACTUAL BACKGROUND

### A. About Allied

Allied provides private contract security services for its clients throughout the country. Ex.1, 24:23-25:3. It maintains operations within Texas, including a branch office in Houston. Ex.2, ¶2; Ex.3, ¶2. Allied has established policies and procedures that it requires all employees to know and understand its governing conduct rules and performance expectations. Ex.4, pp.3-4.

### B. Allied Strictly Prohibits Harassment, Discrimination & Retaliation

Allied is committed to a work environment free from harassment, discrimination, and retaliation. Ex.1, 8:18-23, 9:14-11:11, 23:24-24:16, 25:7-12. To that end, Allied has a zero-tolerance policy prohibiting discrimination. *Id*. 8:18-20; Ex.5, 7:14-17. Allied encourages employees to bring forward concerns about discrimination or other unlawful conduct and provides

multiple mechanisms to bring their concerns to its attention. Ex.1, 23:24-24:16; Ex.3, ¶3; Ex.6, 55:2-8. Retaliation for reporting concerns is strictly prohibited. Ex.1, 8:21-23; Ex.5, 7:18-21. In support of its commitment, Allied mandates all employees complete training on the prevention and reporting of discrimination as part of its new employee orientation, including the achievement of a passing score. Ex.1, 10:22-11:15. Compliance with the training is required for continued employment. *Id*. 13:7-14:2; Ex.7.

**C. <u>Plaintiff's Employment with Allied</u>**

On December 14, 2021, Allied offered Plaintiff employment as an Elite armed security professional based in the Houston branch office. Ex.6, 25:19-26:13. Plaintiff accepted the offer and completed Allied's new employee orientation on December 15, 2021. *Id.*, 26:17-19, 28:19-21, 29:18-21. He attained a satisfactory score. Ex.7. As part of Plaintiff's onboarding with Allied, he was required to complete a series of new employee forms including various policy acknowledgments. Ex.6, 44:22-45:1-7; Ex.8. Specifically, these forms required Plaintiff to review and acknowledge receipt of Allied's Employee Handbook and to affirm that he agreed to read, understand, and comply with all company policies and procedures. Ex.6, 52:17-54:12; Ex.8. This includes Allied's policies and procedures to provide and address equal employment opportunity, prevention of harassment, discrimination, and retaliation, and a reporting and investigation procedure to address workplace complaints. Ex.3, ¶3; Ex.4, pp.8-14; Ex.6, 54:13-55:18; Ex.8, pp.4-7.

Allied's Employee Handbook also outlines its personal appearance and grooming standards for all employees. Ex.4, p.7; Ex.6, 63:7-19. While employees are required to maintain a professional image, Allied does not prohibit wearing facial hair or beards. Ex.1, 71:12-14; Ex.4, p.7; Ex.6, 64:20-22; Ex.9, ¶7; Ex.10, ¶4; Ex.11, ¶5; Ex.12, ¶4; Ex.13, ¶¶4,6. When worn, facial

hair must be neat and trim. Ex.1, 71:5-14; Ex.4, p.7; Ex.6, 63:22-64:10; Ex.9, ¶7; Ex.10, ¶7; Ex.11, ¶6; Ex.12, ¶4; Ex.13, ¶4. Allied may authorize exceptions to these standards for religious beliefs, medical necessity, or disability as accommodations. Ex.1, 70:22-71:4, 71:20-72-7; Ex.4, p.7; Ex.6, 64:11-15; Ex.9, ¶7; Ex.10, ¶7; Ex.11, ¶6; Ex.12, ¶4; Ex.13, ¶4. Plaintiff agreed that Allied's policies and procedures applied to everyone, including him. Ex.6, 85:19-21; Ex. 8.

Allied provides comprehensive training programs and opportunities to all its employees. Ex.1, 10:4-21, 11:20-12:18; Ex.4, p.2. Training requirements can vary from site to site, including prior to post assignment, on-the-job training, and classroom or eLearning instruction modules. Ex.4, p.2.

*i.* *Allied's Elite Training Program*

To service the operational needs of its H-E-B client account, a regional grocery store chain, Allied developed and instituted an Elite training program. Ex.6, 32:19-20; Ex.9, ¶3; Ex.15. This training program offered specific instruction on Allied's policies and procedures, including use of force. Ex.6, 31:25-32:4, 34:9-35:6; Ex.16. Plaintiff completed the Elite training program in or about early-mid January 2022. Ex.6, 28:5-6; Ex.9, ¶3; Ex.7.

As an Allied Elite security professional, Plaintiff's primary job responsibilities included serving as a visible presence, observing and detecting suspicious activity, and required reporting. Ex.4, pp.5-6; Ex.14. Elite security professionals are required to have civilian law enforcement or military experience. Ex.14. However, they are not police officers, peace officers, deputized with police powers, able to charge someone with criminal conduct, nor are they able to transport someone to jail. Ex.6, 60:21-61:13.

*ii.* *Allied's Use of Force Policy*

Allied's Use of Force ("UOF") Policy is mandatory for all employees. Ex.1, 77:3-5; Ex.2, ¶4. As defined in the policy, Allied uses a six-level force continuum that requires a UOF Incident

Report be completed for all uses of force above Level Two. Ex.2, ¶4. When the use of force appears to be outside the policy, a Root Cause Analysis ("RCA") and Tab 07 Worksheet must be completed. *Id.*, ¶6. A review panel is assembled to determine whether the force used complied with the policy. *Id*. Any unjustified use of force results in termination. Ex.1, 89:5-12; Ex. 17. Employees determined to have violated this policy were terminated, including Plaintiff. Ex., 18.

Plaintiff was aware of the UOF Policy, acknowledged receipt of the policy, and was trained on the policy. Ex.7; Ex.8, p.1; Ex.15; Ex.16. A search of Allied's records reveals no record of a completed UOF Incident Report for security professional Raymond Rodriguez deploying a taser. Ex.19, ¶3.

*iii.* *Client Manager Patrick Freeney*

Plaintiff met Client Manager Patrick Freeney during the Elite training program. Ex.6, 37:15-21, 302:17-18. Mr. Freeney also completed the Elite training program but in a different class. Ex.6, 36:21-37:3; Ex.9, ¶3. In his capacity as a Client Manager for the H-E-B account, Mr. Freeney was responsible for day-to-day operational management. Ex.1, 35:14-36:9; Ex.6, 37:15-19; Ex.10, ¶2; Ex.20. Mr. Freeney worked with a team of field supervisors to assist in the supervision and development of security professionals. Ex.1, 30:5-11; Ex.11, ¶2; Ex.12, ¶2; Ex.13, ¶2; Ex.21. At no point during Plaintiff's employment did Mr. Freeney request that Plaintiff shave his beard, nor did Plaintiff complain that someone requested him to shave his beard. Ex.9, ¶8; Ex.10, ¶5; Ex.11. ¶¶ 2,6.

*iv.* *Uniform and Issued Equipment*

Plaintiff was provided with Allied's standard issued uniform, firearm, and taser. Ex.9, ¶4; Ex.11, ¶ 3. As part of his issued uniform, Plaintiff signed and acknowledged that he received an Allied identification badge. Ex.22. At that time, then Regional Trainer Monroe McClain also served as the armorer for the Houston branch office. Ex.9, ¶4. Allied issued Plaintiff a brand-new

Glock 9mm handgun that he was trained and certified while using. *Id*. Plaintiff did not complain or otherwise make anyone aware of a concern with the firearm. *Id*.

Throughout Plaintiff's employment, the Covid-19 pandemic remained a burden to supply availability. Ex.6, 107:10-108:6. The Elite security professionals were prioritized to receive a body-worn camera as they became available. Ex.9, ¶5; Ex.11, ¶3. However, due to continued supply issues many Elite security professionals, including Plaintiff, did not receive one. *Id*. Plaintiff was repeatedly informed of this shortage and never mentioned any work issue related to not receiving one. *Id*.; Ex.6, 106:16-23, 108:2-6. Plaintiff provided photographs of other security professionals he claimed received body-worn cameras, but could not identify when or where the photos were taken, the individuals' names, their start dates with Allied, or their completion of the Elite training program. Ex.6., 99:14-105:11.

*v.* *<u>Plaintiff's Beard</u>*

Plaintiff consistently wore a beard throughout his employment, occasionally trimming it, but never shaving it to the skin. Ex.6, 83:14-18, 87:22-24, 88:21-23, 94:10-25, 95:16-17, 97:1-10; Ex.9, ¶8; Ex.10, ¶5; Ex.11, ¶5; Ex.12, ¶5; Ex.13, ¶7; Ex.23. Despite Plaintiff's claim that Mr. Freeney and Field Supervisor Mauricio Zepeda asked him to shave, neither made such a request. Ex.10, ¶5; Ex.11, ¶6. Even if they did, Plaintiff did not mention his religion or inform either that he practiced any specific religion. Ex.6, 42:4-5, 84:4-5; Ex.10, ¶5; Ex.11, ¶6. Plaintiff did not say anything or report this to anyone at that time. Ex.6, 44:3-10, 84:2-9; Ex.9, ¶ 8; Ex.12, ¶5; Ex.13, ¶7.

Under Allied's personal appearance and grooming standards, many employees had facial hair or beards. Ex.6, 42:1-2, 42:24-43:5, 96:2-7, 97:4-7, 105:15-17; Ex.9, ¶7; Ex.10, ¶4; Ex.11, ¶5; Ex.12, ¶4; Ex.13, ¶4. Plaintiff was unaware of any employees with facial hair or beards requesting

accommodation, and he himself never sought any accommodation for his beard. Ex.6, 43:14-22, 82:22-83:3, 96:17-20, 97:11-15, 105:18-24, 306:20-24.

*vi. Plaintiff's Religious Beliefs*

Plaintiff maintains a beard as part of his religion, though there is no specific required length; it simply must be kept short enough not to interfere with eating. Ex.6, 75:11-16, 76:4-17. Alongside wearing a beard, Plaintiff's religious practices include helping others and listening to the Quran. *Id*. 78:13-20, 79:4-11. Plaintiff does not attend a masjid or mosque but has, on occasion, sat outside a Christian church late at night to process his emotional distress. *Id*. 79:13-14, 284:16-24. Throughout his employment, Plaintiff neither disclosed nor provided any indication to Allied that he adhered to a specific religion. Ex.3, ¶7; Ex.9, ¶9; Ex.10, ¶5; Ex.11, ¶6; Ex.12, ¶7; Ex.13, ¶8.

*vii. Plaintiff's Race, Ancestry, Ethnicity, and National Origin*

During his onboarding, Plaintiff completed a voluntary EEO-1 Data Form. Ex.8, p.8. On this form, Plaintiff identified his race or national origin as "White (Not Hispanic or Latino)," described as a "person having origins in any of the original peoples of Europe, the Middle East, or North Africa." *Id*. This voluntary disclosure was retained in a confidential file separate from his personnel file and was not accessible to his supervisors or managers, including Mr. Freeney. *Id*. Plaintiff never disclosed, nor was Allied made aware of, his specific race, ancestry, ethnicity, or national origin. Ex.3, ¶7; Ex.9, ¶9; Ex.10, ¶10; Ex.11, ¶7; Ex.12, ¶7; Ex.13, ¶8. Further, Plaintiff never disclosed, nor did he mention, that he is of Kurdish descent. *Id*.

**D. Plaintiff's Assignment to H-E-B**

Plaintiff was assigned as a security professional to the H-E-B account. Ex.6, 33:11-13, 136:2-5; Ex.9, ¶3; Ex.11, ¶3. Plaintiff was required to follow established post orders while working at H-E-B stores. Ex.6, 131:23-133:22; Ex.13, ¶5. The H-E-B post orders were last revised in

November 2021 before Plaintiff's hire. Ex.6, 135:10-22; Ex.13, ¶5. Plaintiff received on-the-job training to review these expectations, including how to respond to suspected shoplifters and that facial hair was permitted. Ex.7; Ex.13, ¶6. Allied security professionals are prohibited from restraining or physically touching a suspected shoplifter unless the suspect is physically assaultive. Ex.1, 83:2-8, 87:5-9; Ex.13, ¶¶5,6. Plaintiff knew and understood that Allied's policies and procedures governed his employment. Ex.6, 179:10-17.

### E. Plaintiff's Allegations of Discriminatory Statements and Threats

Plaintiff claims that Mr. Freeney allegedly threatened to "fry him like a chicken", take his security license away, and to find a way to fire him, and made statements that he was "dumbass" and that he did not belong here. Compl. ¶¶50,57; Ex.6, 222:1-17. Plaintiff also alleged when he returned his firearm and taser, that Mr. Freeney referred to him as a "sandn*gger". Compl. ¶58; Ex.6, 219:5-6. Plaintiff never reported any of these alleged threats of statements while he was employed at Allied. Ex.1, 18:18-19:20; Ex.10, ¶9.

### F. Plaintiff's April 4, 2022, Use of Force Incident

On April 4, 2022, Plaintiff was contacted by a H-E-B store manager to assist with a suspected shoplifter. Ex.6, 160:10-25. After a period of observation, Plaintiff positioned himself near one of the second floor exits. *Id.*, 170:22-23, 171:3-4, 173:17. Plaintiff prevented the subject from leaving the store because he refused to pay, follow his direction, and made a verbal threat. *Id.*, 184:2-4, 184:17-18, 186:1-17. Plaintiff used force to detain the subject. Compl. ¶54; Ex.2, ¶7; Ex. 10, ¶6; Ex.12, ¶6.

The Bellaire police department arrived while Plaintiff detained the subject. Ex.6, 187:19-20. Bellaire PD arrested the subject and charged him with public intoxication. Ex.6, 196:19-22; Ex.24. The Bellaire PD could not charge the subject for shoplifting because Plaintiff detained him

before he exited. Ex.6, 197:3-17, 198:8-14; Ex.24. At no point did Bellaire PD identify that a knife or other weapon was recovered from the subject. Ex.24.

**G.  Investigation of April 4, 2022, Use of Force Incident**

Field Supervisor Alexzander Bergeron responded to the H-E-B site to investigate the incident. Ex.6, 200:2-6; Ex.12, ¶6. While on-site, Mr. Bergeron reviewed video surveillance and observed Plaintiff stopping the subject before he exited the store, pushing him against a wall, and placing his wrists behind his back. Ex.12, ¶6. Mr. Bergeron followed all reporting requirements, including notifying Mr. Freeney. *Id*. During the investigation, Plaintiff did not mention any threat or claim that the subject was armed with a weapon. *Id*.

Plaintiff completed a written statement about the incident on April 4, 2022. Ex.6, 192:21-23, 195:10-12; Ex.25. Plaintiff's statement does not reference any alleged threat or the presence of a weapon. Ex.6, 195:4-9; Ex.25. Although Plaintiff suggested his statement was incomplete, he did not revise or supplement it. Ex.6, 194:5-195:2, 208:17-18, 209:18-20, 210:18-21.

**H.  Plaintiff's Suspension**

On April 5, 2022, Plaintiff met with Mr. Freeney in the Houston branch office. Ex.6, 203:7-9. Consistent with Allied's Disciplinary Matrix, Plaintiff was suspended for using force on April 4, 2022. Ex.1, 95:2-4; Ex.10, ¶6; Ex.17. Allied's Disciplinary Matrix is a guideline for approaching work rule and policy violations – a first offense suspected use of force violation is suspension pending investigation. Ex.1, 97:19-98:8; Ex.17.

**I.  Plaintiff is Terminated for Violating Allied's Use of Force Policy**

Consistent with the UOF Policy, Mr. Freeney completed all notice and reporting requirements, including the submission of a UOF Incident Report. Ex. 10, ¶7. A panel was assembled including Mr. Freeney, then Branch Manager Felicia Solis-Ramirez, Senior Regional

Vice President Kareem McKinnon, and then Regional Vice President Bill King to review the April 4, 2022 incident involving Plaintiff. Ex.2, ¶7; Ex.10, ¶7. At no point did Plaintiff inform the panel of any alleged threat made by the suspect or that he was armed with any type of weapon. Ex.10, ¶7.

After the panel reviewed the UOF Incident Report, RCA, and Tab 07 Worksheet, it determined, based exclusively on objective factors, that Plaintiff's use of force was unjustified and did not comply with the UOF Policy. Ex.2, ¶¶8,9; Ex.10, ¶8; Ex.26. As a result of the panel review, Plaintiff was terminated for violation of the UOF Policy effective April 4, 2022. Ex.2, ¶8; Ex.10, ¶8; Ex.27.

**J.    Allied's Investigation of Plaintiff's May 25, 2022, Hotline Complaint.**

More than a month after his termination, on May 25, 2022, Plaintiff filed a hotline complaint. Ex.3, ¶4; Ex.6, 234:1-6. In his hotline complaint, Plaintiff complained that he was targeted by Mr. Freeney because he was told to cut his beard during Ramadan. Ex.3, ¶4; Ex.6, 236:22-237:8. Plaintiff also complained about alleged verbal threats made by Mr. Freeney, and his suspension and termination resulting from his handling of the burglary situation. Ex.3, ¶4.

Regional Human Resources Representative Wayne Oliver was assigned to investigate Plaintiff's hotline complaint and promptly initiated his investigation. Ex.3 ¶5; Ex.5, 29:2-6. As part of his investigation, Mr. Oliver interviewed Plaintiff, Mr. Bergeron, and Mr. Freeney, and reviewed the relevant documents from Plaintiff's April 4, 2022, use of force incident resulting in his suspension and termination. Ex.3, ¶5. Mr. Oliver completed his investigation in mid-June 2022 and informed Plaintiff that Allied was unable to substantiate his complaint. *Id*. ¶ 6. Mr. Oliver also explained to Plaintiff that his suspension and termination were based on a panel determination that the force he used was unjustified. *Id*. On September 28, 2022, more than three months after his

termination, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. Ex.28.

## ARGUMENTS & AUTHORITIES

### A. Summary Judgment Standard

Summary judgment is appropriate when the "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Navigators Ins. Co. v. Rio Marine, Inc.*, No. CV H-19-461, 2020 WL 13413981, at *4 (S.D. Tex. July 2, 2020) (Rosenthal, J.). A genuine dispute of material fact exists when the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986). Only facts that are relevant or necessary to the ultimate outcome of the case are material. *Id*. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986); *see Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 433 (5th Cir. 2005). The court resolves any doubts and draws all reasonable inferences in favor of the nonmoving party. *Reese v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009). If the moving party satisfies its burden, the burden then shifts to the nonmoving party to show that specific facts exist over which there is a genuine dispute or to rebut the charge that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 323).

The party opposing summary judgment "is required to identify specific evidence in the records and to articulate the precise manner in which that evidence supports his or her claim."

*Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 3d 598, 611 (N.D. Tex. 2018); *Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Yet "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support opposition to the motion for summary judgment. *Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 164 (5th Cir. 2006). As a result, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 650 (5th Cir. 2012). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

Furthermore, in the employment law context, federal courts in the Fifth Circuit have routinely held that employment discrimination laws are not intended to be vehicles for second-guessing of employment decisions, nor were they intended to transform the courts into personnel managers.[1] Discrimination laws are not intended to protect against unfair, erroneous, or arbitrary business decisions, only against decisions motivated by unlawful animus. *Bienkowski v. Am. Airlines, Inc*., 851 F.2d 1503, 1507-1508 (5th Cir. 1988).

---

[1] *See, e.g., Bienkowski v. Am. Airlines, Inc*., 851 F.2d 1503, 1507-08 (5th Cir. 1998) (discrimination laws are not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers); *Walton v. Bisco Indus*., 119 F.3d 368, 372 (5th Cir. 1997) ("we do not view the discrimination laws as vehicles for judicial second-guessing of business decisions"); *Nieto v. L&H Packing Co*., 108 F.3d 621, 624 (5th Cir. 1997) (same); *Bodenheimer v. PPG Indus., Inc*., 5 F.3d 955, 959 (5th Cir. 1993) (same); *Macpherson v. Texas Dep't of Water Res.*, 734 F.2d 1103, 1105 (5th Cir. 1984) (stating "[w]e do not sit to revise employment decisions taken hastily or for insufficient reasons, only those taken for illegal ones."); *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981) ("It scarce need be said that [discrimination law] is not a shield against harsh treatment at the work place; it protects only in instances of harshness disparately distributed. The essence of the action is, of course, discrimination").

Merely disagreeing with an employment decision or establishing the decision was incorrect is not enough to establish a violation of a discrimination law. *See Laxton v. Gap Inc*., 333 F.3d 572, 579 (5th Cir. 2003). The relevant inquiry, therefore, lies not in whether the employer's decision was objectively correct or fair, but whether it was motivated by some discriminatory motive. *See Agoh v. Hyatt Corp*., 992 F. Supp. 2d 722, 749 (S.D. Tex. 2014).

**B. Plaintiff's Race and Ancestry Discrimination Claim Fails as a Matter of Law.**

Plaintiff alleges that Allied discriminated against him based on his race and ancestry (Kurdish) in violation of TCHRA[2], Title VII, and Section 1981.[3] In order to prevail on his claim of discrimination, Plaintiff must establish, by a preponderance of the evidence, a *prima facie* case of discrimination by demonstrating each of the following: 1) he was a member of the protected class; 2) he was qualified; 3) he was discharged, or otherwise suffered an adverse employment action; and 4) he was either replaced by someone outside the protected class, or otherwise discharged or treated less favorably because of his protected status. *See, e.g., Septimus v. University of Houston*, 399 F.3d 601 (5th Cir. 2005). Alternatively, in work rule-violation cases, such as this, "a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, [employees outside the protected class] who engaged in similar acts were not punished similarly.' " *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1090 (5th Cir.1995) (quoting *Green v. Armstrong Rubber Co*., 612 F.2d 967, 968 (5th Cir.1980)).

If Plaintiff can establish a *prima facie* case of discrimination, the burden of production will shift to Allied to proffer a legitimate, non-discriminatory reason for its challenged employment

---

[2] The analysis for discrimination claims under the TCHRA generally is the same as that under Title VII and the other federal anti-discrimination statutes. *See Reed v. Neopost USA, Inc*., 701 F.3d 434, 439 (5th Cir. 2012) ("Because one of the purposes of the TCHRA is to provide for execution of the policies of Title VII of the Civil Rights Act of 1964, we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.") (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W. 3d 629, 633-34 (Tex. 2012)).

[3] Discrimination claims under Title VII and Section 1981 are evaluated under the same framework. *Hall v. Continental Airlines, Inc*., No. 07-20237, 2007 WL 3151885, at *3 (5th Cir. Oct.26, 2007).

decisions. *Reeves v. Sanderson Plumbing Prods., Inc*., 120 S. Ct. 2097, 2109 (2000). Allied may meet this burden by presenting evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). The employer's burden of producing a legitimate, non-discriminatory reason for the challenged employment decision "is one of production, not persuasion...[and] can involve no credibility assessment." *Reeves*, 120 S. Ct. at 2106; *Crawford v. Formosa Plastics, Corp*., 234 F.3d 899, 902 (5th Cir. 2000). Indeed, the employer's "burden at this stage is slight" as it need only produce some evidence that it took the challenged employment action for a non-discriminatory purpose, "but it need not persuade the Court that it was actually motivated by its proffered reason." *Tiemeyer v. Quality Pub., Inc*., 144 F. Supp.2d 727, 733-34 (S.D. Tex. 2001).

Once Allied articulates its legitimate and non-discriminatory reason for the challenged employment decisions, Plaintiff must then prove, by a preponderance of the evidence, that Allied's articulated reason is merely a pretext for intentional discrimination against him. *See Reeves*, 120 S. Ct. at 2109 (noting that a plaintiff must present "sufficient evidence to find that the employer's asserted justification is false."). A plaintiff's burden to show pretext is a heavy one and is not satisfied by asserting conclusory opinions or subjective beliefs. *See Little v. Republic Ref. Co*., 924 F.2d 93, 96 (5th Cir. 1991). To establish that the challenged employment decisions were pretexts for discrimination, the plaintiff must proffer evidence that creates a reasonable inference that his protected status was a determinative factor in the challenged employment decisions. *EEOC v. Texas Instruments, Inc*., 100 F.3d 1173, 1180 (5th Cir. 1996). It is important to note that the ultimate burden of proving that discrimination exists remains, always, with the plaintiff. *Reeves*, 120 S. Ct. at 2106; *St. Mary's*, 509 U.S. at 507.

In fact, the Fifth Circuit in its post-*Reeves* decisions has made it clear that although discrimination plaintiffs "need not always present evidence above and beyond their prima facie case and pretext, discrimination suits still require evidence of discrimination." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 374-75 & n.23 (5th Cir. 2000) (emphasis added) (citing *Reeves*, 120 S. Ct. at 2105-06); *see also*, *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 382, 400 (5th Cir. 2000).

*i. Plaintiff Cannot Establish a Prima Facie Case of Race or Ancestry Discrimination Under TCHRA, Title VII and Section 1981.*

Plaintiff claims he was discriminated against on the basis of his race and ancestry, Kurdish, through Allied's practices involving his suspension, investigation, and termination after he violated the UOF policy. Compl. ¶¶69-71. Plaintiff's claim fails because there is not even a scintilla of evidence that Plaintiff's race or ancestry was a factor in his termination. Indeed, there is no evidence that anyone at Allied, including those on the panel who recommended his termination, even knew Plaintiff was Kurdish or of Kurdish ancestry. Ex.3, ¶7; Ex.9, ¶9; Ex.10, ¶10; Ex.11, ¶7; Ex.12, ¶7; Ex.13, ¶8.

Plaintiff fails to establish a *prima facie* case because similarly situated non-Kurdish employees who had violated the UOF policy were also subject to the same adverse action of which he complains. Ex.1, 77:3-5; Ex.2, ¶4. While Plaintiff postulates that he was treated differently than other non-Kurdish employees [Ex.6, 80:24-81:2, 96:11-14, 97:16-19], in fact, the evidence shows that Allied terminated non-Kurdish employees, which negates the fourth element of Plaintiff's *prima facie* case. Ex.1, 89:5-12; Ex.17; Ex.18. Moreover, Plaintiff's use of force incident was handled in accordance with the same process and procedures applied to all employees in such situations. *Id.*; Ex.2, ¶¶4,6.

a. Racial Slurs

To support his claim that he was discriminated against, Plaintiff claims that Mr. Freeney allegedly called him “sandni**er.” Compl. ¶58. However, the mere utterance of a racial epithet is not indicia of discrimination under Title VII. *Boyd v. State Farm Ins. Companies*, 158 F.3d 326, 329 (5th Cir. 1998), cert. denied, 526 U.S. 1051 (1999) (use of the term “Buckwheat” and “Porch Monkey” were stray remarks from which no inference of racial discrimination arose). Absent a causal link between the derogatory references and the conduct complained of (*i.e.*, Plaintiff’s suspension, investigation, and termination), such epithets are merely stray remarks that cannot support a finding of discrimination. *Id*. at 330. The alleged use of the “N” word constitutes nothing more than a stray remark which was in no way connected with the decision to terminate Plaintiff. Ex.2, ¶9 (panel used objective factors). Therefore, no reasonable factfinder could infer race discrimination based upon the utterance of the “N” word.

b. Verbal and Physical Threats

To support his claim that he was discriminated against, Plaintiff claims that Mr. Freeney allegedly threatened to “fry him like a chicken”, take his security license away, and to find a way to fire him. Compl. ¶¶50,57. However, vague threats about employment do not constitute an ultimate employment decision. *See Hernandez v. Crawford Bldg. Material Co*., 321 F.3d 528, 532 n.2 (5th Cir.2003) (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.1997) (oral threats to fire an employee did not amount to an ultimate employment decision), abrogated on other grounds, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). An unrealized threat is simply a threat as no tangible action has been taken. *Id.* Any alleged threats, which are denied, are not ultimate employment decisions nor do they rise above a mere tangential effect on a possible future ultimate employment decision. Ex.10, ¶9.

      *ii. Allied Had a Legitimate, Non-Discriminatory Reason For Terminating Plaintiff's Employment*

Here, Allied had a legitimate non-discriminatory reason for suspending, and ultimately terminating Plaintiff's employment. *Walker v. Norris Cylinder Co*., No. 3:03 CV 1009 D, 2005 WL 2278080, at *6 (N.D. Tex. Sept. 19, 2005) (An employee's violation of a company work rule is a legitimate, nondiscriminatory reason). Courts do not consider whether the employer made an erroneous decision. *Deines v. Tex. Dep't of Protective and Regulatory Servs*., 164 F.3d 277, 281 (5th Cir.1999); *Mayberry*, 55 F.3d at 1091. Rather, the employer needs only a good-faith belief that the employee's conduct was improper. *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir.1993). The only proper inquiry, then, is whether the employer made its decision with a discriminatory motive. *Mayberry*, 55 F.3d at 1091. Plaintiff's subjective belief is insufficient to establish discriminatory motive. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason."); *Green*, 612 F.2d at 968 ("the plaintiff must demonstrate by a preponderance of the evidence that he did not violate the rule or that, if he did, [dissimilar] employees who engaged in similar acts where not punished similarly").

Plaintiff cannot meet his burden to demonstrate by a preponderance of the evidence that he did not violate Allied's UOF policy. A review panel determined that the force used by Plaintiff was unjustified, and consequently, he was terminated for violation of the policy. Ex.2, ¶¶8-9; Ex.10, ¶8. Similarly, Plaintiff cannot demonstrate that others were treated more favorably. Ex. 18.

*iii. Plaintiff Cannot Establish Pretext*

To overcome Allied's legitimate, nondiscriminatory reason for Plaintiff's suspension and termination, Plaintiff must offer evidence to create a fact issue either: (1) that Allied's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that Allied's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Plaintiff's protected characteristic (mixed-motives alternative). *Sagaral v. Wal-Mart Stores Tex. LP,* 516 F. Supp. 2d 782, 793-94 (S.D. Tex. 2007). This burden cannot be satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Id*. Likewise, testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion. *Hunter v. Union Pac. R. Co*., No. CIV.A. H-11-3408, 2013 WL 3229910, at *5 (S.D. Tex. June 25, 2013).

Even where a plaintiff's factual disputes rise to the level where a reasonable trier of fact could find that an employer's proffered justification for termination is false, that is not enough. *Owens v. Circassia Pharms., Inc*., 33 F.4th 814, 833 (5th Cir. 2022). Rather, "[t]he evidence must permit a reasonable inference that [the defendant's] false reason was pretext for the true, discriminatory, reason." *Id*. Plaintiff's subjective belief is insufficient as a matter of law to establish an actionable discrimination case. *Vance v. Union Planters Corp*., 209 F.3d 438, 444 (5th Cir. 2000) ("[A]n employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief.").

Here, Plaintiff has no evidence whatsoever that his race or ancestry played a role in any decisions involving his suspension and termination. In fact, nobody at Allied was even aware that Plaintiff was Kurdish. Ex.3, ¶7; Ex.9, ¶9; Ex.10, ¶10; Ex.11, ¶7; Ex.12, ¶7; Ex.13, ¶8. Therefore,

Plaintiff's claim of race/ancestry discrimination must be dismissed under TCHRA, Title VII, and Section 1981.

**C. <u>Allied is Entitled to Summary Judgment on Plaintiff's National Origin and Religion Claim</u>**

*i. <u>Plaintiff's National Origin Claim Fails as a Matter of Law</u>*

Plaintiff claims he was discriminated against on the basis of his national origin, Iraqi American, when he was suspended and later terminated after he was found to have violated the UOF policy. To establish a prima facie case of national origin discrimination, a plaintiff must show: (1) he belongs to a protected group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) other similarly situated employees outside the protected class were treated more favorably. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir.2005). Claim of discrimination based on national origin must include some allegation that "implicate[s] Plaintiff's national origin or ethnicity by direct reference, or show or suggest that he was treated differently because of his or her foreign accent, appearance, or physical characteristics." *See E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 401 (5th Cir. 2007).

Here, Plaintiff appears to rely on his assumption that Allied knew or assumed his national origin was Iraqi. When he was hired, Plaintiff did not fill out any documents saying he was Iraqi. Ex.8, p.8. In fact, he identified himself as "White". *Id*. Moreover, none of Plaintiff's supervisors or colleagues, including those involved in the decision to terminate his employment, were aware of his national origin. Ex.3, ¶7; Ex.9, ¶9; Ex.10, ¶10; Ex.11, ¶7; Ex.12, ¶7; Ex.13, ¶8.

In addition, Plaintiff has not identified any similarly situated employees outside his protected class who were treated more favorably. Allied's consistent enforcement of its UOF policy is evident, as it has terminated other employees for similar violations, regardless of any protected characteristics. Ex.18.

To the extent Plaintiff's claim is based on his unsupported assumptions about what Allied thought or knew, his claim fails because it is built on baseless speculation regarding Allied's decision to suspend him pending the investigation of the use of force, and terminating his employment based on the outcome of the investigation. Plaintiff's own subjective speculation that he was probably discriminated against is insufficient as a matter of law to prove pretext. *See Herbert v. City of Forest Hill*, 189 S.W.3d 369, 375 (Tex.App.—Fort Worth 2006, no pet.). Plaintiff's burden on summary judgment is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute or "only a scintilla of evidence." *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983) (stating "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence").

As discussed, *supra* p. 16-17, Allied articulated a legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's suspension and his termination. Plaintiff simply cannot use the discrimination laws "as an aegis and thus avoid accountability for his own actions." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999); *see also Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) ("Title VII's protection against retaliation does not permit [] complainants to disregard work rules or job requirements.") (internal quotations omitted).

ii. *Plaintiff's Religion Claim Fails as a Matter of Law Under TCHRA and Title VII*

Like his claims of race/ancestry and national origin discrimination, Plaintiff's claim that he was discriminated against on the basis of his religion fails because the record is devoid of any evidence that any one at Allied knew of his specific or "perceived" religion or that his religion was

a factor in his termination.[4] Ex.10, ¶5; Ex.11, ¶6. To establish a prima facie case of religious discrimination under TCHRA and Title VII[5], plaintiff must present evidence that (1) [he] held a bona fide religious belief, (2) [his] belief conflicted with a requirement of his employment, (3) [his] employer was informed of [his] belief, and (4) [he] suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Weber v. Roadway Express, Inc.,* 199 F.3d 270 (5th Cir. 2000). If he does, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Bruff v. North Mississippi Health Svcs.,* 244 F.3d 495, 499-500 (5th Cir. 2001).

Here, Plaintiff has not plausibly alleged that he held a specific religious belief conflicting with any of Allied's employment requirements, that he informed Allied of such a conflict, or that Allied took adverse action against him for refusing to comply with a conflicting requirement. Ex.6, 44:3-10, 84:2-9; Ex.9, ¶8; Ex.12, ¶5; Ex.13, ¶7. Plaintiff also failed to request any accommodation to support his religious practices or prevent a violation of his religious vows.

Plaintiff alleges that Mr. Freeney asked him to shave his beard, and he responded that he could not shave it because of his religious beliefs. Compl. ¶44; Ex.6, 40:12; 41:3-4. He further claims that another supervisor also asked him to shave his beard and that he ultimately did so out of fear of losing his job. Compl. ¶46.; Ex.6, 82:16-19, 84:13-18, 94:19-25. However, Plaintiff was unable to clearly describe how he shaved his beard when asked and did not follow Allied's

[4] Although Plaintiff's case appears to be based on a failure to accommodate his religious belief or practice, Plaintiff has wholly failed to plead such case in any manner, and as such, Allied asserts that Plaintiff cannot prevail on such basis.

[5] î[T]he law governing claims under the TCHRA and Title VII is identical.ï *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (citation omitted).

established procedure for requesting religious accommodations. Ex.6, 82:16-19, 94:19-25, 306:20-24.

Additionally, Plaintiff provides no evidence of discriminatory comments or conduct by Allied employees regarding his religion. His Complaint is vague and lacks factual support. While he raises the issue in the context of his beard, Allied's policy explicitly allows facial hair, and Plaintiff did not take steps to address any supposed conflict.

Most importantly, Plaintiff admits he shaved his beard due to his own subjective belief about potential consequences, not because of any adverse action by Allied. Compl. ¶46; Ex.6, 82:16-19, 84:13-18, 94:19-25. Allied's decision to suspend and terminate Plaintiff, as explained *supra* p. 9-10, was unrelated to his alleged religion and based solely on the investigation of his use of force incident.

Ultimately, Plaintiff's religious discrimination claim, like his national origin and race/ancestry discrimination claims, fails because it is based on speculation rather than evidence.

**D. Allied is Entitled to Summary Judgment on Plaintiff's Retaliation Claim Under TCHRA, Title VII and Section 1981.**

Plaintiff claims retaliation in violation of TCHRA[6], Title VII or Section 1981[7]. To recover for retaliation under Plaintiff must establish that (1) that he engaged in activities protected by the particular statute; (2) an adverse employment action occurred; and (3) a causal link connects the protected activity to the adverse employment action. *Zamora v. City of Houston,* 798 F.3d 326, 331 (5th Cir. 2015) (Title VII); *Brewer v. College of the Mainland,* 441 S.W.3d 723, 729 (Tex. App.—

[6] *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781 (Tex. 2018)(stating that Texas jurisprudence for TCHRA retaliation claims parallels federal cases construing and applying equivalent federal statutes).

[7] *Byers v. Dall. Morning News, Inc*., 209 F.3d 419, 422 n.1 (5th Cir. 2000); see also *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (per curiam) ("Because claims brought pursuant to Title VII and § 1981 are 'governed by the same evidentiary framework,' such that the analyses under both statutes are substantively the same, we analyze ... Title VII and § 1981 claims together.")

Houston [1st Dist.] 2014) (TCHRA). "Summary judgment is appropriate if the plaintiff cannot support all three elements. *Id*, citing, *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 769 (5th Cir. 2001).

"If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007) (internal citation omitted), which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Mayberry v. Mundy Contract Maint. Inc.*, 197 F. App'x. 314, 317 (5th Cir. 2006) (Title VII and § 1981); *Seaman*, 179 F.3d at 301 (ADA).

In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted). The plaintiff's "subjective belief [that there is a causal connection] is insufficient to demonstrate a causal link between [his] protected activity and the adverse employment action." *Weems v. Dall. Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 736 (N.D. Tex. 2017) (Lindsay, J.).

*i. Plaintiff Cannot Establish That His Protected Conduct Was the But-For Cause of Suspension And Termination.*

Plaintiff cannot meet the causation element of his retaliation claim and cannot demonstrate that Allied's legitimate, nonretaliatory reasons for suspending and later terminating his employment are a pretext for retaliation. To recover for retaliation under the TCHRA, Title VII and Section 1981, Plaintiff must show that a causal link exists between his alleged protected activity and adverse employment action. *Brewer*, 441 S.W.3d at 729. When evaluating the alleged causal link between the protected activity and the adverse employment action, "[courts] consider

only events that took place after a plaintiff engaged in a protected activity." *City of Granbury v. Willsey*, No. 02-17-00343-CV, 2018 WL 1324774, at *6 (Tex. App.—Fort Worth Mar. 15, 2018, no pet.) (mem. op.); accord *Cantu v. Hidalgo County*, 398 S.W.3d 824, 827 (Tex. App.—Corpus Christi 2012 pet. denied).

Here, Plaintiff's claims of retaliation fail because his EEOC Charge of Discrimination and Hotline Complaint, which constitute his alleged protected activity, were both filed after his termination. Compl, ¶66; Ex.3, ¶4. An adverse employment action that occurs before an employee engages in protected activity cannot form the basis of a retaliation claim. *Stone v. La. Dep't of Revenue*, 590 Fed.Appx. 332, 341 (5th Cir. 2014) (concluding a complaint failed to state a claim for retaliation when the adverse action occurred before grievances were filed, and thus the plaintiff failed to show "a causal connection between the protected activity and the adverse employment action"). Similarly, an adversary employment action occurring before the employee engages in protected activity cannot provide the basis for a claim that the employer disciplined the employee for exercising his or her protected rights. *See Yancy v. U.S. Airwa*ys, 469 F. App'x 339, 344 (5th Cir.2012) (discounting alleged incident of discriminatory conduct occurring before the filing of a complaint).

Because Plaintiff's protected activities occurred only after the alleged adverse employment actions, he cannot establish the requisite causal link between the two. Without evidence that his suspension or termination resulted from protected activity, Plaintiff cannot make a *prima facie* case of retaliation under the TCHRA, Title VII, or Section 1981. *Cantu*, 398 S.W.3d at 827.

*ii. Allied Had Legitimate, Non-Retaliatory Reasons For Suspending And Ultimately Terminating Plaintiff.*

Summary judgment should be granted on Plaintiff's retaliation claim for his failure to establish a *prima faci*e case. Nevertheless, as already established, *supra* p. 16-17, Allied has

proffered legitimate reasons for Plaintiff's suspension and termination, namely, Plaintiff violated Allied's UOF policy. Consequently, Allied's burden at this step is met.

*iii. Plaintiff Cannot Demonstrate Allied's Legitimate, Non-Retaliatory Reasons For Pretext For Retaliation.*

Like his other claims, Plaintiff's retaliation claim further fails because he cannot demonstrate Allied's proffered reasons are false and pretext for retaliation. Plaintiff's termination occurred before he filed the hotline complaint and his EEOC charge. And, Plaintiff has no evidence that would call any of the other proffered reasons into question or that would otherwise support a finding that they are pretext for retaliation. Plaintiff has presented no competent summary judgment evidence, besides his own conjectures, beliefs and speculation that would establish that Allied's reason for suspension and termination was pretextual.

In sum, at all times, the ultimate issue in a retaliation case remains whether the protected conduct was a "but for" cause of the adverse employment decision. *Long*, 88 F.3d at 305 n.4. As such, Plaintiff cannot meet his burden on his retaliation claim at any stage. Plaintiff cannot make a prima facie case and, even assuming he could, Plaintiff has no evidence to prove that Allied's proffered reasons for his suspension and termination were pretext for retaliation. Consequently, the Court should enter summary judgment on Plaintiff's retaliation claims under TCHRA, Title VII, and Section 1981.

**CONCLUSION**

For the reasons set forth above, Allied respectfully requests that this Court enter judgment in Allied's favor on all claims in this action.

Dated: November 18, 2024

Respectfully submitted,

**MARTENSON, HASBROUCK & SIMON LLP**

*/s/ Kelly Eisenlohr-Moul*

Kelly Eisenlohr-Moul, attorney-in-charge
(Tex. Bar No. 24112896, SDTX No. 3146632)
Nathan A. Shine (admitted *pro hac vice*)
Martenson, Hasbrouck & Simon LLP
500 Davis Street, Suite 1003
Evanston, Illinois 60201
(224) 350-3123
keisenlohr-moul@martensonlaw.com
nshine@martensonlaw.com

*Counsels for Defendant Universal Protection Service, LP d/b/a Allied Universal Security Services*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2024, I caused to be served a true and correct copy of the foregoing document on all counsel of record via electronic mail as follows:

Amanda C. Hernandez
AH Law, PLLC
5718 Westheimer, Suite 1000
Houston, Texas 77057
amanda@ahfirm.com

Amy Gibson
David Wiley
Gibson Wiley PLLC
1500 Jackson Street, #109
Dallas, Texas 75201
amy@gwfirm.com
david@gwfirm.com

*/s/ Nathan A. Shine*
Nathan A. Shine