# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

TWANA AHMED,                          :
                                       :
            Plaintiff,                 :      Case No. 4:23-cv-02823
                                       :
v.                                     :      Hon. Judge Lee H. Rosenthal
                                       :
UNIVERSAL PROTECTION SERVICE,          :
LP d/b/a ALLIED UNIVERSAL              :
SECURITY SERVICES,                     :
                                       :
            Defendant.                 :
_____:

### <u>DECLARATION OF KAREEM MCKINNON</u>

I, Kareem McKinnon, pursuant to 28 U.S.C. § 1746, state as follows:

1.      I am over the age of 18, have knowledge of the matters set forth herein, and could testify competently to them if called as a witness.

2.      I am presently employed by Universal Protection Service, LP d/b/a Allied Universal Security Services ("Allied Universal") and serve as a Senior Regional Vice President of the Central Region, which includes Texas. I have held this position continuously since August 7, 2023. I joined Allied Universal in December 2014 and have held various positions within the company including Director of Operations, General Manager, and Regional Vice President. I served as the Regional Vice President from October 8, 2021, through August 6, 2023.

3.      Based on my many years of affiliation and involvement with Allied Universal's business operations, I am familiar with certain general employment practices at Allied Universal including its Use of Force and Reporting Policy ("UOF Policy"). I am also knowledgeable in the matters discussed herein.

Docusign Envelope ID: A62FBD92-49A2-45FA-A9D7-C219D98B4C64

4.      In my capacity as Senior Regional Vice President, I am involved in overseeing the implementation of, and compliance with, Allied Universal's UOF Policy within my assigned region. The UOF Policy applies to all employees and security professionals are required to comply with the policy requirements throughout their employment. A true and correct copy of Allied Universal's UOF Policy is attached as **Exhibit A**.

5.      As per the UOF Policy, a UOF Incident Report must be completed in every incident involving a use of force as defined in the policy. Within five business days of the incident, regional and branch office management must investigate the incident to determine whether the force used complies with the UOF Policy.

6.      If the use of force applied appears to be not in compliance with the UOF Policy, a Root Cause Analysis ("RCA") must be completed. This requirement is defined and provided in Allied Universal's Incident Reporting & Response Policy ("Tab 07"). The completion of a RCA is at the direct request and direction of Allied Universal's Global General Counsel. A true and correct copy of Allied Universal's Tab 07 is attached as **Exhibit B**.

7.      As per the UOF Policy, on or about April 7, 2022, I reviewed a UOF Incident Report for an incident involving security professional Twana Ahmed that occurred on April 4, 2022, at a H-E-B site location in Houston. I was part of the panel assembled to review Mr. Ahmed's April 4, 2022 use of force incident, which included Client Manager Patrick Freeney, Branch Manager Felicia Solis-Ramirez, and Regional Vice President Bill King. A true and correct copy of the final incident report is attached as **Exhibit C**.

8.      On or about April 7, 2022, the panel completed its assessment of the incident involving Mr. Ahmed. A true and correct copy of the final RCA and Tab 07 Worksheet is attached as **Exhibit D**. The panel determined that the force used by Mr. Ahmed was unjustified and not in

compliance with the UOF Policy. As a result, Mr. Ahmed was terminated for violation of Allied Universal's UOF Policy.

9.      The determination that Mr. Ahmed violated the UOF Policy was based exclusively on the investigation findings related to the April 4, 2022, incident. The panel conducted its assessment solely on the objective factors outlined in the completed UOF Incident Report, RCA, and Tab 07 Worksheet. Furthermore, I have no knowledge of Mr. Ahmed's race, ancestry, ethnicity, national origin, or religious practices.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America, that the foregoing is true and correct, except as to matters stated to be based on information and belief.

FURTHER DECLARANT SAYETH NOT.

Executed on November _18.00_, 2024.

DocuSigned by:

*Kareem McKinnon*

2E942AE542614BE...

Kareem McKinnon
Senior Regional Vice President
Universal Protection Service, LP d/b/a Allied Universal Security Services

Docusign Envelope ID: A62FBD92-49A2-4EFA-A9D7-C219D98B4C64

# EXHIBIT A
# to
# Declaration
# of Kareem
# McKinnon

| Allied Universal Security Services<br>Policy Statement |
| :---: |

## Legal – Use of Force and Reporting Policy

**DATE REVISED:**   08/22/2021
**SOURCE:**         **Legal Department**
**PREPARED BY:**   **James C. Grant, Director, Firearms & Use of Force**
    **Policy:**      **Y**
    **Procedure:**  **Y**

**Purpose:**
To articulate policy and procedures concerning the use of force.

**Person(s) Responsible:**
Division Presidents
Region Presidents
Region Vice Presidents
Branch Managers (or similar)
Account and Field Operations (or similar)

**Scope of Employees Covered:**
This policy applies to all employees of Allied Universal Security Services.

## I.    Use of Force

### Use of Force- General Principles

It is Allied Universal's policy that employees shall not use physical force against persons unless the employee reasonably believes that such force to be necessary to protect the employee or another individual from imminent bodily harm.  The extent of force employed must not exceed the minimum amount of force necessary to counter the threat, and may be employed only for as long as the threat persists, as described in more detail below.

In most circumstances, disengagement in favor of calling law enforcement authorities is preferable choice.  Further, a decision to use force in any situation shall consider the likelihood of success and the risks to the Security Professional.  Under no circumstances should a Security Professional engage in a physical altercation that is likely to result in physical injury to the Security Professional or that is unlikely to effectively counter the threat.

Docusign Envelope ID: A62FBD82-49A2-45FA-A9D7-C219D98B4C64

Allied Universal considers any time an employee physically touches another person to achieve a desired level of compliance to be a use of force.  A use of force includes:

- Use of hands, body, defensive tactics or equipment, less lethal weapons, or firearms in the course of duties;
- Pursuit of any kind;
- Display or brandishing of any weapon;
- Deployment of a working dog.

As an exception to this policy, routine therapeutic patient restraint procedures and routine handcuffing during police operations (i.e. Company Police, Special Officers) do not need to be reported to the Legal Services Group.  In these environments, the Corporate Use of Force Report only needs to be completed if they involve the use of weapons, injuries to our employees, the subject or a third party, if there is some other unusual or unexpected outcome, or if the subject of medically-ordered therapeutic restraint resisted the procedure.

### Possession of Weapons Prohibited

No Allied Universal employee or agent may carry, possess, or store a firearm or other weapon, including less lethal weapons during the course and scope of their employment, except as permitted by this policy.  Except where state law prohibits such a restriction, this policy shall prohibit the carrying of a personal firearm to work, as well as having a personal firearm available in the passenger compartment or trunk of a Company vehicle or private vehicle being used for work purposes.  As stated in the employee handbook, employees who violate this policy will be subject to discipline up to, and including, termination.

### Use of Force Continuum

The Use of Force Continuum shall be the standard model for the use of force by all Allied Universal Security Professionals.  The continuum is broken down into six broad levels.  Each is designed to have an *elastic factor* to accommodate evolving situations evoking different levels of force.  It is common for the level of force to move from level two, to level three, and back again in a matter of seconds.

Allied Universal Security Professionals should be mindful that so long as prudent under the circumstances, disengagement in favor of calling the police or other law enforcement authorities is always the preferred course of action as part of the force continuum.

Additionally, Security Professionals must remember that the Use of Force Continuum relates not only to the escalation of the Use of Force but also directs the de-escalation of techniques as the subject's threats diminish or stop.

The following diagram demonstrates the escalation and de-escalation of the use of force with 1 being the least force used and 6 being deadly force:



6   Deadly Force

5   Temporary Incapacitation

4   Less Lethal Defensive Sprays

3   Control Holds / Restraints

2   Verbal Communication

1   Officer Presence

## LEVEL ONE

**Officer Presence**.  The mere presence of a highly visible uniformed Security Professional may stop a crime in progress or prevent future crime. Without saying a word, an alert Security Professional can deter crime or direct criminals away from a property by use of body language and gestures. At this level gestures should be non-threatening and professional.

## LEVEL TWO

**Verbal Communication**.  Used in combination with a visible presence, the use of the voice can usually achieve the desired results. Words can be whispered, used normally, or shouted to be effective. The content of the message is as important as the Security Professionals demeanor. It's always best to start out calm but firm and *non-threatening*. Choice of words and intensity can be increased as necessary or used in short commands in serious situations. The right combination of words can de-escalate a tense situation and prevent the need for a physical altercation. Training and experience improves the ability of a security officer to communicate effectively with everyone, including the police.

**<u>NOTE: All uses of force above Level Two require the preparation and submission of a Use of Force Report</u>**

## LEVEL THREE

*Allied Universal Security Services Use of Force and Reporting Policy –February 2020*

**Use of Open Hands, Control Holds & Restraints**.  Certain situations may arise where words alone do not reduce the aggression.  Sometimes Security Professionals will need to get involved physically. At this level, minimal force would involve the use of bare hands to guide, hold, or restrain. This does <u>not</u> include offensive moves such as punching, tackling, or choking.  Pain compliance holds could apply here but only after ordinary holds fail to control an aggressive suspect.  A baton may only be used at this level as a self-defense mechanism to block blows or temporarily restrain a suspect.  Handcuffs can be used a restraint devise only if the officer has been trained to do so. Not every suspect needs to be handcuffed. Restraints should only be used on a person who exhibits aggression, poses a real threat.  Handcuffs should not be applied too tightly and should be double-locked when safe to do so.  Once a suspect is handcuffed, the officer is responsible for his or her safety.  To avoid the possibility of "positional asphyxiation," Allied Universal Security Professionals may not pile on top of a suspect, or place a handcuffed suspect face-down on the ground.  Hog-ties and hobbling (tying legs together) are prohibited.

## LEVEL FOUR

**Less Lethal Defensive Spray (O.C.)**.  When a suspect is violent or threatening, more extreme but less lethal measures may be used in defense, to bring the suspect under control, or affect an arrest.  Before a Security Professional may moving to level four, it is assumed that he or she exercised other less physical measures or deemed them inappropriate.  When used by surprise, pepper spray is an excellent distraction, allowing the officer time to get away, call the police, or subdue the suspect.  Pepper spray may <u>not</u> be used to protect property or to enforce business rules.  It is a defensive weapon.  Pepper spray must be directed in the suspect's face for maximum result, and not sprayed wildly at groups of people.  Even though considered less lethal, pepper sprays can cause severe reaction and possible injury.  Also, pepper sprays have a blinding effect and care must be used that spray victims do not fall down stairs, wander into traffic, or operate a motor vehicle.

## LEVEL FIVE

**Temporary Incapacitation**.  This level of force may only be employed when the situation is so extreme, violent, and immediate that it is necessary to temporarily incapacitate a suspect prior to the arrival of the police.  This includes the use of all methods of non-deadly force beginning with the empty hand up through and including impact tools, Taser's or working dogs.  At level five, properly used defensive and offensive moves (including take downs, knee, hand, and elbow and arm strikes) are allowed under the right circumstances.  Baton blows to soft tissue and certain joint areas are consistent with professional security training standards.  Kicking any part of a subject's body, and baton blows to the suspect's head or throat, however, can be deadly, and are inconsistent with professional training standards, and are strictly prohibited **<u>unless the use of deadly force is justified</u>**.  Any violation of this directive will be treated as a serious offense warranting discipline up to, and including, termination.

Temporary incapacitation is used to stop a suspect from injuring an officer or others, permitting the application of handcuffs or other restraints.  Electronic control devices( ("ECDs") also

known as conducted electrical weapons, and "Tasers" are a recognized means of temporarily incapacitating an assailant, but may only be carried by an Allied Universal Security Professional with the express approval of the Chief Administrative Officer and General Counsel in consultation with the Legal Services Group.

**LEVEL SIX**

**Deadly Force**.  Allied Universal Security Professionals are justified in threatening or using less lethal force against another when and to the extent that the officer reasonably believes that such threat or force is necessary to defend him/herself or a third party against another's imminent use of unlawful force.  Deadly force, however, may be used only when necessary, that is, when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the officer or to another person, and the use of lesser force is not possible or would not extinguish the threat.

By way of example, but not limitation:

> A.  Deadly force generally may not be used to prevent the escape of a fleeing suspect unless that individual poses an imminent threat to the safety of others.
>
> B.  Firearms may not be fired for the purpose of disabling moving vehicles.
>
> C.  Firearms may not be discharged at or from a moving vehicle.
>
> D.  Warning shots are not permitted.

If feasible and if to do so would not increase the danger to the Security Professional or others, a verbal warning to submit to the authority of the officer shall be given prior to the use of deadly force.

When the decision is made to use force, an Armed Security Professional may continue its application only until the subject surrenders or otherwise no longer poses an imminent danger to the Security Professional or to others.

When the application of deadly force is necessary, attempts to wound or otherwise cause minor injury are unrealistic and impractical, and can prove dangerous to the Security Professional and others because such attempts are unlikely to neutralize the imminent danger he or she confronts.

The brandishing of an un-holstered firearm in a public setting is strictly prohibited unless the situation warrants the use of deadly force as stated herein.  Even when deadly force is permissible, Armed Security Professionals should assess whether its use creates a danger to third parties that outweighs the likely benefits of its use.  Consideration must be given to innocent bystanders and Security Professionals shall not unreasonably endanger the safety or welfare of bystanders.

*Allied Universal Security Services Use of Force and Reporting Policy –February 2020*

**Additional Criteria for All Uses of Force**

Whether deadly or less lethal, when force is used against a person it must cease when the resistance or threat is overcome or ceases. Allied Universal Security Professionals must be mindful that the purpose of force is to overcome aggression or threats and only to protect the lives of the officer or other persons. The application of force for any other purpose is not justified.

Since the Use of Force Continuum requires the exercise of less lethal force before resorting to deadly force, no Allied Universal security officer will be authorized to carry a firearm unless and until that officer is trained in the use of, and equipped with, a less lethal weapon such as a baton, pepper O.C. (Oleoresin Capsicum) spray, or ECDs.

*NOTE: Adoption or use of Client-specific use of force policies must be approved by the Legal Services Group.*

Allied Universal Security Professionals will exercise only that level of force necessary to de-escalate an incident and safely achieve control. As indicated by the Use of Force Continuum, whenever feasible, verbal commands should be given before resort to physical compliance techniques or the use of O.C. spray, a baton, or stun device. The level of force necessary to safely achieve control will logically be proportionate with the level of resistance confronted.

**Monitoring of the Subject and Medical Attention**

Once a combative subject has been detained it is important to monitor them for any medical problems resulting for the use of defense tactics or equipment. Medical professionals shall be summoned for any subject who has been exposed to prolonged fighting, OC spray, baton strike, ECD use, dog bite, gunshot wound or with any other obvious injury or medical difficulty. In the case of OC spray, immediate post-exposure cleansing should begin as soon as it is tactically safe to do so.

**Pursuit**

Pursuit is defined as travelling at a faster pace or speed than a suspect, with the objective to approach and detain a suspect who is attempting to flee the scene of a crime and/or to avoid arrest/detention. Pursuit is **prohibited** except in situations where failure to detain the suspect could cause death or serious bodily injury.

Pursuit does not include following at a rate and manner to maintain surveillance of the fleeing suspect with the intent to relay information to responding Law Enforcement or to contact the suspect who ceases to flee.

**Vehicle Pursuits**

A pursuit using a vehicle is defined as using a vehicle to follow a suspect who is on foot or in a vehicle while travelling at a higher speed than normal for the environment or in a manner that would be considered unsafe for the environment.

Vehicle Pursuits are **prohibited**, no matter the circumstances or equipment provided on security vehicles

Following a suspect or a suspect vehicle shall not be done in a manner that is unsafe or violates any jurisdictional vehicle code (speed limits or traffic control laws) or private property rules.

### Detention and Legal Arrest

A Security Professional, as result of his/her position, has no elevated legal duty or authority to detain or arrest a subject.

A person is considered arrested or detained when he/she is not free to leave the scene, regardless of whether force or coercion has been used.

Generally, a Security Professional's ability to make a lawful arrest is governed by the same laws which govern arrests made by private citizens, commonly referred to as a "citizen's arrest". Therefore, a Security Professional should understand the law in the jurisdiction where they are working with respect to a private citizen's ability to perform a lawful arrest. What may be considered a lawful detention and arrest in one state may be unlawful in another state.

Security Professionals may only make a Citizen's Arrest under a set of very strict circumstances. Though state laws vary, a Citizen's Arrest generally can only be made if all three of these conditions have been met:
- A felony has been committed in your presence
- The police would not be able to respond in time to prevent injury from imminent physical harm or death (a justified use of reasonable) force or the escape of the subject
- Your site's contract and post orders permit you make a citizen's arrest

Making a physical arrest should be an act of last resort and local law enforcement must be immediately notified.

There is no legal obligation for a Security Professional to make an arrest. While it is recognized that there are situations wherein Security Professionals do make arrests, if the situation is unsafe, the decision to not arrest may be appropriate. In such a situation, notifying and waiting for Law Enforcement may be prudent.

### Moving an Arrestee

Docusign Envelope ID: A62FBD02-49A3-4E5A-A9D7-C219D98B4C64

While awaiting the arrival of Law Enforcement, the Security Professional should keep the arrestee at the scene of the apprehension, unless doing so would be unsafe.  The arrestee should be placed in a seated position, either on a chair or other elevated stable object.  If no such object is available the arrestee may be seated on the ground.

Any handcuffed and compliant arrestee shall be seated or under direct physical control of a security professional.

As set forth above in Section I (Use of Force Level 3) at no time shall a restrained subject be left in a prone (face-down) position.  Hog tying or hobbling of subjects is prohibited.

If it is prudent to move the arrestee due to tactical or procedural considerations, then the arrestee may be escorted to another location.

The arrestee shall be under the observation of Security Professionals at all times until placed in the custody of Law Enforcement.  The constant observation of the arrestee is for the safety of all persons, to limit the attempt to escape, or to protect against the destruction of evidence.

### Exceptions to the Pursuit/Detention/Arrest Policy Statements

In some instances, Allied Universal Security Professionals' have different duties and legal authorities, such as "police type" operations (i.e. Company Police, Special Officers), certain retail environments, facilities impacting national security or critical infrastructure.  In these instances, further policy instructions, in conjunction with local regulations regarding the limits of your authority, will be communicated at the job level.

## II.    Reporting Requirements and Response

### Required Reporting

In every incident involving the Use of Force, the employees(s) involved must complete a "Use of Force Incident Report" and this form is to be forwarded by the Account Manager or Field Operations Manager over the Security Professional involved in the event to the Legal Services Group (force@aus.com) with copies to the supervisor's management chain (i.e. BM, RVP, RPs) within 24 hours of the event.  This report will provide detail about the incident including the identity of those involved, the level and type of force applied, and the reasons for its application.  Injuries to either officers or others must be fully described, as must any resultant property damage.

Branch and Regional Office management are responsible for strict compliance with notification requirements specified by all relevant state, local, and county private security licensing and regulatory authorities.

Within 5 business days of the event, Branch Office management will review the incident, the Security Professional(s) immediate supervisor must make a recommendation regarding whether

the use of force complied with company policy, contract deliverables, and local regulations or if any additional investigation is dictated by the facts and circumstances of the incident.

### Response

In all incidents involving the Use of Force, the Security Professional's immediate supervisor will respond to the scene as soon as practicable to gather the facts and assist the officer in the preparation of Use of Force Incident Report.  He or she should notify the Account Manager and/or Branch Manager of the event as soon as practicable.

Absent aggravating circumstances, no further investigation is necessary beyond the submission of the Use of Force Incident Report to the Legal Services Group and relevant Regional President. In determining whether an investigation is necessary based upon aggravating circumstances, local management should consider the nature and level of force applied, the extent of any injuries, and the level of adherence to policy.  The Supervisor, Account Manager, Branch Manager, and, if appropriate, the Regional President should contact the Legal Services Group for guidance in such cases when formulating a recommendation for follow-up investigation.

# EXHIBIT B
# to
# Declaration
# of Wayne
# Oliver

# Incident Reporting & Response
# Tab 07

## PURPOSE

To provide direction for reporting and responding to incidents involving employee injury, vehicle damage, and near miss incidents.

## SCOPE

This program outlines procedures for reporting, investigating and responding to incidents that result in, or could have resulted in personal injury and or property damage. Prompt reporting of incidents and thorough response will aid in determining the root cause of an incident and establishing corrective actions to prevent future incidents.

This program details the responsibilities of management, per federal law, to report certain types of severe incidents to OSHA within 8-hours of the occurrence.

## APPLICATION

This program applies to all Allied Universal (AUS) offices and sites.

## RESPONSIBILITIES

**Management:**

- Oversee program implementation so that incidents are reported and responded to in accordance with these guidelines.
- Manage compliance with this process and the corporate Whistleblower Protections policy so that no employee reporting a safety incident is subject to retaliation for doing so.
- Review incident responses for accuracy and verify timely completion of action items.
- Report all fatality or severe injury/illness events, per direction of this section, promptly to the Corporate Safety Management Team and then the local OSHA office.

**Managers/Supervisors:**

- Establish incident reporting procedures for the site and provide instruction to all employees on when and how to report a Near Miss, Injury, Illness or Vehicle Collision. Receive these reports and respond to incidents without retaliating against employees, as detailed herein and in the corporate Whistleblower Protections policy.
- Immediately report all fatality or severe injury/illness events up the management chain of command.
- Report all work-related Near Miss, Injury or Illness incidents and Vehicle Collisions to the Third Party Administrator (or monopolistic state organization) within 48 hours of receiving notification of the event; and to the client per local requirements.
- Report all vehicle collisions through the AUS vehicle accident process.
- Complete the Incident Reporting & Response training module(s) on the EDGE and be familiar with the corporate Whistleblower Protections policy.
- Conduct an incident response as described herein.
- Complete all assigned Corrective Actions within the specified time-period.



# Incident Reporting & Response
# Tab 07

**Employees:**

- Report all Near Miss, Injury, Illness and Vehicle Collision incidents promptly– before the end of the shift in which the incident occurred.
- Cooperate and take part in the incident investigation process.
- Offer input as to how an incident could have been prevented for ongoing safety improvement.


**DEFINITIONS**

**Employee Fatality –** Any situation which results in the death of an Allied Universal employee, including all heart attack deaths; the cause/circumstances of death (work-relatedness) should not be considered for OSHA reporting purposes.

**Immediate Cause –** The event or condition that directly led to the incident.

**Near Miss –** Incident, action or hazard encountered in the workplace which does not result in an injury, property damage, vehicle damage or other loss, but had the potential to do so.

**Root Cause –** The underlying reasons for why the immediate cause(s) existed.

**Severe Incident –** For OSHA reporting purposes, a severe incident is any incident resulting in a work-related fatality, in-patient hospitalization, amputation or loss of an eye of one or more employees.

> For internal investigation purposes, this definition should also include any incident that did or could have limited someone's ability to perform their normally assigned job duties, significant property damage or loss, or major deviation from accepted safe practices that could expose the company to liability.

**Solution Team –** The Solution Team is a small group of company representatives who gathers to complete the root cause analysis. The solution team includes a minimum of three people: the supervisor of the involved employee and the manager of that supervisor, and a subject matter expert (SME). Whenever possible the SME will be the involved employee; when the involved employee is not able to participate they may be replaced on the team by another employee who completes the same task/ job. The Solution Team will determine if any additional people should be invited to join the team on as needed.

**Vehicle Collision –** Incident which results in property damage, vehicle damage, or injury to a person, involving a licensed motor vehicle

**Work-related –** Any incident which occurs within the course and scope of employment.



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/13/19

AUS 00823

# Incident Reporting & Response
# Tab 07

**I.**  **INCIDENT REPORTING REQUIREMENTS**
  **A. Reporting Procedures for Employees and Supervisors**
  **B. Reporting Safety Concerns**
  **C. OSHA Notification of Severe Incidents**

**I.A.**  **Each site will establish an Incident Reporting procedure, which will outline:**

- Names of people who will receive incident reports, and how to contact each.
- Instructions for how to report incidents. Sites are encouraged to utilize Appendix 7.2, the Employee Incident Report Form to document incident reports.
- Off-hour reporting procedures, if these differ from routine reporting procedures.
- Supervisors/ Managers are responsible to inform each employee of their right to report a safety incident and of the reporting procedures in place initially upon the employee's assignment to the site and when the reporting procedure is modified.

**All employees will promptly report injuries, vehicle collisions, and/or near miss events to their manager/supervisor.** In most cases this will be done immediately, but in some situations this notification may be slightly postponed. In ALL situations, these events will be reported before the end of the shift in which they occur.

Employees may use the Employee Incident Report Form (Appendix 7.2) to document and report an incident. The employee statement providing a description of what happened is the first piece of information the investigator will have to begin the investigation phase of the response.

Every employee has the right to report a safety incident without fear of retaliation.  See the corporate Whistleblower Protections policy for further details.

**Upon notification of an injury, vehicle collision or near miss event, supervisors/managers will:**

- Promptly eliminate or guard access to hazards in the area where the incident occurred, to reduce risk to others.
- Discuss with the involved employee if medical care is needed. The employee may self-administer First Aid, First Aid care may be administered by a certified person, or off-site care may be sought. When off-site medical care is needed, supervisors/managers will provide employees with a list of local Panel Physicians (found on the internal SharePoint site), per state requirements.
- Report the incident to the client, per local procedures and contract requirements.
- Report all incidents to the Third Party Administrator (TPA) by phone or via monopolistic state specific requirements. The First Report of Injury form will be used to document necessary information prior to the call. The phone number for TPA is listed at the top of this form. This notification should be made by the end of the shift in which the incident is reported, but never later than 48 hours after the incident report.
  - Monopolistic States include:  Ohio, North Dakota, Washington, Wyoming



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

AUS 00894

# Incident Reporting & Response
## Tab 07

- Report all vehicle collisions, regardless of vehicle ownership, through the AUS vehicle accident reporting process. This means that vehicle collisions are also reported to the TPA as a Near Miss if no injury resulted.

### I.B. Methods to Report Safety Concerns (and Safety Incidents)

Employees with safety concerns can communicate with their site supervisor/manager, local Human Resource representative or send safety questions/concerns to safety@aus.com. If further support is needed employees can also call **Allied Universal Employees First at 1-800-461-4330 in the United States, or at +1-720-514-4400 outside of the United States,** or make an anonymous report online at http://employeesfirst.aus.com if at any time when they:

- Do not feel comfortable contacting the designated supervisor;
- Do not feel your concern was appropriately addressed;
- Do not have the contact information for the appropriate person;
- Have not received a response to your concern within 10 business days.

Employees can make this call 24 hours a day, 7 days a week anonymously; however, providing a name will allow a more direct and personal response. The sole purpose of the Hotline is to get the concern to the appropriate person so that the issue can promptly be resolved.

Nothing in this manual prohibits employees from reporting possible violations of federal, state or local law or regulation to any government agency or entity and any agency inspector general, or making other disclosures that are protected under the whistleblower provisions of federal, state or local law or regulation. While Employees are encouraged to bring any such possible violation to the attention of Allied Universal. Employees do not need the prior authorization of Allied Universal to make any such reports or disclosures to these entities.

In the event that an employee is unable to report an incident using the site reporting process, or is uncomfortable reporting a safety incident to their supervisor/manager, they may report such an incident via The SECURITY VIOICE HOTLINE, as described above. Employees are encouraged to first use the established reporting process for their site and only report safety incidents via the hotline as needed.

### I.C. OSHA Notification Requirements

**In the event of an employee fatality or severe injury/illness, management must provide prompt notification to the nearest OSHA office.**

**Upon notification of an employee fatality or severe injury/illness, supervisors/ managers will:**
- Immediately make notifications up the organizational chain of command. Prior to notifying OSHA, someone in the regional management team will notify the corporate Legal Service Group and Corporate Communications of the situation.
- Determine with upper management if and how notification will be made by an Allied Universal representative to the employee's emergency contact(s), to the media, and/or to the client.



# Incident Reporting & Response
# Tab 07

- Provide prompt notification of a severe incident to the appropriate state or federal agency within the required time period.
- **Federal OSHA Notification:**  Make notification to the local area OSHA office, or call 1-800-321-6742, as detailed in the below table. At the completion of the call request and document the name of the person you spoke with.

| TYPE OF SEVERE INCIDENT | Federal OSHA | | California Cal/OSHA | | Other State Plans** |
|---|---|---|---|---|---|
| | Scope | Deadline | Scope | Deadline | |
| Amputation of any body part | Work-related only | Within 24 hours | All severe incidents, including non-work related events must be reported.<br><br>California additionally requires notification of any 3rd degree burns and any permanent disfigurement/ disability. | Within 8 hours | Verify state-specific requirements as they may differ slightly from Federal OSHA Reporting requirements.  Visit www.osha.gov/dcsp/osp/ for details |
| Hospitalization of 1 or more employees | Work-related only | Within 24 hours | | | |
| Loss of an Eye | Work-related only | Within 24 hours | | | |
| Fatality – other than those detailed below | Work-related only | Within 8 hours | | | |
| Fatality resulting from a heart attack | Report all | Within 8 hours | | | |
| Fatality resulting from a motor vehicle collision | No report required | N/A | | | |
| Fatality resulting from a suicide | No report required | N/A | | | |

- **\*\*Other State Plans:**  Operators in the following states must consult state-specific requirements for fatality/severe incident reporting, which may differ slightly from Federal OSHA requirements.  Visit www.osha.gov/dcsp/osp/ for details:

  Alaska, Arizona, California, Connecticut, Hawaii, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Puerto Rico, South Carolina, Tennessee, Utah, Vermont, Virgin Islands, Virginia, Washington, Wyoming.

**Note: in California non-work-related events which occur in the workplace must be reported**. Make notification as soon as possible, but within 8 hours.  At the completion of the call request and document the incident case number and/or identification number of the representative who received the report.



© Allied Universal Security Services; Universal Protection Service, LP. All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

AUS 00896

# Incident Reporting & Response
# Tab 07

II.    **INCIDENT RESPONSE**
   **A. Incident investigation,**
   **B. Root cause analysis and**
   **C. Corrective actions**

The purpose of an incident response is to gather facts about the incident so a root cause analysis and corrective actions may be implemented to prevent reoccurrence; not to identify fault or blame. An investigation which seeks to identify fault or blame is counterproductive and not in line with the company safety culture.

The investigator(s) will gather facts, to identify all potential causes, working without assumption or bias. The Solution Team will use this information to determine what corrective actions may be implemented to prevent reoccurrence. Allied Universal training on the responsibilities and process of how to conduct this phases of the incident response will be available on the Allied Universal **EDGE**.

All incidents, including Near Misses, will be responded to as soon as possible. The response to severe incidents will be initiated within 24 hours from the time the incident was reported. Local management will determine if a non-severe Near Miss report warrants a full response and involvement of a Solution Team or if the issue can be adequately responded to by an individual Manager/ Supervisor.

II.A.    **Incident Investigation Process**
An incident investigation is conducted to collect information about the incident and gain an understanding of what and how the incident occurred.  The steps of this process include:

1. Survey the Scene
2. Conduct Interview(s)
3. Document the Facts

The following incident response procedure will be used, unless the client requires a local equivalent investigation process to be used:

**1. Survey the Scene:**

- Whenever possible the investigator will visit the location where the incident occurred. If this is not possible, photos will be taken at the scene to evaluate the physical conditions of the area. The investigator should survey for any/all factors that could contribute to the incident.
- Eliminate or guard against hazards in the area where the incident occurred to reduce risk to others in the area.  Any hazardous conditions shall be reported to the client or property owner.
- For serious incidents, evidence related to safety incidents will be collected, preserved and secured.



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

Docusign Envelope ID: A62EBD02-49A3-4E5A-A9D7-C219D98B4C64

# Incident Reporting & Response
## Tab 07

### 2. Conduct Interviews:

- A Human Resources representative or local manager will interview the employee(s) involved in the incident in a manner that conveys concern for the employee and with a goal to fix the problem that caused the incident. This is achieved through use of open-ended questioning and active listening skills.
- Ask questions that lead to facts, while avoiding opinions. Finish the interview by asking 'how do you think this incident could have been prevented?'
- Some incident investigations may involve additional interviews, including witnesses, or others with related work, etc.
- Interviewing employees after an incident can be difficult. Employees may be uncooperative if they are afraid of ridicule, worried about creating a bad impression, or concerned about disciplinary action. The following guidelines will help the investigator conduct a productive interview:
- Show concern for the employee's injury, no matter how minor.
- Explain the investigation process and that the goal is to understand what happened in order to prevent a future similar incident from occurring.
- Use a friendly/ cooperative approach.
- If possible, discuss the incident at the scene.
- Get the injured employee's story before asking questions.
- Check your understanding of the story.
- Listen carefully. Avoid interrupting.
- Use tact in clearing up discrepancies in employee's story.
- Avoid sarcasm, blame and threat.
- Discuss ways to prevent a recurrence.  Ask the involved/ affected employees for their suggestions.
- Avoid using the word 'why' when asking what people did. (It causes people to justify and defend their actions.)

### 3. Document Facts:

- Investigators will use the Incident Investigation Form (Appendix 7.1) to document the results of the investigation.
- Other documentation including notes, photos, etc. will be retained on file.
- Facts to be sought include (but are not limited to):
  - Who was involved?
  - What happened?
  - When and how did the event take place?
  - Did the employee complete the JSA Acknowledgement form upon assignment?
  - When was the JSA last updated,
  - What procedures applied to the work activity?
  - What equipment and/or PPE was used?
  - What related training was completed prior to the incident?
  - What (if anything) was abnormal prior to the incident?
  - What hazards were present, etc.?



# Incident Reporting & Response
## Tab 07

- Photographs or video recordings should be utilized as necessary in conjunction with investigations of incidents involving personal injury, property damage (including motor vehicles), equipment or material failure, and all incidents that may even remotely involve third party action or omission. This builds defenses against liability claims.


- Photographs should be sufficient in number to adequately reflect the general area as well as pertinent details from a variety of angles. It is better to take too many than not enough. Photographs should be taken as soon as possible following the incident. Identify each print on its reverse side as follows:
  - o Name of injured (if equipment damage, type; if property damage, location)
  - o Date of incident
  - o Photographer's name
  - o Time photographs taken (date, if different from occurrence)
  - o Direction facing and
  - o Brief description of photo (i.e., what it shows)

### II.B.    Root Cause Analysis Process

The Analysis and Follow-up stage of the response is used to evaluate the underlying causes which can be addressed to prevent reoccurrence.

A Solution Team will be assembled to use the Fishbone (Ishikawa) method of Root Cause Analysis (RCA) to analyze what factors contributed to cause the incident. The Solution Team will remain open-minded to the fact that more than one line or cause may result from this process.

**Conduct the Fishbone Root Cause Analysis:**

This process is used to identify the underlying causes of the incident, not the immediate causes. The purpose of conducting the RCA is to determine what system or process failed so that this incident could occur. A RCA which points directly and solely to an employee behavior or error as the root cause of the incident should not be accepted without review by upper management.

Solution Team members will receive training on the Fishbone RCA process via the Incident Investigation module(s) on the EDGE. Together the Solution Team will:

Step 1:    Write the problem statement. This is a brief description of the negative outcome resulting from the incident being analyzed. The major categories (fish bones) will include: Environment/ Materials, Equipment, Process/ Management and People.

Step 2:    Brainstorm all possible causes, asking "why did this happen?" The list of questions (provided in Appendix 7.3) for each major category is a starting point, but the Solution Team is encouraged to consider other potential causes. Sub causes will be added to the fishbone and causes.

© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19



ALUS 00853

# Incident Reporting & Response
## Tab 07

Step 3:    The Solution Team will write possible issues that contributed to the incident on the appropriate fish bone. For each item noted the team will dig deeper through questioning to analyze how that issue contributed to the incident and what caused that issue.

Step 4:    The Solution Team will select between one-to-three causes from Step 3, ranking these in priority from the most significant to least significant issue that contributed to cause the incident.

**Determine Causes:**
The Solution Team will determine the Immediate and Root Causes for the incident. Even simple incidents may have multiple causes. Causes will be determined through the ranking process in step 4 of the RCA; there is no limit to how many causes may be identified. The purpose of identifying these causes is to generate improvement recommendations and effective corrective actions.

**II.C.    Implement Corrective Actions**
A repeat of the incident can be prevented when the underlying causes of an incident are identified and adequately addressed.

The Solution Team will propose corrective actions for each cause identified. Each corrective action will be assigned to an individual for implementation, to be completed as soon as possible following the incident. A due date shall be assigned to each corrective action and the resolution and date documented.

It is the responsibility of local management to manage this process and hold individuals accountable to complete the assigned corrective actions in a timely manner.



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

# Incident Reporting & Response
# Tab 07

---

**EMPLOYEE INCIDENT REPORT FORM- APPENDIX 7.1**

1. **When did the incident occur?**
   Date:                          Time:

2. **When did you report the incident to your Supervisor/ Manager?**
   Date:                          Time:

3. **What type of incident occurred?** (circle one)
   Near Miss (no injury or damage)              Vehicle Collision
   Injury or Illness                            Other

4. **Describe the incident; what happened?**

```
┌────────────────────────────────────────────────────────┐
│                                                        │
│                                                        │
│                                                        │
│                                                        │
│                                                        │
│                                                        │
│                                                        │
│                                                        │
│                                                        │
│                                                        │
│                                                        │
│                                                        │
└────────────────────────────────────────────────────────┘
```

---

**Employee Name**        **ID Number**      **Employee Signature**                    **Date**

---



© Allied Universal Security Services; Universal Protection Service, LP. All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

AUS_0086

# Incident Reporting & Response
# Tab 07

## INCIDENT INVESTIGATION FORM - APPENDIX 7.2

| General/ All Incidents |
|---|

**Job Name** _____

**Job Number** _____

**Was this a Temporary Job?**  Yes    No    Unknown

**Account Manager** _____

**Branch Office** _____

**Employee Number** _____ (Do not include Employee Name due to HIPAA Privacy)

**ESIS Claim Number** _____

**Incident Date** (MM/DD/YY) _____

**Incident Time** (Include AM or PM) _____

**Time in Shift**  Early in shift    Mid shift    End of shift    Unknown

**Type of Incident**  Near miss    Injury/Illness    Vehicle Collision    Other

**Brief Description of incident:** _____

**Medical Treatment**  None    Self    First Aid on site    Provided First Aid on site    Medical Provider

**Date Incident Reported to Manager** (MM/DD/YY) _____

**Date Manager Reported to TPA** (MM/DD/YY) _____

**Witnesses Present?**  ☐ YES (provide list of names to manager in separate document)    ☐ NO

**Where did the incident occur?**  Indoor    Outdoor

**Describe where on property the incident occurred** _____

**What weather conditions may have played a factor in the incident?** (Check all that apply)
Clear    Cloudy    Foggy    Ice    Rainy    Sleet    Snow    Sunny    Windy    Extreme heat
Extreme Cold    Weather not a factor    N/A

**What were the lighting conditions at the time of the incident?**  Dim indoor dim outdoor    Missing/broken light Sun glare    Safe indoor    Safe outdoor    Unknown

**What was the task being performed at the time of the incident?** _____

**Was employee following post orders/ procedures?**  Yes    No    Unknown
Further description: _____

**Was employee rushing at the time of the incident?**  Yes    No    Unknown
Further description: _____

**Was employee distracted, unfocused or multitasking at time of incident?**  Yes    No    Unknown



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

AUS 00862

# Incident Reporting & Response
# Tab 07

---

**Was employee previously trained to safely complete task?**   Yes    No    Unknown

**Was the employee working overtime or an additional shift?**   Yes    No    Unknown

**Was there an existing JSA for the post/ activity?**   Yes    No    Unknown

**Was the JSA reviewed in the last 12 months?**   Yes    No    Unknown

**Date of last JSA review** (MM/DD/YY) _____

**Did the employee sign the JSA Acknowledgement?**   Yes    No    Unknown

**Date of Acknowledgment signature** (MM/DD/YY) _____

**Was the hazard involved in the incident included on the current JSA?**   Yes    No    Unknown

**Are JSA updates needed as a result of this incident?**   Yes    No    Unknown

**Additional JSA Comments** _____

_____

For the incident types listed below, continue to complete the additional section:
- Fall incidents
- Assault incidents
- Vehicle/ Transportation incidents

| **Complete this section for all Fall Incidents** |
|---|

Answer questions 1-6, then complete the additional questions matching the type of fall selected in question 1.

**1. What type of fall occurred?**   Chair    Equipment    Slip    Stairs    Trip/mis-step    Other    Unknown

**2. Was the employee wearing approved footwear?**   Yes    No    Unknown

**3. Was the employee wearing slip-resistant shoes?**   Yes    No    Unknown

**4. Was the employee wearing Yak Trax?**   Yes    No    Unknown

**5. Upon inspection were there any shoe defects?**   Yes    No    Unknown

>  **a. If yes, select the defect**   Loose sole    Untied laces    Other
>  Shoe did not meet uniform requirements

**6. Any additional Fall Incident comments** _____

<u>**Complete for all Slips and Falls:**</u>

**What was the walking surface material?**   Carpet    Grass/dirt    Gravel    Pavement    Tile
Other    Unknown

---



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

# Incident Reporting & Response
# Tab 07

**What was the walking surface hazard?**  Food/ beverage    Grass/gravel/sand    Process material
Snow/ice    Water    Unknown    None

**Complete for all Trip/Mis-step Falls:**

**Was poor housekeeping/ maintenance in the area a factor?**  Yes    No    N/A

**What hazard was involved?**  Carrying object    Obscured view    Obstacle in walkway
Stepping down    Stepping up    Uneven surface/ hole    Other    Unknown    None

**Complete for all Stairs Falls:**

**How were the stairs being used?**  Climbing up stairs    Descending stairs

**Was there a hazard on the stairs?**  Yes    No

**Was the employee holding the handrail?**  Yes    No    Unknown

**Was the employee carrying an object on the stairs?**  Yes    No    Unknown

**Complete for all Equipment falls:**

**What type of equipment was involved?**  Automobile    Bicycle    Golf cart    Ladder    Segway
Step stool    Other         Description: _____

**Did the employee successfully complete training on the equipment involved?**
Yes    No    Unknown    N/A

**Was all required PPE worn properly?**  Yes    No    Unknown    N/A

**Complete for all Chair Falls:**

**What chair hazard was involved?**  Broken chair    Chair with rollers    Leaning back    Leaning forward
Sitting/ standing quickly    Using chair inappropriately    Wrong chair for task

**Complete for all Other Falls:**

**Were other factors involved?**  Assault    Illness    Previous injury    Unknown
Description: _____

**Additional information about this fall:** _____

_____

_____



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

# Incident Reporting & Response
## Tab 07

---

| Complete this section for all Vehicle/ Transportation Incidents: |
|---|

**Was a Motor Vehicle Record (MVR) Report required for this driver?**   Yes    No    Unknown    N/A

**If applicable, date of the initial MVR report?**   (MM/DD/YY)   _____

**If applicable, date of last MVR check?**   (MM/DD/YY)   _____

**What was the date that the driver completed Driver Training?** (MM/DD/YY)   _____

**Was the driver wearing the seatbelt at the time of the incident?**   Yes    No    Unknown    N/A

**Does the driver use the company vehicle outside of work?**   Less than monthly or never     Monthly
Daily    Other    Unknown

**What type of vehicle was our driver operating?**   Bus    Car    Golf cart    Motor cycle    Other
Further Detail: _____

**Who owns the vehicle that our driver was operating?**   Client    AUS    Employee    Rental    Other

**On what type of property did the incident occur?**   Client site    Non-client site

**Describe the type of location where the incident occurred**: Private intersection    Private parking lot
Private roadway    Other private property    Public roadway    Public multi-lane roadway
Public intersection    Other public property    Other

**How was the vehicle moving at the time of the incident?**   Driving forward    Driving reverse    Parked
Stopped    Other    Further Detail: _____

**What type of incident occurred?**   Struck by animal    Struck by person    Struck by vehicle
Struck by weather    Struck against animal    Struck against equipment    Struck against person
Struck against stationary object    Struck against vehicle    Struck against other

**What contributing hazards were involved for our driver at the time of the incident** (check all which apply):
Alcohol/ drug use (including over the counter meds)    Fatigue    Low light    Sun glare    Speed
Weather    Other    Unknown

**Additional information about this vehicle incident:** _____

_____

_____

---



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

# Incident Reporting & Response
# Tab 07

---

| **Complete this section for all Assault Incidents:** |
|---|

**Where did the assault of our employee occur?**

Public area, not client property          Healthcare Facility ER          Healthcare Facility Waiting Room
Healthcare Facility other indoor          Healthcare Facility outdoor          Retail Property indoor
Retail Property loading dock              Retail Property parking lot          Retail Property parking garage
Retail Property sidewalk                  Retail Property other outdoor        AUS office/ venue
Other client location indoor              Other client location outdoor        Unknown


**How did the employee interaction begin with the assailant?**  Chose to intervene    Directed to intervene
Attacked without prior involvement    Went in pursuit of the subject    Other    Unknown
Further detail: _____

**How did our employee approach the assailant?**   Approached situation independently
Approached situation with support    Contacted law enforcement before becoming involved
No approach – was attached by surprise    Other    Unknown
Further detail: _____

**Who was the assailant?**  Combative patient    Individual    Group    Other    Unknown
Further detail: _____

**Did the assailant brandish/utilize a weapon?**  Yes    No

**If yes, what type of weapon?**  Hand/foot/other body part    Bat/ blunt object    Knife/sharp object    Gun
Taser    Pepper Spray    Other

Further detail: _____

**Did our employee brandish/utilize a weapon?**  Yes    No

**If yes, what type of weapon?**  Hand/foot/other body part    Bat/ blunt object    Knife/sharp object    Gun
Taser    Pepper Spray    Other

Further detail: _____

**What type of injury to our employee resulted from the assault?**  Bitten    Gunshot wound    Stabbed
Spat on    Struck with hands/body    Struck with object    Other    Unknown
Further detail: _____

**Police Report Number, where applicable:** _____

**Additional information discovered about this assault incident:** _____

_____

_____

---



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

AUS 00866

**Incident Reporting & Response
Tab 07**

---

**ROOT CAUSE ANALYSIS QUESTIONING GUIDE - APPENDIX 7.3**

Solution Teams can use the questions below to consider a variety of issues which may have contributed to an incident. These questions are a starting point, but Solution Teams are encouraged to consider other potential causes.

Questions are written so that in most cases a "No" answer would indicate a concern and possible cause. Those questions marked with (**) do not follow this rule, and a "Yes" answer would indicate a concern and possible cause.

**Environment/ Materials**

- Was the work environment free from weather hazards?
- Were walking surfaces free from hazards? (debris, uneven, lack of handrail, slick surfaces, etc.)
- Was lighting adequate to walk/ work safely?
- Was housekeeping in good order? (tidiness, cleanliness, and materials/furniture properly placed)
- Was there sufficient work space?
- Was the employee walking/ working in the correct environment?
- ** Did the task involve exposure to chemicals, traffic or an emergency situation?
- ** Did interaction with a customer/ client/ volatile person contribute to the incident?
- ** Did other environmental hazards contribute to the incident?
  - Noise, temperature, air contaminants?
  - Other?

**Equipment**

- Was the correct equipment/ tools (including PPE) used for the task?
- Was the correct equipment/ tools (including PPE) available?
- Was the employee familiar/ comfortable with the equipment/ tools?
- Was there a procedure in place to inspect equipment/tools before use?
- Was the equipment/ tools inspected before use?
- Did the equipment/ tools "pass" the inspection?
- Was the equipment/ tools used properly (as designed/ trained)?
- Were equipment safeguards available/working properly at the time of the incident?
- Was necessary/required preventative maintenance completed on equipment/ tools?
- ** Were there other equipment/ tool factors that may have contributed to the incident?

**Process/ Management**

- Has a Job Safety Analysis been completed for the post/ task?
- Were the hazards related to this incident identified on the JSA and adequately mitigated?

---



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

AUS 00867

# Incident Reporting & Response
# Tab 07

- Was the safe work procedure defined and communicated to the involved employee(s)? (JSA Acknowledgement)
- Was training for this task available and completed?
- Did the training effectively provide the employee with the necessary knowledge/skill to work without incident?
- Was the task within the scope of the contract?
- Did the process, including use of equipment/tools, comply with safety manual and manufacturer guidelines?
- Was there a process in place to observe employees completing the task, and coaching provided as needed?
- ** Does the process involve ergonomic hazards? (repetition, force, vibration, posture)
- ** Did the task involve lifting, pushing, pulling or climbing?
- ** Were there other process/ management factors that may have contributed to the incident?

**People**

- Did the employee follow all instruction/ procedures related to the task?
- Was the employee able to perform the essential functions of the task?
- Was the employee acclimated to the physical/ environmental demands of the task?
- ** Did rushing, shortcut, distraction, stress or multitasking contribute to the incident?
- ** Were there other people factors that may have contributed to the incident?



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

**Incident Reporting & Response
Tab 07**

## Root Cause Analysis & Corrective Actions Worksheet – Appendix 7.4

| Incident Date: | Incident Title: |
|---|---|
| Solution Team Members: | |

**FISHBONE:**        **Cause(s)**        **Effect**

Environment/ Materials

Equipment

(Describe the outcome/results)

Process/ Management

People by Title

| Root Causes: | Fishbone Section: |
|---|---|
| | |
| | |
| | |

| Corrective Actions: | Assigned to: | Due Date: | Date Completed: |
|---|---|---|---|
| Create a Safety Share for this incident | | | |
| | | | |
| | | | |
| | | | |



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19

AUS_00869

Docusign Envelope ID: A62FBD02-49A3-4E5A-A9D7-C219D98B4C64

# EXHIBIT C
## to
# Declaration of Kareem McKinnon

# Use of Force and Reporting Policy; Use of Force Report Form

**DATE ISSUED:**        **02/28/2005**
**DATE REVISED:**      **08/19/2021**

## Use of Force Incident Report

*Instructions*: Security Professionals are required to complete this report within 24 hours of any incident involving the application of force as defined in the Allied Universal Firearms and Use of Force Policies. Additionally, this form is to be forwarded by the Account Manager or Field Operations Manager over the Security Professional involved in the event to the Legal Services Group (force@aus.com) with copies to the supervisor's management chain (i.e. BM, RVP, RPs).
If a firearm was discharged, do not complete this form; complete the *Preliminary Report of Firearm Discharge*.

| | |
|---|---|
| April 4, 2022    1945 | Filed: Report number unknown |
| Date and Time of Report: | Police Report No. (if known): |
| April 4, 2022    1730hrs | ███████████████  Houston, TX 77401 |
| Date and Time of Incident: | Location of Incident: |
| HEB (Store 738) | 204376 |
| Customer/Site Name | Job No. |
| Houston | Central |
| Branch | Region |

Identity of all Allied Universal personnel involved:

SP Twana Ahmed EE# 9352791

Identity of Person(s) Restrained, Detained, or otherwise subject to Use of Force

1 male, identity unknown.

CONFIDENTIAL AND PRIVILEGED
PREPARED AT THE REQUEST OF THE ALLIED UNIVERSAL LEGAL DEPARTMENT

CONFIDENTIAL AND PRIVILEGED
PREPARED AT THE REQUEST OF THE ALLIED UNIVERSAL LEGAL
DEPARTMENT

Identity of all Witnesses to the Incident (include addresses and phone numbers):

HEB Manager in Charge, Mr. Kevin
5106 Bissonnet Street (Bellaire)
Houston, TX 77401
Phone number: (713) 218-1600

Description of Injuries to Allied Universal personnel:

No injuries noted.

Description of Injuries to other than Allied Universal personnel:

No injuries noted.

Description of Property Damage:

None

CONFIDENTIAL AND PRIVILEGED
PREPARED AT THE REQUEST OF THE ALLIED UNIVERSAL LEGAL
DEPARTMENT

What instruments (compliance techniques, restraints, weapons, etc.) were employed and by whom?

AUS employee SP Ahmed (EE# 9352791) applied steel handcuffs to a subject

Brief Summary of Incident:

On April 4, 2022, inside the front entrance of the HEB store located at 5106 Bissonnet Street, Houston, TX 77401 (2nd level), SP Ahmed was alerted by the Store MIC Kevin that there was a suspected shoplifter in the store. The MIC requested that SP Ahmed be available to assist should the subject proceed to shoplift. Bellaire Police were notified in anticipation of the subject vacating the store without paying for merchandise. The subject attempted to vacate the store with paying for the merchandise through the exit closest to where SP Ahmed was located. As the subject neared the exit, SP Ahmed forcefully pushed the shoplifter against the wall and applied steel hand cuffs to his wrists behind his back. Bellaire Police arrived and advised that since the subject was not allowed to vacate the store fully, he could not be charged with shoplifting. The subject did not present physical bodily harm to the SP or the public.

| Supervisor's Recommendation: | |
|---|---|
| ☐ | Closed – No further action necessary |
| ☒ | Further Investigation Recommended – Refer to Branch Manager |
| ☐ | Further Investigation Recommended – Legal Services Group |

| | |
|---|---|
| _____ | _____ |
| Supervisor's Signature | Branch Manager Signature |
| | Felicia Solis-Ramirez |
| _____ | _____ |
| Printed Name | Printed Name |
| | 4/8/22 |
| _____ | _____ |
| Date | Date |

CONFIDENTIAL AND PRIVILEGED
PREPARED AT THE REQUEST OF THE ALLIED UNIVERSAL LEGAL
DEPARTMENT

# EXHIBIT D
## to
## Declaration
## of Kareem
## McKinnon

# Root Cause Analysis

Employee Name: Twana Ahmed
Employee EE Number: 9352791
Hire Date: 12/15/2021

Management Team:   CM Patrick Freeney
                   FS Alexander Bergeron
                   FS Nathan Hernandez
                   FS Patrick Parham
                   FS Mauricio Zepeda

## 1. Problem Statement:

All Security Professionals that are local to the Houston, Texas Market were recently trained within the last 3 months on specific approved policies regarding:

- Proper/appropriate Use of Force techniques/De-escalation practices
- AUS Security Personnel's role in loss prevention/shoplifting

In reference to the incident that involved UOF on April 4, 2022, SP Twana Ahmed disregarded his training, and blatantly ignored his post orders to implement maneuvers that were outside of the scope of his duties.  As a result, the subject was illegally detained on suspicion of attempted shoplifting.  The subject was not charged on any count as he was prevented from exiting the store which is a qualifying criterion for shoplifting.  Additionally, the AUS use of force continuum prevents detaining subjects on suspicion of shoplifting alone.

## 2.  Why did this happen?

SP Twana Ahmed made a conscious decision to disregard the AUS Use of Force policy after confirming compliance on February 14, 2022.  SP Ahmed failed to follow the use of force continuum, his training and Texas penal code regarding the legal ability of a licensed private security officer to detain a subject.

## 3. Corrective Action

In reviewing the events that occurred on 4/4/22 concerning SP Twana Ahmed and use of force, it is my recommendation that the SP be terminated.  SP Ahmed signed the AUS Use of Force checkpoint in the field with his field supervisor on 2/14/22 and knowingly violated the policy by restraining a shoplifter that was not a threat to the SP or the public.  SP Ahmed refused to complete a written statement and did not submit a HeliAUS report following the incident (activity, event or incident).  SP Ahmed further

Docusign Envelope ID: A62FBD02-49A3-4E5A-A9D7-C219D98B4C64

refused to sign disciplinary counseling.  As a result, SP Ahmed has been terminated from employment with AUS.

## Incident Reporting & Response
## Tab 07

### Root Cause Analysis & Corrective Actions Worksheet – Appendix 7.4

| Incident Date: | 04042022 | Incident Title: | SP Twana Ahmed Inappropriate UOF |
|---|---|---|---|

| Solution Team Members: | B. King, J. Grant, K. McKinnon, P. Freeney, F. Soliz, |
|---|---|

**FISHBONE:**            **Cause(s)**            **Effect**

**Environment/ Materials**

The work enviornment was free from weather hazards, and was not a contributer to this incident.

**Equipment**

SP was issued appropriate equipment for the prescribed duties.

The SP used AUS equipment in an inappropriate manner that resulted in a UOF violation.

(Describe the outcome/results)

The SP failed to follow written instructions that are posted in the Site Post Orders. Because of this, he vacated his position to complete a task that he was not authorized to do. In doing so, he illegally detained a shopper who was known to shoplift, and prevented the normal process to complete an actual arrest by local authorities.

A job safety analysis wwas completed for this site. No hazards contributed to this incident.

Training for this incident was completed within the last 3 months. The SP disregarded those instructions.

The SP failed to follow instructions as outlined in post orders

The SP was able to perform the necessary functions, but failed to do so.

On-duty MIC gave instructions to the SP that were misaligned with the prescribed duties for that site.

**Process/ Management**            **People by Title**

| Root Causes: | Fishbone Section: |
|---|---|
| Blatant disregard of Post Order instructions on the part of the AUS-SP. | |
| | |
| | |

| Corrective Actions: | Assigned to: | Due Date: | Date Completed: |
|---|---|---|---|
| Create a Safety Share for this incident | | | |
| Recommendation: Termination | | | |
| Mandate all SP's retake UOF Training on the EDGE. New SP's will participate in a Safety-Standdown regarding Use of Force. | | | |
| | | | |



© Allied Universal Security Services; Universal Protection Service, LP.
All rights reserved.
V2.0. This copy valid only at the time of printing. Print date: 04/15/19