United States District Court
Southern District of Texas
**ENTERED**
April 18, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TWANA AHMED, § | |
| § | |
| Plaintiff, § | |
| § | |
| v.  § | CIVIL ACTION NO. 23-2823 |
| § | |
| UNIVERSAL PROTECTION SERVICE, § | |
| LP d/b/a ALLIED UNIVERSAL § | |
| SECURITY SERVICES, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Twana Ahmed worked for Allied Universal Security Services as a security guard from December 2021 until he was fired in April 2022. Allied employs security guards, many with law enforcement or military backgrounds, and places them in shops and grocery stores. Ahmed is Kurdish, of Iraqi origin, and a practicing Muslim. He alleges that one of his supervisors at Allied verbally abused him, discriminated against him, and orchestrated his firing. Ahmed asserts claims under Title VII, the Texas Labor Code Chapter 21 ("TCHRA"), and 42 U.S.C. § 1981 for discrimination based on race, ancestry, national origin, and religion, as well as a claim for unlawful retaliation. (Docket Entry No. 1-1). Allied moves for summary judgment on all of Ahmed's claims. (Docket Entry No. 27). Ahmed has responded. (Docket Entry No. 34). Based on the motion and briefs, the record, and the applicable law, the court denies the motion for summary judgment on all claims. The reasons for these rulings are set out below.

**I.    Background**

Soon after Ahmed began working at Allied in December 2021, he was placed in its "elite training program," which is "specifically for former military and police officers." (Docket Entry

No. 1-1 ¶ 42). According to Ahmed, members of this elite program are typically assigned to HEB grocery stores to work as security guards. (*Id.*). Ahmed alleges that due to a shortage of armed security guards, Allied failed to properly train their so-called "elite" guards. (*Id.* ¶ 41). Ahmed alleges that he had worked as an armed security guard for about a month before he was placed into the "elite" program. (*Id.* ¶ 42).

During training for the elite program, Ahmed alleges that he repeatedly heard Patrick Freeney, one of Allied's managers, make fun of a Hispanic guard's accent. (*Id.*). This guard quit. (*Id.*). Ahmed alleges that shortly after this occurred, Freeney told Ahmed to shave his beard. (*Id.* ¶ 44). Ahmed alleges that he told Freeney that his religion required him to wear a beard. (*Id.*). Ahmed alleges that Freeney told him that Allied had a policy forbidding security guards from wearing beards. (*Id.*). Ahmed noticed other security guards with beards, including some longer than his, working the "same posts" as he was. (*Id.*). In other words, according to Ahmed, Freeney singled him out. (*Id.*).

Ahmed alleges that a few weeks later, another supervisor at Allied told him that he had to shave his beard. (*Id.* ¶ 45). Ahmed told this supervisor that his religion required him to maintain a beard. (*Id.*). Ahmed alleges that at no point did Freeney or the other supervisor tell him that even if there was a no-beard policy, Ahmed had the right to request a religious accommodation to keep his beard. (*Id.*). Ahmed alleges that his managers continued to pressure him to shave his beard, and that he eventually did so "in fear that if he [did] not, he [would] lose his job." (*Id.* ¶ 46).

Ahmed alleges that soon after, Allied issued body cameras and company badges and IDs to several guards, but not to him. (*Id.* ¶¶ 47, 48). Ahmed asserts that when he asked for these materials, he was told that none were available. (*Id.* ¶ 49).

Ahmed alleges that after he started his new post at HEB, Freeney accused Ahmed of missing a day of work. (*Id*. ¶ 50). Ahmed alleges that when he tried to explain that he had not missed any days of work, Freeney became irate and screamed at Ahmed. (*Id*.). Ahmed asserts that Freeney threatened to "fry [him] like a fucking chicken" and "fuck up [his] world." (*Id*.). Freeney allegedly continued to yell, "this is America. This is not where you came from. This is America, we run things differently. I don't know how the fuck you got into the military, a dumbass like you." (*Id*.).

Ahmed alleges that in April 2022, while on duty at an HEB grocery store, he received a text message from the HEB store manager. (*Id*.). The message contained photographs of a man, and the statement, "If on property he needs to leave," as well as a caption, "Attempted beer theft." (*Id*.). Ahmed alleges that he recognized the man in the photograph from a different H-E-B store where he had worked as a guard. (*Id*.). The man had been arrested before. (*Id*.). Ahmed alleges that the store manager called him to come inside the store, where Ahmed saw two men who he knew had been barred from HEB properties because of previous thefts. (*Id*. ¶ 53). The store manager told Ahmed that the two men were stealing beer and merchandise and had been kicked out of the store earlier for similar conduct. (*Id*. ¶ 54). Ahmed alleges that the manager asked him to stop the men from stealing. (*Id*.). Ahmed met the two men at the door to prevent them from leaving with the beer and merchandise. (*Id*.). Ahmed alleges that when he asked the men to pay for their items, one threatened to "cut [him] up with a knife." (*Id*.). Ahmed asked the manager "to call the police" and "[detained] the man in handcuffs" until the police arrived. (*Id*). Ahmed alleges that he was still detaining the man when the police arrived. (*Id*. ¶ 55).

The day after the incident, Freeney asked Ahmed to sign a written report about the incident. (*Id*. ¶ 56). Ahmed alleges that the report falsely stated that he "got out of his car and approached

3

the drunk man for no reason, then pushed and handcuffed him." (*Id*.).  Ahmed alleges that he refused to sign the report because it was not an accurate account of the incident.  (*Id*.).  Ahmed alleges that Freeney pressured him to sign the report and warned him that if he failed to do so, it would reflect poorly on him.  (*Id*.).  Freeney then told Ahmed that he was suspended and to return the next day to turn in his gun and taser.  (*Id*.).  Freeney told Ahmed that he would recommend to Allied's management that it should fire Ahmed, take away Ahmed's security license, and press charges against Ahmed for stealing Freeney's belongings. (*Id.* ¶ 57).  Freeney again threatened to "destroy [Ahmed] and "fry [him] like a chicken," and told Ahmed that he should "go back to where [he] came from." (*Id*.).

The next day, when Ahmed returned his taser and handgun, Freeney referred to him as a "sand nigger."  (*Id.* ¶ 58).  When Ahmed protested, Freeney closed the door and began "cussing and threatening [Ahmed] all over again." (*Id*.).  Ahmed alleges that he reported Freeney's use of racial slurs, physical threats, and discriminatory and retaliatory actions to Allied's human resources representative, both in writing and in person. (*Id*. ¶ 60). Ahmed alleges that no action resulted from his reports.  (*Id*.).

Ahmed alleges that when he went to the Human Resources department, no one knew that Freeney had suspended him.   (*Id*. ¶ 61).   Ahmed alleges that Allied Universal never formally terminated him.  (*Id*. ¶ 62). Ahmed alleges that about a month after he reported the discrimination and retaliation, he learned from an Allied recruiter that the company had listed him as "ineligible for rehire." (*Id*. ¶ 63).

Ahmed alleges that Allied's "unlawful employment practices" have "caused [him] harm and likely caused harm to many other employees on the basis of their race." (*Id*. ¶ 70). Ahmed asserts claims for "race and ancestry discrimination" under the TCHRA, Title VII, and Section

4

1981, (*id*. ¶¶ 68-72); and for "national origin and religious discrimination" under the TCHRA and Title VII, (*id*. ¶¶ 73-75). Ahmed also asserts a claim of unlawful retaliation under the TCHRA, Title VII, and Section 1981. (*Id*. ¶¶ 76-80).

Allied moves for summary judgment, arguing that based on the undisputed facts, there is no basis to find discrimination or retaliation. (Docket Entry No. 27). Allied alleges that it fired Ahmed for the legitimate and nondiscriminatory reason that he violated Allied's written use of force policy. (Docket Entry No. 27 at 1). The policy provided that:

> [E]mployees shall not use physical force against persons unless the employee reasonably believes that such force to be necessary to protect the employee or another individual from imminent bodily harm. The extent of force employed must not exceed the minimum amount of force necessary to counter the threat, and may be employed only for as long as the threat persists …

(Docket Entry No. 27-2 at 6).

The policy states that "[r]estraints should only be used on a person who exhibits aggression, poses a real threat." (*Id.* at 9). Any use of force incident involving force above a certain threshold must be documented. (*Id*. at 3). Allied reviews the report and conducts an investigation, which may include a "Root Cause Analysis." (*Id*.). If the use of force is found unjustified, the employee faces suspension and potential termination. (Docket Entry No. 27-17 at 5).

Allied asserts that around April 4, 2022, Ahmed detained a suspected shoplifter in the HEB store where he was assigned to work. (Docket Entry No. 27 at 8). Ahmed used force to detain the shoplifter until the police arrived, by stopping the subject before he exited the store, pushing him against a wall, and placing his wrists behind his back. (*Id*. at 9; Docket Entry No. 27-12 at 3, ¶6). The Allied panel assembled to evaluate the use of force incident determined that Ahmed's use of force was unjustified. (Docket Entry No. 27-1 at 95:2-4; Docket Entry No. 27-10 at 3, ¶6; Docket Entry No. 27-17). As a result, Ahmed was terminated effective as of the date of the use-of-force

5

incident. (Docket Entry No. 27 at 10). Allied alleges that Ahmed was terminated solely because he violated the use of force police. (*Id.*).

Allied denies any discrimination against Ahmed in the termination process. Allied alleges that it has terminated non-Kurdish, non-Muslim employees for similar violations of company policy. (Docket Entry No. 27 at 23). Allied alleges that no person on the panel who recommended Ahmed's termination knew that he was of Kurdish background. (*Id.*) (citing Docket Entry No. 27-3 at 3, ¶ 7; Docket Entry No. 27-9 at 4, ¶ 9; Docket Entry No. 27-10 at 4, ¶ 10; Docket Entry No. 27-11 at 3, ¶ 7; Docket Entry No. 27-12 at 3, ¶ 7; Docket Entry No. 27-13 at 3, ¶ 8). Allied asserts that Freeney's "alleged use of the 'N' word constitutes nothing more than a stray remark which was in no way connected" with the decision to fire Ahmed. (Docket Entry No. 27 at 24). In addition, Freeney had denied using derogatory language with Ahmed in the first place. (Docket Entry No. 27-10 at 4, ¶ 9). Allied argues that even if Freeney had threatened to "fry [Mr. Ahmed] like a chicken," revoke his security license, and have him fired, these did not threaten "an ultimate employment decision" and but were merely unactionable "unrealized threats." (Docket Entry No. 27 at 24). According to Allied, there is no basis to find racial, religious, or national origin discrimination in how Ahmed was treated and in why he was fired. As to Ahmed's retaliation complaint, Allied argues that it fails as a matter of law because Ahmed's protected activity—his complaints to the human resources personnel—occurred after he was suspended.

Each argument is analyzed below.

## II. The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th

Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting

7

reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

## III. Analysis

### A. The Claims of Race, Ancestry, and National Origin Discrimination

Ahmed alleges that he was discriminated against based on his race, ancestry, and national origin when he was terminated by Allied. The Fifth Circuit has held that claims of discrimination under the TCHRA and Section 1981 are analyzed under Title VII's analytical framework. *Hoang v. Microsemi Corp.*, No. 22-20004, 2023 WL 2346244, at *2 (5th Cir. Mar. 3, 2023) (per curiam). The court jointly analyzes the race, ancestry, and national origin discrimination claims under this framework.[1] *See Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*, No. CV 14-793-JJB-RLB, 2016 WL 1254361, at *2 (M.D. La. Mar. 29, 2016).

The elements of a Title VII discrimination claim are that the plaintiff: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some

---

[1] Even though the court analyzes the claims jointly, the court acknowledges that under Fifth Circuit precedent § 1981 prohibits only racial discrimination, not claims based on national origin discrimination. *See Evans v. City of Houston*, 246 F.3d 344, 356 n.9 (5th Cir. 2001)

8

adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty*, 79 F.4th 494 (5th Cir. 2023) (en banc). "A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994).  The Fifth Circuit has held that direct evidence of discrimination is rare.  *Portis v. First Nat'l Bank of New Albany*, 34 F.3d at 328.; *see also Coleman v. Chevron Phillips Chem. Co., L.P.*, No. 24-20244, 2025 WL 880534, at *2 (5th Cir. Mar. 21, 2025) (per curiam).  "The evidence must be such that it demonstrates that the 'decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'" *Qing Qin v. Vertex, Inc.*, 100 F.4th 458, 472 (3rd Cir. 2024) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (O'Connor, J., concurring).  "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). "It includes 'any statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action.'" *Yul Chu v. Miss. State Univ.*, 592 Fed. Appx. 260, 265 (5th Cir. Nov. 17, 2014) (quoting *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)).

There is competent summary judgment evidence—Ahmed's sworn declaration and his deposition testimony—that Freeney, a member of management and Ahmed's supervisor, called Ahmed a "sand nigger," to his face and to other people; told him to go back to where he came from because "clearly you do not belong here"; and threatened to "fry [Ahmed] like a chicken."  In

9

Ahmed's declaration, he states that as he entered Freeney's office and sat down in a chair across from Freeney, Ahmed overheard Freeney tell somebody on the phone that, "I've got to call you back, I'm dealing with a sand nigger." (Docket Entry No. 34-1 at 26). The declaration also states that during this same meeting, Freeney told Ahmed, "you need to go back to wherever you came from. Clearly you do not belong here." (*Id.*). Ahmed gave the same account in his deposition. (*See* Docket Entry No. 34-1 at 450:1-6, 453:15-16).

Allied argues that Ahmed has presented no competent evidence of Freeney's derogatory statements, instead "rel[ying] solely on his own self-serving declaration without any corroborating evidence." (Docket Entry No. 40 at 12). But Ahmed's deposition testimony is competent summary judgment evidence. *See Owens v. Neovia Logistics, L.L.C.*, 816 Fed. Appx. 906, 909 (the plaintiff's statements made under oath in his deposition were competent summary judgment evidence). So is Ahmed's declaration, which meets the requirements in 28 U.S.C.S. § 1746 for unsworn declarations. *Cf. Wright v. Smith*, 737 Fed. Appx. 183, 186 (5th Cir. 2018). "[E]vidence proffered by one side to . . . defeat a motion for summary judgment" is always "self-serving." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). "Self-serving affidavits . . . may create fact issues even if not supported by the rest of the record," and "may not be discounted on that basis alone." *Id.* at 160–61 (quoting reference omitted). *See Guzman*, 18 F.4th at 161 ("How much weight to credit self-interested evidence is a question of credibility, which judges may not evaluate at the summary judgment stage.").

Nor are Ahmed's declaration and deposition statements about what Freeney told him inadmissible hearsay, as Allied asserts. Hearsay is an out-of-court statement submitted to prove an underlying fact's truth. *See* Fed. R. Evid. 801(c). Ahmed does not allege that Freeney threatened to "fry him like a chicken," to show that Freeney actually did, or planned to, fry him.

10

Nor does Ahmed allege that Freeney called him a "sand nigger" to prove that Ahmed actually is one. Instead, the statements are offered to show that they were made. They are relevant as evidence of Freeney's animus toward Ahmed based on race and national origin.

Freeney and Ahmed each dispute what happened and what was said. But even if Freeney denies making derogatory statements based on Ahmed's national origin and race, there is at least a factual dispute as to whether the statements were made. Some of the statements may be viewed as direct evidence of racial and national origin animus.

When a plaintiff offers remarks by a supervisor as direct evidence of discrimination, the court applies a four-part test to determine whether those remarks are sufficient to overcome summary judgment evidence showing a legitimate basis for an adverse employment action. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 581 (5th Cir. 2020). "Under this test, the remarks must be '(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.'" *Coleman*, 2025 WL 880534, at *2 (citing *Clark*, 952 F.3d at 581). The present record fulfills those elements.

The comments that Freeney allegedly made to Ahmed—referring to him as a "sand nigger" and telling him to "go back to where you came from"—clearly relate to Ahmed's race and national origin. The record also reflects that these alleged remarks about Ahmed were made on April 6, 2022; that a panel met to discuss Ahmed's termination on April 7, 2022; and that Freeney submitted a "Personal Action Notice Service Staff Separation" form on April 26, 2022, stating that Ahmed had been terminated. (*See* Docket Entry No. 34-1 at 702-705). The temporal proximity factor is met. The record also reflects that Freeney was involved in, and had the opportunity to

11

influence, the decision to fire Ahmed. Freeney was part of the panel that reviewed Ahmed's use of force during the April 4, 2022, incident at HEB and recommended his termination. (See Docket Entry No. 27-2 at 3, 40). This is sufficient to satisfy the third and fourth factor. See *Jones*, 427 F. 3d at 993 ("When a person or persons with decision making authority evinces racial animus that may constitute direct evidence of discrimination."); *see also Young v. City of Houston, Tex.*, 906 F.2d 177, 180-81 (5th Cir. 1990) ("This court has implied that calling an employee a 'nigger' would be direct evidence of race discrimination."). The court finds that Ahmed has satisfied the four elements of the test to show direct evidence of discrimination under Fifth Circuit precedent.

Because Ahmed has made this showing, "the burden shifts to [Allied] 'to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus.'" *Yul Chu,* 592 Fed. Appx. at 264 (quoting *Fabela*, 329 F.3d at 415). The court finds that Allied has not made this showing. Allied presented evidence of a legitimate basis to fire Ahmed: a violation of the company's use of force policy. But Ahmed has presented evidence that the disciplinary report that Freeney was supposed to have drafted following Ahmed's purported use of force violation was inaccurate and may have been falsified to include a witness signature. (Docket Entry No. 34 at 17-19; Docket Entry No. 34-1 at 641, 644-47, 657). The record also includes evidence that Freeney urged Ahmed to sign an allegedly false report about the use of force incident, after Freeney allegedly made racist threats and comments about Ahmed. (Docket Entry No. 34-1 at 25, ¶¶ 79-80; *id*. at 205:21-24). The record also shows that the panel's determination that Ahmed had violated the use of force policy could have been "tainted" by Freeney's recommendation that the panel fire Ahmed. (See Docket Entry No. 27-2 at 3, 40). Ahmed points to several emails that show that Freeney failed to follow the proper procedures for drafting and filing the disciplinary reports that should have served as the underlying basis for Mr.

12

Ahmed's termination. (*See* Docket Entry No. 34-1 at 633-657). These emails indicate that Freeney may have forged the signature of another Allied employee, Alex Bergeron, as a "witness" to the disciplinary report drafted after-the-fact. (*Id*. at 641, 644-47, 657).

Allied points to evidence in the record establishing that "[d]iscipline notices are not required to be typed, nor is it unusual if they are not," (*id*. at 533, 29:10-21), to assert that the procedural irregularities in how Freeney handled Ahmed's disciplinary report do not show that Freeney falsified the reports. Allied characterizes this evidence as "minor discrepancies" in "differences in ink color and the timing of [Ahmed's] termination notice." (Docket Entry No. 40 at 29). Whether these discrepancies are "minor" is a question for the jury. The record presents factual disputes material to determining whether Ahmed's firing was a pretext for discrimination. On this record, summary judgment is not appropriate.

### B. The Claim of Religious Discrimination

Ahmed's claim of religious discrimination centers around his allegation that he was forced to shave his beard, while other, non-Muslim employees were permitted to maintain their beards while employed at Allied. Ahmed presents evidence that Freeney and other authority figures at Allied told Ahmed that he must shave his beard and did not tell him about the possibility of a religious exemption. (Docket Entry No. 34-1 at 10-13, ¶¶ 28-29, 30-33, 36; *id*. at 300:12-16; *id*. at 328:9-10). Ahmed's affidavit states: "Patrick [Freeney] came up to me and told me, 'You need to shave your beard.'" (Docket Entry No. 34-1 at 10, ¶ 28); "Supervisor Mauricio Zepeda came inside the room, and saw me, and told me, 'You need to shave your beard.'" (*Id*., ¶ 29); "Zepeda [again] told me 'You need to shave your beard, it is policy of the company, you can't have facial hair.'" (*Id*. at 12-13, ¶ 32). Allied objects to this evidence as hearsay. But the statements are not submitted as evidence that they were true, but rather as evidence that the statements were made.

13

While Freeney and other Allied managers dispute that Ahmed was ever told to shave his beard, (*see* Docket Entry No. 27-10 at 3, ¶5; Docket Entry No. 27-11 at 3, ¶6), as with the race, ancestry, and national origin discrimination claims, this dispute presents a triable issue of fact. When each party presents "irreconcilable versions of the material facts" and the record contains "evidence to support each version of the parties' dueling allegations, summary judgment is not appropriate—even when the evidence includes self-serving statements from the parties." *Davis v. Gallagher*, 951 F.3d 743, 745 (6th Cir. 2020)

The evidence that Ahmed was told to shave his beard, was not told about the religious exemption, and was finally told that if he did not shave, he would lose his job, is sufficient to raise a triable issue as to religious discrimination. Summary judgment on this claim is also denied.

### C. The Claims of Unlawful Retaliation

Ahmed claims that Allied retaliated against him for the following acts: (1) requesting to keep his beard for religious purposes; (2) reporting discrimination to Allied's Human Resources coordinator, Catherine Barnes, on January 31, 2022; (3) complaining about Freeney's discrimination on April 6, 2022; and (4) reporting Freeney's discrimination and harassment in an email to Barnes on April 25, 2022. (Docket Entry No. 34 at 27-28).

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

When a plaintiff relies on circumstantial evidence to prove discrimination and retaliation, the *McDonnell Douglas* framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792

14

(1973); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty*, 79 F.4th 494 (5th Cir. 2023) (en banc). Under the first step of *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of retaliation: "(1) the employee engaged in activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting reference and quotation marks omitted). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). "This burden is satisfied by introducing evidence which, if true, would permit the trier-of-fact to conclude that the termination was nondiscriminatory." *Id.* at 306 (quoting reference omitted). If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's reason is actually pretext for retaliation. *Id.* "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id.* (quoting reference omitted).

Allied argues that Ahmed's retaliation claim fails because he did not engage in protected activity before his termination. (Docket Entry No. 32 at 27). Allied asserts that Ahmed's EEOC Charge of Discrimination and formal hotline complaint were both filed after his termination for violating the use of force policy. (*Id.*). To show retaliation, the plaintiff "must demonstrate that the employer's decision was based in part on knowledge of the employee's protected activity." *Lyons*, 964 F.3d at 305 (quoting reference omitted).

Ahmed's declaration states that on January 31, 2025, he told Barnes, "I think I'm being discriminated against by my account manager" based on "[t]he way he's talking to me and the way he's taking hours away from me." (Docket Entry No. 34-1 at 19, ¶ 60). Ahmed's declaration also

15

states that on April 6, 2022, Ahmed told Freeney that he did not like Freeney's discriminatory comments and threats and that Ahmed wanted to speak to Freeney's supervisor. (*Id.* at 26-27, ¶¶ 82-86). Finally, Ahmed's declaration states that on April 25, 2022, he again reached out to Barnes via email to complain that Freeney was discriminating against him. (*Id*. at 28-29, ¶¶ 90-92). The record also contains a copy of the email that he sent Barnes. (*Id*. at 28-29, ¶¶ 90-92; *id.* at 107).

Ahmed's April 21, 2022 complaint, which occurred after the panel voted to terminate him on April 7, is too late to show retaliation. However, Ahmed has made the necessary showing of causation connection between his termination and the January 31 and April 6, 2022 complaints. For temporal proximity to serve as evidence of retaliation, the "protected act and the adverse employment action must be very close in time to establish causation by timing alone." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (quotation marks, citation, and alterations omitted). Fifth Circuit precedent establishes that periods of two and a half months, two months, and six and a half weeks are close enough to show a causal connection. *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (collecting cases). Under circuit precedent, Ahmed has shown a causal connection between both complaints and his April 7 termination from Allied.

Ahmed has also made the "but-for" causation showing to raise a factual dispute as to pretext, the final step of *McDonnell Douglas*. Allied maintains that regardless of the complaints Ahmed made, he would have been fired for violating the use of force policy. To show pretext, a plaintiff "must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "The plaintiff must rebut each nondiscriminatory reason articulated by the employer." *Id.* "A plaintiff may establish pretext either through evidence of disparate treatment

16

or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quotation marks and quoting reference omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id.*

Ahmed has presented evidence that after weeks of verbal abuse directed at Ahmed's race and national origin, Freeney did not follow the proper processes for documenting the use of force incident. (Docket Entry No. 40 at 21). The normal procedure for documenting similar uses of force was that the employee involved would provide a thorough statement about the incident. (Docket Entry No. 34-1 at 210:18-22; *id.* at 258:7-11). There is evidence that Freeney, not Ahmed, wrote the report and pressured Ahmed into signing it despite its falsity. (Docket Entry No. 34-1 at 25, ¶¶ 79-80; *id.* at 205:21-24). There is also evidence that when Ahmed refused to sign the report, Freeney threatened to have him fired, stripped of his security license, criminally charged, "destroy," and "fry [him] like a chicken." (Docket Entry No. 1 ¶ 56; Docket Entry No. 34-1 at 25, ¶ 81).

Ahmed has also proffered evidence that the use of force report was inaccurate. There is evidence that the HEB manager asked Ahmed to detain the two men if Ahmed saw them on the property. (Docket Entry No. 34-1 at 91-92). An employer with a legitimate, good faith basis to believe that an employee has violated company policy may discipline that employee, including by termination. *See Trevino v. City of Fort Worth*, No. 4:12-CV-717-A, 2013 WL 4516643, at *7 (N.D. Tex. Aug. 23, 2013) ("An employer's good-faith belief that an employee has engaged in misconduct, even if incorrect, constitutes a legitimate, nondiscriminatory reason for an adverse employment action."). But if there is evidence that the employer is acting in bad faith and with discriminatory intent, that is a basis for liability. *See Keller v. Coastal Bend Coll.*, 629 Fed. Appx. 596, 602 (5th Cir. 2015). Freeney's key role in the decision to fire Ahmed, and the evidence of

Freeney's bias and prejudice, raise factual disputes as to whether Allied was acting on a reasonable and good faith belief that Ahmed had violated the use of force policy. (Docket Entry No. 34-1 at 91-92). Resolving the factual disputes and conflicting testimony as to Ahmed's alleged violation of the use of force policy and Freeney's alleged falsification of Ahmed's disciplinary reports requires credibility determinations that cannot be made on summary judgment. *Memon v. Deloitte Consulting, LLP*, 779 F. Supp. 2d 619, 641 (S.D. Tex. 2011). Resolving these disputes are material to determining pretext. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, (2000) ("[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.")).

Allied emphasizes that it was not Freeney, but a panel, that decided to fire Ahmed. (Docket Entry No. 27 at 40). But the record shows that Freeney was a member of the panel that terminated Ahmed. (Docket Entry No. 27-2 at 3, ¶ 7). The record also shows that Freeney drafted the "Root Cause Analysis" that the panel reviewed in making its decision, which contained a description of the incident and characterized the use of force as unjustified. (Docket Entry No. 34-1 at 693-96). And the record shows that Freeney ultimately submitted Ahmed's termination to HR. (*Id.* at 702-705). This record reflects that Freeney had ample opportunity to influence the process by which Ahmed was ultimately terminated. Under a cat's paw theory of liability, Ahmed has provided sufficient evidence for a reasonable juror to find that (1) Freeney, motivated by retaliatory animus, took acts intended to cause an adverse employment action, such as falsifying documents to show that Ahmed violated Allied's use-of-force policy; and (2) those actions by Freeney were the but-for cause of Ahmed's firing. *See Zamora v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015) (the plaintiff showed but-for causation through the cat's paw theory of liability by presenting

evidence that his direct supervisor, who had retaliatory animus against the plaintiff, "manipulat[ed] the [ultimate] decisionmaker into taking what appears to the decisionmaker to be a non-retaliatory action").

The record evidence of a causal link between Ahmed's complaints about Freeney's abusive behavior and his firing preclude summary judgment on Ahmed's retaliation claim.

## IV.  Conclusion

The motion for summary judgment, (Docket Entry No. 27), is denied. The parties are ordered to confer on a trial setting. The joint pretrial order and motions in limine are due on May 2, 2025. Docket call will be held on May 9, 2025, at 2:00 p.m., in Courtroom 11-B. The defendant's motion to stay the joint pretrial order and motions in limine deadlines pending a ruling on the motion for summary judgment, (Docket Entry No. 42), is denied as moot.

SIGNED on April 18, 2025, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge