UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TWANA AHMED, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:23-cv-02823 |
| | : | |
| v. | : | Hon. Judge Lee H. Rosenthal |
| | : | |
| UNIVERSAL PROTECTION SERVICE, LP d/b/a ALLIED UNIVERSAL SECURITY SERVICES, | : : : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**DEFENDANT UNIVERSAL PROTECTION SERVICE, LP'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS**

Defendant Universal Protection Service, LP d/b/a Allied Universal Security Services ("Allied"), by and through its undersigned counsel, submits this Memorandum of Law in Support of its Motion for Sanctions against Plaintiff Twana Ahmed. For the reasons set forth below, which detail Plaintiff's inexcusable conduct, Allied's Motion should be granted.

**I.     INTRODUCTION**

Plaintiff Twana Ahmed was terminated by Allied after the Company determined that he had violated the Company's Use of Force policy on April 4, 2022 by stopping an alleged shoplifter before he left the store to which Plaintiff was assigned, pushing the individual against a wall, and placing him in metal handcuffs behind his back. During the course of this litigation, Plaintiff has repeatedly offered sworn testimony regarding his actions on April 4, 2022, and the actions of the alleged shoplifter, in an attempt to establish that his conduct did not violate Allied's Use of Force policy and that he was discriminatorily terminated. Plaintiff's sworn testimony regarding the incident is extensive and, as it turns out, blatantly false.

1

In his sworn testimony, Plaintiff claims that the alleged shoplifter was the aggressor; that Plaintiff and the alleged shoplifter engaged in extensive dialogue inside the grocery store at the start of the interaction; that the alleged shoplifter aggressively attempted to assault Plaintiff with a shopping cart; that the alleged shoplifter verbally threatened Plaintiff with a knife while the two were by the shopping cart and Plaintiff observed a knife; that Plaintiff then quickly started to handcuff the alleged shoplifter until the police arrived; that Plaintiff only handcuffed one hand of the alleged shoplifter; and that the police finished putting Plaintiff's handcuffs on the alleged shoplifter. None of this is true.

On the afternoon of August 12, 2025, Allied obtained video footage of the April 4, 2022 incident via the Director of Loss Prevention employed by H-E-B, the grocery store where the incident took place. (*See* Declaration of Marty Martenson, attached hereto as **Exhibit A**.) The video footage unequivocally demonstrates that Plaintiff has repeatedly perjured himself and fabricated the events that he alleges justified his actions on April 4, 2022. (*See* **Exhibit A**, attachments 1-3). These lies caused years of unnecessary and costly litigation. Plaintiff's calculated deception of this Court undermined the integrity of the judicial system and must be met with the only appropriate sanction – dismissal of this matter, with prejudice.

## II.     RELEVANT BACKGROUND

On April 4, 2022, Plaintiff physically confronted an alleged shoplifter at the H-E-B store located at 5106 Bissonnet, Bellaire, Texas. According to Plaintiff's own sworn statements and testimony, Plaintiff claims that on April 4, 2022, the alleged shoplifter was the aggressor; they had a verbal exchange; the alleged shoplifter attempted to assault Plaintiff with a shopping cart and threatened to cut Plaintiff; Plaintiff observed a knife; and only then, in fear for his safety, did

2

Plaintiff use force and start to handcuff the alleged shoplifter before the police arrived. The recently discovered video footage confirms these sworn statements are false.

Until the afternoon of August 12, 2025, no surveillance footage of the April 4, 2022 incident had been located despite reasonably diligent and exhaustive efforts to find it. *See* **Exhibit A**. On August 12, 2025, at approximately 4:10 PM, Allied was provided with three videos from H-E-B's Director of Loss Prevention, via H-E-B's counsel, relating to the April 4, 2022 confrontation involving Plaintiff and the alleged shoplifter. *See* **Exhibit A.** Prior to this, and despite requests from Allied, no video evidence of the April 4, 2022 incident had been identified, and it was reasonably understood that any footage had been overwritten in accordance with H-E-B's video retention policy. *Id.*

In preparation for trial on August 12, 2025, and during a meeting with H-E-B's counsel and a defense witness, an individual named Justin Porter was identified by the witness as someone who may have access to a copy of the video. *Id.* Mr. Porter, who was employed by H-E-B as the Senior Area Loss Prevention Manager in April 2022, provided the videos to H-E-B's counsel on August 12, 2025 *Id.* H-E-B's counsel in turn delivered the videos to Allied's counsel that afternoon. *Id.* Allied promptly served copies of these videos on Plaintiff's counsel. *Id.*

The video surveillance footage confirms that Plaintiff has repeatedly perjured himself in this case. The perjury appears in Plaintiff's September 28, 2022 Charge of Discrimination filed with the EEOC (hereinafter "EEOC Charge" attached hereto as **Exhibit B***)*, the Complaint filed with this Court, Plaintiff's September 30, 2024 supplemental responses to written discovery submitted under the penalty of perjury *(*hereinafter "Plaintiff's Supplemental Discovery" attached hereto as **Exhibit C***)*, Plaintiff's September 18, 2024 sworn deposition testimony (hereinafter "Plaintiff's Deposition", relevant excerpts attached hereto as **Exhibit D***)*, and a January 21, 2025

Declaration from the Plaintiff submitted in an effort to defeat Allied's Motion for Summary Judgment in this case (hereinafter "Plaintiff's Declaration" attached hereto as **Exhibit E**). Given Plaintiff's conduct, Allied moves for sanctions, including dismissal of Plaintiff's Complaint, with prejudice. In support of its Motion for Sanctions and request that the court dismiss Plaintiff's case, with prejudice, Allied submits the following arguments and citations to the relevant record evidence and legal authority.

### III.   ARGUMENT AND CITATION OF AUTHORITY

The proper administration of justice depends on people testifying truthfully under oath. *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011). Perjury is a "serious offense that constitutes a severe affront to the courts and thwarts the administration of justice." *Id.*

A district court may invoke its inherent power to dismiss claims with prejudice in order to protect the integrity of the judicial process. *Ben E. Keith Co. v. Dining Alliance*, 80 F.4th 695, 702 (5th Cir. 2023); *Wagner v. Boh Bros. Const. Co., LLC*, 2012 WL 3637392, at *8 (E.D. La. Aug. 22, 2012) (upon proof that a fraud has been perpetrated upon the court, a court has the inherent power to impose sanctions, up to and including dismissal of the case). *Brown*, 664 F.3d at 80.

The Court must find that the litigant acted in bad faith or willfully abused the judicial process. *Ben E. Keith Co.*, 80 F.4th at 702; *Brown*, 664 F.3d at 76-80 (affirming dismissal of action in response to plaintiff's perjury). Finally, the Court must find that lesser sanctions would not serve the best interests of justice. *Id.* While dismissal with prejudice is a severe sanction, it is the only appropriate sanction here given Plaintiff's blatant and repeated perjured statements. Any other sanction would reward Plaintiff's mendacity and would fail to deter such conduct in the future. *Brown*, 664 F.3d at 79 ("[W]hen perjury is discovered, the penalty needs to be severe enough to deter such conduct.").

### A.     <u>**Plaintiff Has Clearly Committed Perjury With Regard To Material Facts.**</u>

Plaintiff has offered sworn testimony on multiple occasions regarding the circumstances leading up to his use of force on April 4, 2022 during his interactions with a suspected shoplifter. That testimony is the crux of Plaintiff's case and forms the basis for Plaintiff's allegation that he did not violate Allied's Use of Force policy and that he was actually discriminatorily terminated by Allied.

In reality, a review of the videos obtained on August 12, 2025 undeniably demonstrates that Plaintiff has repeatedly perjured himself when describing what happened during his confrontation with the alleged shoplifter on April 4, 2022. The videos establish that on April 4, 2022, Plaintiff peered out from behind the internal door of the H-E-B grocery store; Plaintiff swiftly approaches the alleged shoplifter; Plaintiff pushes the shopping cart out of the way; there is no dialogue between Plaintiff and the alleged shoplifter and there is no knife; Plaintiff grabs the right arm of the alleged shoplifter; Plaintiff escorts the alleged shoplifter out of the store; Plaintiff forcibly pushes the shoplifter against the wall; and Plaintiff places the alleged shoplifter in handcuffs outside the presence of any police. Plaintiff then escorts the fully handcuffed alleged shoplifter outside of the store and delivers him to the police. *See* attachments to **Exhibit A.** The videos prove that Plaintiff perjured himself in the sworn testimony provided in the EEOC Charge, the Complaint, Plaintiff's Deposition, Plaintiff's Supplemental Discovery, and Plaintiff's Declaration.

Specific examples of Plaintiff's perjury regarding material facts in this case are detailed below:

1. Plaintiff testified: "When he came toward me, I told the guy, "Hey, you need to go back to the register and pay for the merchandise you have." *See* Plaintiff's Declaration,

5

Paragraph 73. In Plaintiff's EEOC Charge, he similarly claimed, "I went by the door and asked them to pay for the merchandise." *See* Plaintiff's EEOC Charge. Moreover, in Plaintiff's deposition, he testified:

> Q: So how did you first approach him?
>
> A: I was by the door. I was, like, Hey, you need to pay. You need to go back to the lane. You need to pay. He was in the carts, he was – you can smell the odor of alcohol coming out of his mouth. Completely intoxicated. Made a verbal threat towards me and I acted on that threat.
>
> *See* Plaintiff's Deposition, p. 173.

**The videos confirm these statements are false and Plaintiff perjured himself.**

2. Plaintiff testified: "The guy came at me with the shopping cart." *See* Plaintiff's Declaration, Paragraph 73. Plaintiff repeated this claim in his Deposition when testifying:

> Q: Okay. So when he came up to you and you said, You need to pay for that, what did he say?
>
> A: He refused to pay for it. He goes like, Move out of – move. He came towards me with the carts. He said, I will cut you up. So I took it as a threat to cut you up. He has a knife or something on him, so –
>
> Q: Did he say he had a knife on him?
>
> A: He said, I will cut you up.
>
> Q: Okay. But did he specifically say, I have a knife?
>
> A: Would you mind if I finish the whole thing so –
>
> Q: Did he specifically say, I have a knife?

6

> A: Yes, he said that. Let me finish, please.
>
> *See* Plaintiff's Deposition, p. 175.

**The videos confirm these statements are false and Plaintiff perjured himself.**

3. Plaintiff testified: "I put my hand out and stopped the cart so I would not get hit with it." *See* Plaintiff's Declaration, Paragraph 73. Plaintiff further claimed during his deposition:

> Q: The question is: Did he physically touch you? Yes or no?
>
> A: He came up to me with the carts, the pushing carts. Attempted to assault me with the pushing cart, so I act on it. It was – it was a threat.
>
> *See* Plaintiff's Deposition, p. 182.

**The videos confirm these statements are false and Plaintiff perjured himself.**

4. Plaintiff testified: "Then I said again, "you need to go back and pay for the merchandise. Go back behind the register." *See* Plaintiff's Declaration, Paragraph 73. Plaintiff further testified during his deposition:

> Q: You stopped him, right, from leaving the store?
>
> A: I was told to stop him and I asked the – I asked him when he was leaving the store to – I gave him the opportunity to pay for the items or leave the items and leave the premises of the property and the store.
>
> *See* Plaintiff's Deposition, p. 182.

**The videos confirms these statements are false and Plaintiff perjured himself.**

5. Plaintiff testified: "His tone completely changed and his eyes start opening up and looked angry and very red." *See* Plaintiff's Declaration, Paragraph 73.

**The videos confirm this statement is false and plaintiff perjured himself.**

7

6.  Plaintiff testified: "He said, "move out of my way. I'm gonna cut you up, I have a knife on me." *See* Plaintiff's Declaration, Paragraph 73. Plaintiff repeated this claim in his Deposition when testifying:

    Q: But you were observing him the whole time, right?

    A: I was observing him, yes.

    Q. Okay.

    A: I was watching him eye to eye. And he was completely intoxicated. And he says, I will cut you up if you don't move out of my way. That's when I acted for a safety reason to protect myself and protect the employees and management and the customers of H-E-B at that time.

    *See* Plaintiff's Deposiiton, p. 176.

Similarly, in his EEOC Charge, Plaintiff swore to the following:

> One of the men says, "I have a knife, I'm gonna cut you up." The man is drunk. I ask the store manager to call the police.
>
> *See* EEOC Charge.

Moreover, in Plaintiff's Supplemental Discovery, he produced a note and represented it was Plaintiff's account of the April 4, 2022 incident. The note states in relevant part,

> They were around the cashier not paying I recognize the suspects from other HEB store with organized theft which is they been arrested multiple times for the same issue and they are not allowed to come back to H-E-B property at all after when he went around the kiss [*sic*] year and did not want to pay for the merchandise I observe a knife on his site he was very drunk

intoxicated after when I approached him I handcuffed him for safety issue he might harm somebody…

*See* Supplemental Discovery.

**The videos confirm these statements are false and Plaintiff perjured himself.**

7. Plaintiff testified: "I looked to his sides to observe anything sharp on him he might grab, and I saw by his right side of his jacket it did not look normal. I saw something shiny and I thought I saw a knife. I was scared that he was going to cut me." *See* Plaintiff's Declaration, Paragraph 73.

**The videos confirm these statements are false and Plaintiff perjured himself.**

8. Plaintiff testified: "The guy threatened me. He made a threat toward me and he said he had a knife and he was gonna cut me up. I took it seriously." *See* Plaintiff's Declaration, Paragraph 73. Plaintiff repeated this claim in his Deposition when testifying:

> Q: Can you again describe what you mean by "aggressively"?
>
> A: Coming towards me with the carts after I asked him to –like, approached him, went up to him or after he saw me.
>
> Q: And when he didn't follow your directions, what did you do?
>
> A: He made the threat, and I acted on the threat.
>
> Q: When you say "he made the threat," what are you talking about?
>
> A: "I'm gonna cut you up. Move out of my way."
>
> *See* Plaintiff's Deposition, pp., 185-86.

This allegation of a threat made by the alleged shoplifter is also contained in Plaintiff's Complaint wherein it states in relevant part:

9

> …When the guard asks the men to pay for the merchandise at the door, one of the men threatens to cut the guard up with a knife. The man is drunk. The guard asks the manager to call the police and detains the man in handcuffs.

**The videos confirm these statements are false and Plaintiff perjured himself.**

9. Plaintiff testified: "I quickly went around him and I started to put one handcuff on him. I did not handcuff him completely. He was fighting me with the other hand. Then the police arrived and said we are taking over. The police finished putting the handcuffs on, using my handcuffs." Plaintiff repeated this claim in his Deposition when testifying:

   > Q: And when you said you were attempting to place him in handcuffs when the police arrived, what do you mean by "attempting"?
   >
   > A: Because I was putting handcuffs on him and – on one of the hand, and he was, like resisting. You know, not cooperative. And I had to attempt to put the other one handcuffs on. The police showed up not completely on, and police took him away immediately.
   >
   > *See* Plaintiff's Deposition, pp. 187-88.

**The videos confirm these statements are false and Plaintiff perjured himself.**

### B. <u>Plaintiff's Complaint Should be Dismissed with Prejudice in its Entirety.</u>

This entire case is based on a lie. Litigation is challenging even when both parties are truthful; it becomes impossible when one party lies and betrays the foundational principles of our judicial system. A review of the April 4, 2022 incident shows there was no imminent threat of bodily harm. Plaintiff has repeatedly claimed he only used force on the day in question after being aggressively confronted and nearly assaulted by the alleged shoplifter, and threatened with a knife that he swore he observed. The video conclusively shows otherwise. Plaintiff was the aggressor, combative,

impulsive, and reactive. He made no effort to de-escalate. Instead, Plaintiff forcibly removed the individual, pushed him against a wall, and handcuffed him.

Plaintiff's intentional falsehoods strike at the heart of the case. When courts encounter such perjurious conduct, dismissal with prejudice is an appropriate and necessary sanction to preserve the integrity of the process. One such case is *Brown v. Petro-Tex Chemical Corp.*, where the Fifth Circuit upheld dismissal with prejudice as the only effective sanction for a plaintiff's perjury. The court emphasized the need for deterrence and preserving institutional integrity. *Brown*, 664 F.3d 71, 77–79 (5th Cir. 2013).

Another instructive case is *Hull v. Municipality of San Juan*, 356 F.3d 98 (1st Cir. 2004), whose reasoning aligns with Fifth Circuit precedent. In *Hull*, the plaintiff intentionally withheld prior injury information, lied under oath, and distorted his history, even after the facts were independently uncovered. The court affirmed dismissal with prejudice, noting that "the information withheld was too patent and too convenient, and the pattern of deceit and grudging concessions too marked, to excuse the misstatements as merely careless." *Id.* at 101–02. The court also upheld an award of attorneys' fees. *Id.* at 104.

Further, the Supreme Court reaffirmed the power of federal courts to sanction abusive conduct under their inherent authority in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The Court confirmed that courts may sanction bad faith actions, including fraud on the court, by imposing attorney's fees or dismissing the case outright. *Id.* at 43–46.

Applying these precedents here, Plaintiff's knowing and material false testimony is both willful and central to the case. Plaintiff's conduct cannot be excused as a mistake given that he perjured himself repeatedly throughout this case. No lesser sanction would remedy the abuse or deter future misconduct. Accordingly, dismissal with prejudice, together with an award of

11

Defendant's attorneys' fees and costs, is fully justified to uphold this Court's dignity and the integrity of federal proceedings.

### C. **Dismissal With Prejudice Is The Only Appropriate Sanction.**

Given the audacity of Plaintiff's conduct, and the fact that the perjured testimony goes directly to the heart of the case, dismissal with prejudice is the only appropriate sanction. *Brown*, 664 F.3d at 80 (affirming district court's dismissal of case because perjury is "a serious offense that constitutes a severe affront to the courts and thwarts the administration of justice."); *Tesco Corp. v. Weatherford Int'l, Inc.*, 2014 WL 4244215, at *6–7 (S.D.Tex. Aug. 25, 2014) *appeal dismissed sub nom. Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, 804 F.3d 1367 (Fed.Cir.2015) (imposing death penalty sanction under the court's inherent power after a lawyer lied to the court because "such an affront...can only be answered with dismissal"); *Shangold v. Walt Disney Co.*, 2006 WL 71672, at *5 (S.D.N.Y. Jan. 12, 2006) (imposing death penalty sanctions under the court's inherent power when plaintiffs "fabricated evidence" that went to the heart of the dispute and then "sought to conceal it"); *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 582–83 (S.D.N.Y.1996) (entering judgment under the court's inherent power against a party who fabricated evidence to show bona fide use in trademark case); *Vargas v. Peltz*, 901 F.Supp. 1572, 1581–82 (S.D.Fla.1995) (dismissing plaintiff's sexual harassment case because she and her husband had fabricated evidence, committed perjury, and obstructed discovery).

Indeed, it is difficult to imagine what type of sanction short of dismissal would effectively remedy Plaintiff's misconduct and deter such behavior in the future. To that end, a monetary sanction would be largely symbolic, given the difficulties and additional expense to Defendant in attempting to collect. *See Wagner v. Boh Bros. Const. Co., LLC*, 2012 WL 3637392, at *10 (E.D. La. Aug. 22, 2012) (finding that a monetary sanction in response to plaintiff's perjury would be a

"vain and useless act."). Permitting Plaintiff to go forward with trial would in effect be no penalty at all, even if the Court were to provide some instruction to the jury regarding Plaintiff's intentional falsehoods. *See Wagner*, 2012 WL 3637392, at *11 ("[A]llowing [plaintiff] to proceed to trial on his remaining retaliation claim would in effect be 'no penalty' for his perjury and would not serve as a deterrent to him or other persons who might be tempted to thwart the proper administration of justice by failing to testify truthfully under oath.").

## IV. CONCLUSION

For all of the foregoing reasons, dismissal of this lawsuit is the appropriate sanction for Plaintiff's willful fraud upon the Court. The justice system require honesty, candor, and good faith in all legal proceedings. Plaintiff's perjured testimony, now directly contradicted by the recently discovered video evidence, strikes at the heart of the judicial process and undermines the integrity of this litigation. Such conduct violates the procedural safeguards designed to ensure fairness and truthfulness in the adjudication of claims. The Court should therefore dismiss Plaintiff's claims with prejudice and at his cost as a sanction for his deliberate and repeated false testimony.

Dated: August 13, 2025                     Respectfully submitted,

**MARTENSON, HASBROUCK & SIMON LLP**

*/s/ Jessica E. Chang*
Jessica E. Chang, attorney-in-charge
(SDTX No. 3905098, IL6319080)
Nathan A. Shine (SDTX No. 3874604, IL6316753)
David Hamilton (PHV)
Martenson, Hasbrouck & Simon LLP
500 Davis Street, Suite 1010
Evanston, Illinois 60201
(224) 350-3127
jchang@martensonlaw.com
nshine@martensonlaw.com
dhamilton@martensonlaw.com

*and*

        Marty N. Martenson (PHV)
        Martenson, Hasbrouck & Simon LLP
        2573 Apple Valley Road NE
        Atlanta, Georgia 30319
        (404) 909-8104
        mnmartenson@martensonlaw.com

        *Counsels for Defendant Universal Protection*
        *Service, LP d/b/a Allied Universal Security Services*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 13, 2025, I caused to be filed a true and correct copy of the foregoing document using the Court's CM/ECF system that will serve notice and a copy on all counsel of record as follows:

Amanda C. Hernandez  
AH Law, PLLC  
5718 Westheimer, Suite 1000  
Houston, Texas 77057  
amanda@ahfirm.com  

Amy Gibson  
David Wiley  
Gibson Wiley PLLC  
1500 Jackson Street, #109  
Dallas, Texas 75201  
amy@gwfirm.com  
david@gwfirm.com  

                                                */s/ Jessica E. Chang*  
                                                Jessica E. Chang