# EXHIBIT D

# In The Matter Of:

*Twana Ahmed vs.*
*Universal Protection Service, et al*

*Twana Ahmed*
*September 19, 2024*

**CONTINENTAL COURT REPORTERS, INC.- HOUSTON**
*2 Riverway, Suite 750*
*Houston, Texas 77056*
*(713) 522-5080 (800) 779-6981*
*www.TexasDepos.com*

Original File 240919TA_ts.txt
Min-U-Script® with Word Index

Case 4:23-cv-02823   Document 98-5   Filed on 10/02/25 in TXSD   Page 3 of 9

Twana Ahmed vs.
Universal Protection Service, et al

Twana Ahmed
September 19, 2024

Page 1

```
 1              UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    HOUSTON DIVISION
 3   TWANA AHMED,                :
 4        Plaintiff,              :
                                  :
 5   VS.                          :  C.A. NO.  4:23-cv-02823
                                  :
 6   UNIVERSAL PROTECTION         :
     SERVICE, LP d/b/a            :
 7   ALLIED UNIVERSAL             :
     SECURITY SERVICES,           :
 8                                :
          Defendant.              :
 9
     **************************************************
10
             ORAL AND VIDEOTAPED DEPOSITION OF
11                      TWANA AHMED
12                  SEPTEMBER 19, 2024
13   **************************************************
14
15          THE ORAL AND VIDEOTAPED DEPOSITION OF
16   TWANA AHMED, produced as a witness at the instance of
17   the Defendant, and duly sworn, was taken in the
18   above-styled and numbered cause on the 19th day of
19   September, 2024, from 9:45 a.m. to 6:58 p.m., before
20   Andrea L. Desormeaux, CSR in and for the State of
21   Texas, reported by machine shorthand, at the offices of
22   Vorys, Sater Seymour & Pease, 909 Fannin, Suite 2700,
23   Houston, Texas, pursuant to the Federal Rules of Civil
24   Procedure and the provisions stated on the record or
25   attached hereto.
```

Page 2

```
 1                    A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF:
 4       Ms. Amanda C. Hernandez
         AH Law, PLLC
 5       5618 Westheimer, Suite 1000
         Houston, Texas 77057
 6       Phone: (713) 588-4359
         amanda@ahfirm.com
 7
 8   FOR THE DEFENDANT:
 9       Mr. Nathan A. Shine
         Martenson Hasbrouck & Simon, LLP
10       500 Davis Street, Suite 1003
         Evanston, Illinois 60201
11       Phone: (224) 350-3123
         nshine@martensonlaw.com
12
13   THE VIDEOGRAPHER:
14       Mr. Bryan Birmingham
         Continental Legal Video Services
15       Two Riverway, Suite 750
         Houston, Texas 77056
16       Phone: (713) 522-5080
```

Page 3

```
 1                         INDEX
 2   Stipulations ....................................    1
     Appearances .....................................    2
 3
     TWANA AHMED
 4
          Examination by Mr. Shine ...............    7
 5        Examination by Ms. Hernandez ..........  300
          Examination by Mr. Shine ...............  328
 6
     Changes and Signature ...........................  333
 7   Reporter's Certificate ..........................  335
 8                        EXHIBITS
 9   NO./DESCRIPTION                                     PAGE
10       No. 1 .......................................   19
         Original Petition and Jury Demand
11       No. 2 .......................................   21
         12/10/21 email from Allied Universal to
12       Twana Ahmed; AhmedAllied000479 - 000480
         No. 3 .......................................   22
13       12/10/21 email from Sam from Allied
         Universal to Twana Ahmed; AhmedAllied000481
14       No. 4 .......................................   25
         12/14/21 email from Angelica Blake to Twana
15       Ahmed; AhmedAllied000477
         No. 5 .......................................   28
16       Training Certificate - New Employee
         Orientation; AUS 00663
17       No. 6 .......................................   30
         Training Certification - Preventing
18       Unlawful Discrimination & Harassment; AUS
         00664
19       No. 7 .......................................   45
         Packet of new employee forms; AUS 00036 -
20       00080
         No. 8 .......................................   58
21       Detention and Legal Arrest; AUS 00121
         No. 9 .......................................   63
22       Personal Appearance; AUS 00141
         No. 10 ......................................   64
23       ID Cards and Licenses/Registration;
         AUS 00147
24       No. 11 ......................................   66
         Security Professional ID Badge Receipt and
25       Acknowledgement; AUS 665
```

Page 4

```
 1                    EXHIBITS (Continued)
 2   NO./DESCRIPTION                                     PAGE
 3       No. 12 ......................................   71
         Religious Accommodations; AUS 00172
 4       No. 13 ......................................   86
         Copy of a photograph; AhmedAllied000590
 5       No. 14 ......................................   88
         Copy of a photograph; AUS 001804
 6       No. 15 ......................................   92
         3/26/22 Inspection Report; AUS 00731 -
 7       00732
         No. 16 ......................................   99
 8       Copies of four photographs;
         AhmedAllied000584 - 000587
 9       No. 17 ......................................  134
         Hot Sheet - AUS Security Office Post
10       Orders; AUS 01036 - 01042
         No. 18 ......................................  139
11       H-E-B Store Officer Training Checklist;
         AUS 00644 - 00652
12       No. 19 ......................................  159
         Text messages; AhmedAllied000594 - 000595
13       No. 20 ......................................  165
         Copy of a photograph; AhmedAllied000588
14       No. 21 ......................................  188
         Incident Report; AUS 00671 - 00674
15       No. 22 ......................................  195
         City of Bellaire Police Department CFS -
16       Command Log; AhmedAllied000526 - 000540
         No. 23 ......................................  211
17       Weapon Issue/Return; AhmedAllied000448
         No. 24 ......................................  212
18       Weapon Issue/return; AhmedAllied000449
         No. 25 ......................................  233
19       Hotline complaint; AUS 01257 - 01259
         No. 26 ......................................  239
20       5/26/22 email string between Wayne Oliver,
         Catherine Alyea, Twana Ahmed; AUS 01265 -
21       01266
         No. 27 ......................................  243
22       6/8/22 email from Twana Ahmed to Wayne
         Oliver; AUS 1332 to 1334
23       No. 28 ......................................  251
         EEOC Charge of Discrimination; AUS 00001 -
24       00002
25
```

Case 4:23-cv-02823   Document 98-5   Filed on 10/02/25 in TXSD   Page 4 of 9

Twana Ahmed vs.
Universal Protection Service, et al

Twana Ahmed
September 19, 2024

```
                                                        Page 5
 1                    EXHIBITS (Continued)
 2   NO./DESCRIPTION                                      PAGE
 3      No. 29 .........................................  253
          EEOC Determination and Notice of Rights;
 4        AUS 00003
        No. 30 .........................................  255
 5        2/14/22 Coaching Counseling Disciplinary
          Notice; AUS 00034
 6      No. 31 .........................................  256
          4/5/22 Coaching Counseling Disciplinary
 7        Notice; AUS 00033
        No. 32 .........................................  295
 8        Twana Ahmed's Objections and Supplemental
          Answers to Defendants' First Set of
 9        Interrogatories
        No. 33 .........................................  296
10        Twana Ahmed's Objections and Supplemental
          Responses to Defendant's First Request for
11        Production
        No. 34 .........................................  298
12        Payroll Check History; AUS 00675 - 00678
        No. 35 .........................................  299
13        Earnings Statement; AUS 00682 - 00695
```

09:45:09-09:46:33                                         Page 6

1           THE VIDEOGRAPHER: We are now on the
2   record. Today's date is September 19, 2024. The time
3   is approximately 9:44 a.m. We're here for the United
4   States District Court for the Southern District of
5   Texas, Houston Division. Twana Ahmed versus Universal
6   Protection Services, LP, d/b/a Allied Universal
7   Security Services. Case No. 4:23-cv-02823.
8           We are located today in Houston, Texas,
9   at Vorys Sater Seymour & Pease, LLP, at 909 Fannin
10  Street, Suite 2700, and the Zip code is 77010. Our
11  court reporter today is Andrea Desormeaux, and then the
12  videographer is Brian Birmingham. We are both with
13  Continental Court Reporters.
14          Will counsel please voice identify
15  yourselves and then the court reporter will swear in
16  the witness.
17          MR. SHINE: Nathan Shine on behalf of
18  Universal Protection Service, LP, doing business as
19  Allied Universal Security Services, with the firm of
20  Martenson Hasbrouck & Simon, LP.
21          MS. HERNANDEZ: And Amanda Hernandez for
22  Plaintiff Twana Ahmed, with the firm AH Law, PLLC.
23          THE REPORTER: Please state your
24  stipulations for the record.
25          MS. HERNANDEZ: I think the only

09:46:33-09:47:24                                         Page 7

1   stipulation we had was that this was pursuant to the
2   Federal rules and Plaintiff would like to read and
3   sign.
4           MR. SHINE: That is correct.
5                    TWANA AHMED,
6   having been first duly sworn, testified as follows:
7                     EXAMINATION
8   BY MR. SHINE:
9       Q.  Good morning, Twana.
10      A.  Good morning. How are you?
11      Q.  I'm well, thanks. Is it okay if I call you
12  Twana?
13      A.  Absolutely.
14      Q.  As you heard, I represent Universal Protection
15  Service, LP, which does business as Allied Universal
16  Security Services. For today's deposition, is it okay
17  if I just call them Allied or Allied Universal?
18      A.  Whatever you feel more comfortable, I'm fine
19  with it.
20      Q.  Okay. I just want to go over a few deposition
21  preliminaries with you, Twana.
22      A.  Yes.
23      Q.  Have you ever been deposed before?
24      A.  No.
25      Q.  This is your first time?

09:47:25-09:48:21                                         Page 8

1       A.  First time.
2       Q.  As you can see, your answers are being
3   recorded verbatim by a certified court reporter.
4       A.  Yes.
5       Q.  And so it's important that you don't speak
6   over me and I won't speak over you as we're having a
7   conversation today.
8           Are there any reasons or circumstances
9   that you can identify that would prevent you from
10  testifying truthfully or accurately today?
11      A.  Sorry. What do you mean?
12      Q.  Are there any reasons that you can identify
13  that would prevent you from being able to answer the
14  questions truthfully today?
15      A.  I will answer the questions yes, truthfully.
16      Q.  Have you recently ingested, injected, applied,
17  or otherwise consumed any substances that might affect
18  your ability to testify today?
19      A.  No.
20      Q.  And if I ask a question that you do not hear
21  or understand, I ask you that you either ask me to
22  repeat it or rephrase it; is that okay?
23      A.  Yes.
24      Q.  And if I ask you a question and you provide an
25  answer, I will assume that you understood the question.

Case 4:23-cv-02823   Document 98-5   Filed on 10/02/25 in TXSD   Page 5 of 9

Twana Ahmed vs.
Universal Protection Service, et al

Twana Ahmed
September 19, 2024

**09:48:23-09:49:15**  Page 9

1  Okay?
2  A.  That's correct.
3  Q.  And do you understand that the oath you just
4  took prior to answering these questions carries the
5  same obligation to tell the truth as you would before
6  judge or jury in this matter?
7  A.  Yes.
8  Q.  And do you agree that you will truthfully
9  answer the questions to the best of your ability today?
10 A.  Yes.
11 Q.  Before coming in today, Twana, did you think
12 back to the events that took place in this case so that
13 you could have a clear memory of what happened?
14 A.  Of the incident, when I was in the company?
15 Is that what you mean?
16 Q.  Yeah.
17 A.  Yes.
18 Q.  Did you think back to what your lawsuit is
19 about before you came in today?
20 A.  Yes, the best of my knowledge, yes.
21 Q.  And did you review any documents in
22 preparation for today's deposition?
23         MS. HERNANDEZ:  Objection.  I'm going to
24 instruct the witness not to answer because that gets
25 into work product, attorney work product.

**09:49:21-09:50:20**  Page 10

1          MR. SHINE:  Respectfully, Counsel, he's
2  allowed to testify if he reviewed any documents in
3  preparation for his testimony.
4          MS. HERNANDEZ:  I believe under the
5  rules, that's still considered work product.  To the
6  extent you want to rephrase, but any preparation that
7  he did with me or reviewed, then that's work product
8  and I'm going to advise him not to answer.
9  Q.  (By Mr. Shine)  Other than working with your
10 counsel, did you look independently at any documents
11 today before today's deposition?
12 A.  I will stick to my attorney, what she said.
13 Q.  That's not the question.
14     Outside of working with your attorney --
15 A.  Yes.
16 Q.  -- did you independently review any documents
17 in your preparation for today's testimony?
18 A.  Regarding the lawsuits?
19 Q.  Any document that you may have looked at,
20 Twana.
21 A.  No.
22 Q.  So other than working with your counsel, you
23 did no independent preparation for today?
24 A.  No.
25 Q.  Other than your attorney, did you talk to

**09:50:26-09:51:51**  Page 11

1  anyone about your deposition today?
2  A.  No.
3  Q.  Twana, who do you understand to represent you
4  as your attorney in this case?
5  A.  My attorney is Amanda.
6  Q.  Other than Amanda, do you have any other
7  attorneys that represent you in this case?
8  A.  No.
9  Q.  Do you know someone by the name of Jennifer
10 Stark?
11 A.  I believe there is another attorney working
12 with my attorney that I met before, but my main
13 attorney is Amanda.
14 Q.  The question is:  Did you -- do you know
15 someone by the name of Jennifer Stark?
16 A.  I don't recall that name very well.
17 Q.  Are you aware that a Jennifer Stark attended
18 depositions last week?
19 A.  I believe so.
20 Q.  Do you know someone by the name of Amy Gibson?
21 A.  I might have heard about that name but not too
22 sure.
23 Q.  Have you ever talked with an Amy Gibson about
24 your case?
25 A.  No.

**09:51:51-09:53:04**  Page 12

1  Q.  Are you aware that she filed an appearance in
2  this lawsuit stating that she represented you?
3  A.  If she did, I'm pretty sure my attorney is
4  aware of that and she had the consent from my attorney,
5  so I'm completely fine.
6  Q.  The question is:  Are you aware that Amy
7  Gibson filed an appearance in this lawsuit stating that
8  she represented you?
9  A.  I can't remember that at the moment.
10 Q.  Do you know someone by the name of David
11 Wylie?
12 A.  I can't remember that name very well.
13 Q.  Have you ever talked with a David Wiley about
14 your case?
15 A.  Personally or over the phone?  I believe not.
16 Q.  Are you aware that a David Wiley filed an
17 appearance in this lawsuit stating that he represented
18 you?
19 A.  Personal, as in my attorney who's sitting
20 right here.  So I don't remember that name or anything
21 like that.
22 Q.  Did you ask an Amy Gibson to represent you?
23 A.  I don't know that person well or met anybody
24 by that name.
25 Q.  Did you ask a David Wylie to represent you?

02:08:54-02:10:03                                          Page 173

1   A.  The other guy left the store because the other
2   guy's a lookout.
3   Q.  You testified earlier that there might have
4   been three people.  Where's the third guy?
5   A.  There are usually three, for my last
6   experience with them before this one.
7   Q.  Okay.  But at this time, was there two or
8   three?
9   A.  Two, but the third one I did not observe.  It
10  could be somewhere in the property.
11  Q.  But you have no idea?
12  A.  Huh?
13  Q.  You have no idea?
14  A.  I didn't observe him, the third person; but
15  there are usually three.  But what I saw that day, two.
16  Q.  So how did you first approach him?
17  A.  I was by the door.  I was, like, Hey, you need
18  to pay.  You need to go back to the lane.  You need to
19  pay.  He was in the carts, he was -- you can smell the
20  odor of alcohol coming out of his mouth.  Completely
21  intoxicated.  Made a verbal threat towards me and I
22  acted on that threat.
23          Well, before that, the manager told me
24  not to let them leave.
25  Q.  How did the manager tell you that?

02:10:05-02:11:06                                          Page 174

1   A.  Don't let them leave the property with the
2   item.
3   Q.  And how did he -- how did he communicate that
4   to you?
5   A.  Physically, like, face-to-face.
6   Q.  Was the manager with you during this
7   observation?
8   A.  He stand behind the register on the other
9   side.  I was the only one in the -- in the front.
10  Before -- before -- before I go up there and all that,
11  like, before they get close, he pointed and was like,
12  Don't let them leave.  Don't let them leave.  I was
13  like, Okay.
14  Q.  So he told you orally don't let them leave, or
15  he just pointed at you and you --
16  A.  He said --
17  Q.  -- interpreted that as don't let them leave?
18  A.  No, No.  It's not I interpreted that.  The
19  length of distance between me and him, it was not that
20  far.
21  Q.  Great.  How far was it?
22  A.  5 feet.  It could be 5 feet or it could be
23  less.  He said to me, He's coming around.  If they
24  attempted to leave, don't let them leave; don't let
25  them take the merchandise.

02:11:07-02:12:01                                          Page 175

1          I was like, okay.  So I gave them -- they
2   came up -- he came up to me, one of them.  I didn't see
3   the second one.  The second one left.
4   Q.  Right.  You said the guy with the hat, the guy
5   in the blue jacket, right?
6   A.  Correct, correct.
7   Q.  Okay.  So when he came up to you and you said,
8   You need to pay for that, what did he say?
9   A.  He refused to pay for it.  He goes like, Move
10  out of -- move.  He came towards me with the carts.  He
11  said, I will cut you up.  So I took it as a threat to
12  cut you up.  He has a knife or something on him, so --
13  Q.  Did he say he had a knife on him?
14  A.  He said, I will cut you up.
15  Q.  Okay.  But did he specifically say, I have a
16  knife?
17  A.  Would you mind if I finish the whole thing
18  so --
19  Q.  Did he specifically say, I have a knife?
20  A.  Yes, he said that.  Let me finish, please.
21  Q.  Did he show you said knife?
22  A.  He did not pull out a knife.
23  Q.  Where were his hands during the interaction,
24  Twana?
25  A.  One of them was in the carts.

02:12:03-02:12:51                                          Page 176

1   Q.  Where was the other one?
2   A.  I believe on the side area.  I don't believe
3   both of --
4   Q.  Side area of what?
5   A.  His jacket or something.
6   Q.  But you were observing him the whole time,
7   right?
8   A.  I was observing him, yes.
9   Q.  Okay.
10  A.  I was watching him eye to eye.  And he was
11  completely intoxicated.  And he says, I will cut you up
12  if you don't move out of my way.
13          That's when I acted for a safety reason
14  to protect myself and protect the employees and
15  management and the customers of H-E-B at that time.
16  Q.  Sure.  So did he physically attack you?
17  A.  He came up to me with the carts in an
18  aggressive way.
19  Q.  What do you mean by "aggressive"?
20  A.  When somebody's, like, aggressive, like comes
21  towards you with the carts.  Before I interacted with
22  him, he saw me by the door.  He knows I'm gonna
23  approach him and talk to him.
24  Q.  How do you know that?
25  A.  What?

Case 4:23-cv-02823   Document 98-5   Filed on 10/02/25 in TXSD   Page 7 of 9

Twana Ahmed vs.
Universal Protection Service, et al

Twana Ahmed
September 19, 2024

02:12:52-02:13:47                                              Page 177

1   Q.   How do you know he knows --
2   A.   Because --
3   Q.   -- that you're going to approach him?
4   A.   Because I dealt with him before and they got
5   arrested because of me before in a different property.
6   Q.   Okay.
7   A.   The same group.  So they know me very well.
8   And they know I --
9   Q.   But that day, you're saying he knew you were
10  going to talk to him?
11  A.   Because he saw me by the door and he looked at
12  me.  He saw me clearly by the door, the glass door.  He
13  saw me very well.
14  Q.   And when you say he came up to you
15  aggressively, what does that mean?
16  A.   Aggressively, like when you see somebody just
17  come up to them with the carts, attempted to hit them
18  in the carts.
19  Q.   Did he touch you with the cart?
20  A.   I don't remember if he touched me -- touched
21  me with the carts, but he came towards me with the
22  carts.
23  Q.   Okay.  And so when he aggressively came
24  towards you, did he do any other gestures towards you?
25  A.   When he made the threat, I realized he was

02:13:52-02:15:17                                              Page 178

1   completely intoxicated.  He's not in his full mindset.
2   You never know what this person's capable -- capable
3   of.  So I used the proper force to detain him according
4   to Allied Universal guidelines and instructions and
5   policy.
6   Q.   Are you a corporate representative for Allied?
7   A.   I'm not a corporate representative for --
8   Q.   So do you know what Allied's policy --
9   A.   The policy says it's -- the policy says if
10  somebody makes a threat towards you or anything like
11  that, use the probable -- probable force.  So the
12  person is -- for example, if that person left the
13  property and he has -- I took the item away and he's
14  not in full his mindset, I don't know if he's walking
15  out and there's an 80-years-old -- older woman, he's
16  gonna grab a knife and stab her and take her car.  And
17  they're gonna be like, Where were you?  Why didn't you
18  do something?  That's one.
19         Two, if he goes back, grab a gun -- he's
20  so pissed off that I took his liquor away.  He's gonna
21  come back and I'm patrolling or the manager is inside,
22  he's gonna come and shoot somebody in the head and kill
23  somebody.  And that's when I'm gonna be in trouble in
24  both ways.
25         So the proper way is contact -- have him

02:15:20-02:16:18                                              Page 179

1   here, stand over here, call the proper authority.  The
2   proper authority will come and deal with him in the
3   legal matter.  So it's not gonna be under my
4   responsibility.  Why did you not did this or why did
5   you do this.  And both ways, I did not acted alone,
6   like, by myself.  I was told what to do by the property
7   manager.  If I didn't do what the property manager told
8   me to do, I'd be in trouble too.  Like, why did you
9   didn't listen to him.
10  Q.   Do you work for H-E-B?
11  A.   I'm hired by Allied Universal to --
12  Q.   Correct.  So Allied Universal was your
13  employer, right?
14  A.   Correct.
15  Q.   So Allied Universal's policies and procedures
16  controlled your employment, right?
17  A.   Correct.
18  Q.   And we just went through the post orders
19  together, right?
20  A.   Right.
21  Q.   And it says do not touch a shoplifter,
22  correct?
23  A.   Does H-E-B has those post orders and
24  management's aware of that?  Absolutely looks like not.
25  Why did they contact me?  Why would he contact me and

02:16:21-02:17:28                                              Page 180

1   said observe this guy?  They didn't -- he should --
2   let's say, for example, Kevin should know that's not my
3   job.  He should not contact me.  He shouldn't have told
4   me these are shoplifting.  If I'm on the second floor,
5   I'm patrolling.  Why would he text me and said these
6   people are shoplifting?  He should have never told me.
7   Q.   Twana, I'm going to stop you right there
8   because he didn't say they're shoplifting.  It says
9   attempted beer theft.
10  A.   It's the same thing.  It's shoplifting.
11  Q.   Shoplifting requires them to leave the store,
12  right?
13  A.   What's the difference between shoplifting and
14  beer theft?  They both are not paying.  They stole.
15  They stealing.  So both of categories against the law.
16  Whatever it is, in State of Texas, if you shoplift, it
17  don't matter if it's a dollar or $5, or $1.  If you
18  don't pay for it, it's -- it's against the law.  If I'm
19  steal this document, it's worth one penny.  In State of
20  Texas, if I refuse to pay for this document and I'm
21  leaving and I put hands on you, that's a felon in the
22  State of Texas.  So --
23  Q.   Are you a law enforcement?
24  A.   I'm not a law enforcement but I'm --
25  Q.   Are you a trained in law enforcement?

Case 4:23-cv-02823   Document 98-5   Filed on 10/02/25 in TXSD   Page 8 of 9

Twana Ahmed vs.
Universal Protection Service, et al

Twana Ahmed
September 19, 2024

02:17:30-02:18:23                                              Page 181

 1   A.  I am -- I am aware of the law very clearly in
 2   the State of Texas.
 3   Q.  Great.  What's the Texas penal code that
 4   you're referring to?
 5   A.  I'm gonna -- I don't know the penal code
 6   exactly by my head.
 7   Q.  So how are you trained in the penal code,
 8   Twana?
 9   A.  I have been in the security business for --
10   for a period of time.  There are things you learn
11   within your experience.  For example, when I'm wearing
12   a uniform, the State of Texas says I'm a public
13   servant.  If you assault me, it means you assaulted a
14   police officer, you'll be charged as a -- charged a
15   police officer.  That's in the State of Texas law.
16   What's the law code?  I have no idea.
17   Q.  So you're saying anytime a security guard that
18   works for a private company is assaulted, the police
19   are going to charge them as assaulting a police
20   officer?
21   A.  Yes.  That's what the law is.  That's in the
22   State of Texas.
23   Q.  I'm glad you're so confident, Twana.
24   A.  That is the law.  It's a --
25   Q.  So going back to the relevant issue here, did

02:18:25-02:19:11                                              Page 182

 1   this man physically touch you in any way?
 2   A.  He came up to me aggressively.
 3   Q.  Did he physically touch you in any way?
 4   A.  He made a threat towards me.
 5   Q.  Did he physically touch you in any way?
 6   A.  He made a threat towards me.
 7       MR. SHINE: Counsel, please advise your
 8   client to answer the question.  He's clearly being
 9   evasive.
10       THE WITNESS: I'm not.
11   Q.  (By Mr. Shine)  The question is:  Did he
12   physically touch you?  Yes or no?
13   A.  He came up to me with the carts, the pushing
14   carts.  Attempted to assault me with the pushing cart,
15   so I act on it.  It was -- it was a threat.
16       MR. SHINE: Your client is not answering
17   the question.  And if he's going to continue to be
18   evasive --
19       MS. HERNANDEZ: He's trying to answer --
20       MR. SHINE: -- we'll go to the Court.
21       MS. HERNANDEZ: -- to the best of his
22   ability.
23       MR. SHINE: It's not.  It's a simple yes
24   or no, Counsel.  If he's refusing or continuing to be
25   evasive, I will go to Judge Rosenthal.

02:19:11-03:08:42                                              Page 183

 1       MS. HERNANDEZ: Are you refusing to
 2   answer?
 3       THE WITNESS: I'm answering all his
 4   questions.
 5   Q.  (By Mr. Shine)  The question simply is:  Did
 6   he physically touch you?
 7   A.  You cannot -- some questions you cannot ask
 8   them -- answer them by yes or no.  It's impossible to
 9   ask somebody yes or no, some stuff.
10       MS. HERNANDEZ: Do you understand what he
11   means by "physically"?
12       THE WITNESS: No.
13       MR. SHINE: We're going to stop.  We're
14   going to take a break.  Go off the record, please.
15       THE VIDEOGRAPHER: Off the record at
16   2:19.
17       (Off the record 2:19 p.m. to 3:07 p.m.)
18       THE VIDEOGRAPHER: Back on the record at
19   3:07.
20   Q.  (By Mr. Shine) Twana, before we took a break,
21   there was a question that was posed to you with respect
22   to this guy that was allegedly shoplifting, right?  And
23   the question was:  Did he touch you or physically touch
24   you in any way?  So I'm going to ask the same question.
25   Did he touch you that day?

03:08:43-03:10:46                                              Page 184

 1   A.  I do not remember.
 2   Q.  You stopped him, right, from leaving the
 3   store?
 4   A.  I was told to stop him and I asked the -- I
 5   asked him when he was leaving the store to -- I gave
 6   him the opportunity to pay for the items or leave the
 7   items and leave the premises of the property and the
 8   store.
 9   Q.  Okay.  But you stopped him at some point,
10   right?
11   A.  Correct.
12   Q.  And when you stopped him, he was still inside
13   the store, right?
14   A.  What do you mean, "inside the store"?  Like,
15   inside the store or in the property?  What exactly,
16   like --
17   Q.  Inside the store.
18   A.  I think so.  By the exit.
19   Q.  Okay.  But he hadn't -- he had not exited the
20   store at that point, right?
21   A.  I don't remember exactly if he was outside --
22   outside of the store.  He was in the store area.
23   Q.  Okay.  So where were you?  Were you inside the
24   store or outside the store?
25   A.  I was by the gate, by the door, the entrance

**03:10:51-03:11:44** — Page 185

or the exits of the store.
Q. Right. So you testified previously that you had entered the store when the manager asked you to come inside, right?
A. Yes.
Q. And then you observed these gentlemen and followed him as he went towards the registers, right?
A. I went towards the door after that.
Q. Right. And you stood inside the store at that point, right?
A. I was not inside the store, like, physically inside the store. I was by the gate. Because there's a metal barrier, glass. I was by the metal barrier or the glass.
Q. Okay. And you said he approached you with a shopping cart, right?
A. Yeah, that's correct.
Q. And you said he approached you aggressively. Your words, right?
A. Yes.
Q. Can you again describe what you mean by "aggressively"?
A. Coming towards me with the carts after I asked him to -- like, approached him, went up to him or after he saw me.

**03:11:46-03:13:01** — Page 186

Q. And when he didn't follow your directions, what did you do?
A. He made the threat, and I acted on the threat.
Q. When you say "he made the threat," what are you talking about?
A. "I'm gonna cut you up. Move out of my way."
Q. Okay. And again, he never showed you a knife, right?
A. He didn't pull anything out, like, physically show me or anything like that, no.
Q. Okay. And when -- again, he refused to stop on your directions. You said you acted, right? What did you do?
A. Detained him.
Q. And what do you mean by "detained him"?
A. Put in handcuffs, attempt to put handcuffs on him.
Q. So putting him in handcuffs or attempting to put him in handcuffs, to me, means two different things. What did you do?
A. Because I -- I didn't complete the handcuffs hundred percent when law enforcement showed up. Like, he was -- I'm putting handcuffs on him, the police showed up behind me exactly. They were there very fast to respond back. Faster than I ever thought about.

**03:13:04-03:14:08** — Page 187

Q. Were you the one that called the police?
A. No, I did not.
Q. Do you know who called the police?
A. The manager.
Q. When you say "the manager," is that Kevin you were talking about earlier?
A. I believe so. There were multiple managers. Which one called 9-1-1? Not too sure.
Q. Okay. And what police department arrived?
A. Local police department.
Q. I'm not sure what local means. I'm not from the area. Can you tell me what local means to you?
A. Whatever jurisdiction of police department that area in, that particular agency showed up. Whatever agency will patrol that area.
Q. Okay. So in your experience, what agency paroles that area?
A. Well, since it's a different city, it's not HPD, it's -- it's a B police department. So, Bellaire Police Department, I believe they showed up.
Q. And when you said you were attempting to place him in handcuffs when the police arrived, what do you mean by "attempting"?
A. Because I was putting handcuffs on him and -- on one of the hand, and he was, like, resisting. You

**03:14:11-03:15:43** — Page 188

know, not cooperative. And I had to attempt to put the other one handcuffs on. The police showed up not completely on, and police took him away immediately.
Q. How many police officers showed up?
A. On top of my head, I don't have a knowledge of -- don't remember exactly. Maybe three, maybe two.
Q. After this incident occurred, Twana, did you complete an incident report?
A. I was never given the opportunity to do a police -- sorry -- incident report.
    (Exhibit No. 21 marked.)
Q. Twana, I'm handing you a copy of an incident report that you completed after this incident. Would you agree --
    MR. SHINE: This is, for the record, AUS 671 through AUS 674.
Q. (By Mr. Shine) On the first page, 671, do you see in the middle where it says "Name"?
A. Yes.
Q. That is your name?
A. Yes.
Q. Is that your handwriting?
A. Yes.
Q. Is that your phone number?
A. Yes.