IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Twana Ahmed, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | CIVIL ACTION NO. |
| | § | 4:23-cv-02823 |
| | § | |
| Universal Protection Service, LP, | § | Jury Trial Demanded |
| d/b/a Allied Universal Security | § | |
| Services | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

---

## THE PARTIES JOINT PROPOSED JURY INSTRUCTIONS AND INTERROGATORIES

---

In accordance with the Court's Civil Procedures Manual, attached is a single set of proposed jury instructions and interrogatories that have been agreed to by all counsel, with supporting authority listed on a separate page. Where the parties could not agree, the disputed language is set out in bold or italics and labeled to show which party requests the language with supporting authority. If the parties could not come to agreement, an alternative instruction on the topic is presented.

Instruction No. 1:  Instructions for Beginning of Trial

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused

as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the

trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

Source: FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 1.1 Instructions for Beginning of Trial (revised ed. June 2020).

Instruction No. 2:  Preliminary Instructions to the Jury

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, Snapchat, Instagram, X/Twitter,

TikTok or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiff will present his case through witness testimony and documentary or other evidence. Next, the defendant will have an opportunity to present its case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, the closing arguments, and my instructions.

It is now time for the opening statements.

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 1.2 Preliminary Instructions to Jury (revised ed. June 2020).

Instruction No. 3: General Instructions for Jury Charge

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not

evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 3.1 Jury Charge (revised ed. June 2020).

Instruction No. 4: Bias—Corporate Party Involved

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 2.16 Bias—Corporate Party Involved (revised ed. June 2020).

Instruction No. 5: Burden of Proof: Preponderance of the Evidence

**In this case,** Twana Ahmed has the burden of proving **every essential part of** his [case] **discrimination and retaliation claims** by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Twana Ahmed has failed to prove any element of his claim by a preponderance of the evidence, then he may not recover on that claim. *Likewise, if you find that Allied Universal has failed to prove any element of any affirmative defense by a preponderance of the evidence, then you may not find for Allied Universal on that defense.*

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 3.2 Burden of Proof: Preponderance of the Evidence (revised ed. June 2020) **(Defendant Allied Universal requests the bold language be included and the italicized language be removed; Plaintiff Twana Ahmed requests that the bold language be removed, as it is not part of the pattern instruction. Should the Court grant Allied Universal's request for the bold language, Mr. Ahmed requests that the italicized language also be added to the instruction).**

Instruction No. 6: Evidence

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 3.3 Evidence (revised ed. June 2020).

**Plaintiff's Instruction No. 7: Circumstantial Evidence**

Twana Ahmed is not required to produce direct evidence of unlawful motive. There will seldom be eye-witness testimony to the employer's mental processes. Intentional discrimination, if it exists, is seldom admitted, but is a fact that you may infer from the existence of other facts.

Source:        *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983); *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 731 (8th Cir. 1992) (affirming instruction plaintiff was not required to produce direct evidence of unlawful motive, and that intentional discrimination is seldom admitted but may be inferred from the existence of other facts); *Matthews v. Commonwealth Edison Co*., 93-cv-004140, 1995 WL 478820, at *3 (N.D. Ill. Mar. 24, 1995) (plaintiff is entitled to have an instruction which read "In addition, James E. Matthews is not required to produce direct evidence of unlawful motive. Intentional discrimination, if it exists, is seldom admitted, but is a fact which you may infer from the existence of other facts."). **(Plaintiff Twana Ahmed requests this instruction based on the cited Supreme Court precedent. Defendant previously agreed to this instruction in the parties previously submitted joint jury charge [ECF Doc. No. 45-4, p. 9]. Defendant Allied Universal objects to the use of this Charge. Plaintiff has cited to no Fifth Circuit authority supporting this Charge, it is not a Fifth Circuit Pattern Jury Instruction, nor does the Charge itself take into account the balancing of interests that should be afforded Allied Universal.)**

Instruction No. 8: Witnesses

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

**Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.**

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 3.4 Witnesses (revised ed. June 2020) **(Allied Universal requests the bold language which is part of the Fifth Circuit Pattern Jury Instruction, 3.4 Witnesses. Twana Ahmed objects to the bold language because it is legally incorrect and confusing. For example, a juror may believe and accept a party's testimony even if contradicted by another eyewitness whom the juror does not believe. But the instruction would preclude that and other permissible juror decisions about the facts.).**

Instruction No. 9: Impeachment by Witness's Inconsistent Statements

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 2.11 Impeachment by Witness's Inconsistent Statements (revised ed. June 2020).

**<u>Plaintiff's Instruction No. 10: Parallel Theories on Damages</u>**

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Source:      TEX. PATTERN JURY CHARGES – CIVIL § 100.12 (2022 ed.). **(Twana Ahmed requests this proposed instruction, which Defendant previously agreed to [ECF Doc. No. 45-4 p. 12]. Defendant Allied Universal objects to the use of this Charge. Plaintiff has cited to no Fifth Circuit authority supporting this Charge, it is not a Fifth Circuit Pattern Jury Instruction, nor does the Charge itself take into account the balancing of interests that should be afforded Allied Universal.)**

<u>Instruction No. 11: No Inference from Filing Suit</u>

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (Civil Cases), § 3.6 No Inference from Filing Suit (revised ed. June 2020).

Instruction No. 12: Deposition Testimony

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read to you today or displayed by video. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (Civil Cases), § 2.13 Deposition Testimony (revised ed. June 2020).

Instruction No. 13 Demonstrative Evidence

Exhibit *[specify]* is an illustration. It is a party's *[description/picture/model]* used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (Civil Cases), § 2.8 Demonstrative Evidence (revised ed. June 2020).

**<u>Defendant's Instruction No. 14: Witness Not Called</u>**

*[Name of witness]* **was available to both sides. Plaintiff/Defendant cannot complain that** *[name of witness]* **was not called to testify, because either Plaintiff or Defendant** *[name]* **could have called** *[name of witness]*

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (Civil Cases), § 2.9 Witness Not Called (revised ed. June 2020). (**Allied Universal requests the bolded language. Twana Ahmed objects to use of this instruction because it is appropriate only if the issue arises during closing argument or at some other time in trial).**

**Defendant's Instruction No. 15: Charts and Summaries**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (Civil Cases), § 2.7 Charts and Summaries (revised ed. June 2020) **(Allied Universal requests the bolded language. Twana Ahmed does not agree because some summaries and charts are admissible evidence, for example those under Federal Rule of Evidence 1006).**

Instruction No. 16: Judicial Notice

You must accept as proved facts of which the court takes judicial notice. The court has taken judicial notice that [state the facts].

Source:     Fifth Circuit District Judges Association, Pattern Jury Instructions (Civil Cases), § 2.4 Judicial Notice (revised ed. June 2020)

Instruction No. 17: Discrimination under The Civil Rights Act of 1886 as amended in 42 U.S.C. § 1981

*Twana Ahmed has a claim for recovery based upon the federal statute Title 42, United States Code, Section 1981, also known as the Civil Rights Act of 1886. This statute provides that all persons within the United States shall have the same right to make and enforce contracts regardless of their race, ancestry, or ethnicity. This law entitles all people to equal opportunity and equal treatment in employment, including at will employment. When an employer acts adversely against a person because of that person's race, ancestry, or ethnicity, the law is violated and the person may file a lawsuit to recover damages.* **Twana Ahmed claims that he would not have been terminated but for his race, ancestry, and/or ethnicity. Twana Ahmed has the burden of proving by a preponderance of the evidence that the termination was the result of intentional discrimination based on his race, ancestry and/or ethnicity.**

An employer may, however discipline or terminate an employee for other reasons, good or bad, fair or unfair. The employer, Allied Universal, denies Twana Ahmed's claim and contends that he was not subjected to discriminatory treatment and that he was terminated for legitimate and nondiscriminatory reasons**, that is that he violated Allied Universal's Use of Force policy.**

**It is unlawful for an employer to discriminate against an employee because of the employee's race, ancestry and/or ethnicity. To prove unlawful**

discrimination, Twana Ahmed must prove by a preponderance of the evidence that:

1. Allied Universal suspended and later terminated Twana Ahmed; and

2. Allied Universal would not have suspended or terminated Twana Ahmed in the absence of, or "but for," his race, ancestry and/or ethnicity.

Twana Ahmed does not have to prove that unlawful discrimination was the only reason Allied Universal suspended or terminated him. But Twana Ahmed must prove that Allied Universal's decision to suspend and terminate him would not have occurred in the absence of such unlawful discrimination.

*To discriminate against an individual "because of" his race, ancestry, or ethnicity means that the discrimination would not have occurred but-for the individual's race, ancestry, or ethnicity. Twana Ahmed does not have to prove that unlawful discrimination was the only reason that Allied Universal treated him adversely. But Twana Ahmed must prove that Allied Universal's adverse actions would not have occurred in absence of such discrimination.*

*To recover on his claim against Defendant, Twana Ahmed must prove the following by a preponderance of the evidence:*

1. *Defendant discriminated against him because of his race, ancestry, or ethnicity; and*

2. *He suffered some harm as a result of that discrimination.*

If you find that the reasons Allied Universal has given for terminating Twana Ahmed are unworthy of belief, you may, but are not required to, infer that Allied Universal was motivated by Twana Ahmed's race, ancestry, or ethnicity.

Source:     42 U.S.C. § 1981; FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.1 Title VII (42 U.S.C. § 2000e-2)—Discrimination Based on Race, Color, National Origin, Religion, or Sex (Disparate Treatment) (revised ed. June 2020) (modified to fit case); *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333 (2020) (The Section 1981 causation standard is but-for causation.). *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020) (A challenged employment action may have more than one "but for" cause); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, (1987) (discrimination based on ancestry or ethnicity is race discrimination under § 1981); *Fadeyi v. Planned Parenthood Ass'n*, 160 F.3d 1048 (5th Cir. 1998) (finding that "in Texas an at-will employment relationship is a contract for purposes of § 1981).**(Plaintiff Twana Ahmed requests the italicized language for this instruction. It, along with the text in normal font were the instruction submitted to the Court in the parties' previous joint jury charge, and was language that Defendant previously agreed to. ECF Doc. No. 45-4, p. 20. Mr. Ahmed also objects to Defendant's bold language, as it does not conform to the United States Supreme Court Opinion in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024); *Bostock v. Clayton Cty.*, 590 U.S. 644 (2020).**

**Defendants citations: *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1014 (5th Cir. 2023) (*quoting City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S.**

702, 711, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978)). "Disparate treatment for a Title VII claim 'is established whenever a particular outcome would not have happened 'but for' the purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.'" *Abdallah*, 83 F.4[th] at 1014; *See also Hoyt v. Am. Nat'l Ins. Co.*, No. 3:20-CV-545-L, 2021 WL 2823449, at *8 (N.D. Tex. July 6, 2021) (applying the "but for" standard in a § 1981 discrimination claim as well as in the corollary retaliation claim); *Ash v. Serv. King Paint & Body, LLC*, No. 3:23-CV-34-K-BN, 2023 WL 3511568, at *2 (N.D. Tex. May 1, 2023), <u>report and recommendation adopted,</u> No. 3:23-CV-34-K, 2023 WL 3514446 (N.D. Tex. May 17, 2023); *Golatt v. Perot Museum of Nature & Sci.*, 659 F. Supp. 3d 745, 751 (N.D. Tex. 2023) (stating that, "[u]nder the *but-for cause* standard [applicable to § 1981 discrimination claims], "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [his] alleged injury would not have occurred").

(Defendant Allied Universal requested that the bolded language be added to the Charge and objects to the italicized language contained in this Charge. The Charge does not track the Fifth Circuit Pattern Jury Instruction 11.1 and it does not set forth the proper standard for a discrimination claim under Section 1981.)

**Plaintiff's Proposed Instruction No. 18: Discrimination under Title VII and the Texas Labor Code**

Twana Ahmed also has a claim for recovery under Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code. These federal and state laws make it unlawful for an employer to:

(1) discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of the individual's race, color, religion, sex, or national origin; or

(2) limit its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of the individual's race, color, religion, sex, or national origin.

Plaintiff Twana Ahmed asserts that Defendant Allied Universal deprived him of employment opportunities, and discriminated against him with respect to the terms, conditions, and privileges of his employment with Allied Universal because of his race, religion, and national origin. Specifically, Twana Ahmed asserts that because of his race, religion, and national origin, Allied Universal:

(1) repeatedly told him to shave his beard despite his requests to keep it

for religious reasons;

(2) failed to provide him with certain company equipment;

(3) threatened to physically harm him;

(4) subjected him to racial and ethnic slurs;

(5) suspended him; and

(6) terminated him

It is unlawful for an employer to discriminate against an employee because of the employee's race, religion, or national origin. An employer may, however suspend, terminate, or otherwise adversely treat an employee for other reasons, good or bad, fair or unfair.

To prove unlawful discrimination, Twana Ahmed must prove by a preponderance of the evidence that:

(1) Allied Universal deprived Twana Ahmed of employment opportunities or otherwise discriminated against Twana Ahmed with respect to the terms, conditions, or privileges of his employment with Allied Universal; and

(2) Allied Universal took one or more of those actions because of Twana Ahmed's race, religion, or national origin.

Twana Ahmed does not have to prove that unlawful discrimination was the only reason that Allied Universal treated him adversely. But Twana Ahmed must prove that Allied Universal's alleged decisions to repeatedly tell him to shave his beard despite his requests to keep it for religious reasons, failure to provide him with certain company equipment, physically threaten him, subject him to racial slurs and to suspend him, or terminate him would not have occurred in absence of such discrimination.

If you find that the reason Allied Universal has given for its actions is unworthy of belief, you may, but are not required to, infer that Allied Universal was motivated by Twana Ahmed's race, religion, or national origin.

Source: FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.1 Title VII (42 U.S.C. § 2000e-2)— Discrimination Based on Race, Color, National Origin, Religion, or Sex (Disparate Treatment) (revised ed. June 2020) (modified to fit case); Title VII, 42 U.S.C. § 2000e-2; TEX. LAB. CODE § 21.051; *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024); *Bostock v. Clayton Cty.*, 590 U.S. 644 (2020). **(Plaintiff Twana Ahmed requests use of this charge based on cited and recent changes in the law based on Supreme Court precedent which postdates the pattern instructions. Defendant previously agreed to this instruction in the parties' last joint jury charge submitted to the Court. ECF Doc. No. 45-4, pp. 20-21. Defendant Allied Universal objects to the use of this Charge. The Charge does not track the Fifth Circuit Pattern Jury Instruction, and it does not set forth the proper standard for a discrimination claim under Title VII.).**

**Defendant's Proposed Instruction No. 18: Discrimination under Title VII and Chapter 21 of the Texas Labor Code**

Twana Ahmed claims that he would not have been suspended or later terminated "because of" his race, religion and/or national origin. Twana Ahmed has the burden of proving by a preponderance of the evidence that the suspension and termination was the result of intentional discrimination based on his race, religion and/or national origin.

Allied Universal denies Twana Ahmed's claims, and maintains that it suspended and terminated Twana Ahmed's employment for legitimate, non-discriminatory reasons, that is that he violated Allied Universal's Use of Force policy.

It is unlawful for an employer to discriminate against an employee because of the employee's race, religion or national origin. An employer may, however, suspend or terminate an employee for other reasons, good, bad, fair or unfair.

To prove unlawful discrimination, Twana Ahmed must prove by a preponderance of the evidence that:

1. Allied Universal suspended and later terminated Twana Ahmed; and

2. Allied Universal suspended and terminated Twana Ahmed "because of" his race, religion and/or national origin.

**Twana Ahmed does not have to prove that unlawful discrimination was the only reason Allied Universal suspended or terminated him. But Twana Ahmed must prove that Allied Universal's decision to suspend or terminate him would not have occurred in the absence of such discrimination.**

**If you find that the reason Allied Universal has given for terminating Twana Ahmed is unworthy of belief, you may, but are not required to, infer that Allied Universal was motivated by Plaintiff's race, religion and/or national origin.**

Source: FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.1 Title VII (42 U.S.C. § 2000e-2)—Discrimination Based on Race, Color, National Origin, Religion, or Sex (Disparate Treatment) (revised ed. June 2020) (modified to fit case); Title VII, 42 U.S.C. § 2000e-2; TEX. LAB. CODE § 21.051; *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2109 (2000); <u>*NME Hosps., Inc. v. Rennels*</u>, 994 S.W.2d 142, 144 (Tex. 1999) (stating that, for Chapter 21 of the Texas Labor Code, the "Texas Commission on Human Rights Act is modeled after federal civil rights law")

**Plaintiff Twana Ahmed objects to use of this charge because it does not track the current state of the law under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).**

**Plaintiff's Proposed Instruction No. 19: Retaliation**

Twana Ahmed has a claim of retaliation under United States Code, Section 1981, Title VII of the Civil Rights Act of 1964, and Chapter 21 of the Texas Labor Code. Twana Ahmed asserts that Allied Universal, retaliated against him for reporting and opposing discrimination. Allied Universal denies Twana Ahmed's assertions.

It is unlawful for an employer to retaliate against an employee that engages in protected activity. Twana Ahmed states that he engaged in protected activity when he requested to keep his beard because of religious purposes, when he reported discrimination to Allied Universal's Human Resources Representative, and when Mr. Ahmed told Allied Universal's Manager Patrick Freeney that he was discriminating against Mr. Ahmed. Requesting a religious accommodation is a "protected activity." And reporting discrimination or opposing discrimination is considered "protected activity" if the actions were based on Twana Ahmed's good-faith, reasonable belief that Allied Universal discriminated against him because of his race, ancestry, ethnicity, religion, or national origin. To show a good-faith belief, Twana Ahmed must show that he honestly believed that Allied Universal discriminated against him because of his race, ancestry, ethnicity, religion, or national origin. To show a reasonable belief, Twana Ahmed must show that a reasonable person would, under the

circumstances, believe that Allied Universal discriminated against him because of his race, ancestry, ethnicity, religion, or national origin. Twana Ahmed does not have to prove that Allied Universal actually discriminated against him because of his race, ethnicity, religion, or national origin. But he must prove that he had a good-faith, reasonable belief that Allied Universal did so.

To prove unlawful retaliation, Twana Ahmed must prove by a preponderance of the evidence that:

1. He engaged in protected activity; and

2. Allied Universal's decision to fire him was because of his protected activity.

You need not find that the only reason for Allied Universal's decision was Twana Ahmed's protected activity. But you must find that Allied Universal's decision to terminate Twana Ahmed would not have occurred in the absence of his protected activity.

If you disbelieve the reason Allied Universal has given for its decision, you may, but are not required to, infer that Allied Universal fired Twana Ahmed because of his protected activity.

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.5 Title VII—Retaliation (revised ed. June 2020) (modified to fit case); Tex. Lab. Code § 21.055; 42 U.S.C. § 1981; *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, (1987) ("Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory."); *Richardson v. Kwes TV, LLC*, No. MO:23-CV-113-DC-RCG, 2024 U.S. Dist. LEXIS 91750, *11 (W.D. Tex. May 22, 2024); *McNeill* v. *Tyson Fresh Meats*, No. 2:23-CV-041-Z, 2023 U.S. Dist. LEXIS 219122, 2023 WL 8532408, at *5 (Dec. 8, 2023) ("[R]equesting religious accommodation is protected activity, as is opposing an allegedly unlawful denial of a religious accommodation.") (quoting EEOC, *Compliance Manual Section 12: Religious Discrimination* § 12-V.B (2021)); *EEOC v. U.S. Steel Tubular*, No. 4:14-CV-02747, 2016 U.S. Dist. LEXIS 205609, 2016 WL 11795815, at *16 (S.D. Tex. Aug. 4, 2016). **(Plaintiff Twana Ahmed request this charge as it tracks the language of the statute and is supported by the cited authority. Defendant also previously agreed to this instruction in its entirety in the parties previous joint jury charge filed with the**

Court. ECF Doc. No 45-4, p. 22-23. Defendant Allied Universal objects to the use of this Charge. The Charge does not track the Fifth Circuit Pattern Jury Instruction and misstates the standard, which is a "but-for" standard.)

**<u>Defendant's Proposed Instruction No. 19: Retaliation Under Title VII, Section 1981 and Chapter 1 of the Texas Labor Code</u>**

Twana Ahmed claims he was retaliated against by Allied Universal for engaging in activity protected by Title VII and Section 1981. He claims that he complained about discrimination. Twana Ahmed claims that Allied Universal retaliated against him for that complaint when Allied Universal terminated his employment.

Allied Universal denies Twana Ahmed's claim and contends that his termination was not in retaliation for making a complaint. Rather, Allied Universal maintains that Twana Ahmed was terminated because he violated the company's Use of Force policy.

It is unlawful for an employer to retaliate against an employee for engaging in activity protected by Title VII or Section 1981. To prove unlawful retaliation, Twana Ahmed must prove by a preponderance of the evidence that:

1. Twana Ahmed made a report to Allied Universal about illegal discrimination under Title VII and Section 1981 prior to the decision to terminate his employment;

2. Allied Universal thereafter terminated Twana Ahmed; and

3. Allied Universal's decision to terminate Twana Ahmed was on account of his making a complaint to Allied Universal about discrimination under Title VII and Section 1981.

You need not find that the only reason for Allied Universal's decision was Twana Ahmed's alleged complaint to Allied Universal about discrimination under Title VII and Section 1981. But you must find that Allied Universal's decision to terminate Twana Ahmed would not have occurred in the absence of - but for - Twana Ahmed's complaint about discrimination.

If you disbelieve the reason Allied Universal has given for its decision, you may, but are not required to, infer that Allied Universal would not have decided to engage in an adverse employment action against Twana Ahmed but for his complaint.

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.5; *See West v. Honeywell Int'l Inc.*, 558 F. Supp. 3d 369, 379 (S.D. Tex. 2021)(it is plaintiff's burden to show that but for the employer's retaliatory motive, the adverse employment action would not have occurred); *See Sharma v. Amazon Web Servs., Inc.*, No. 3:21-CV-2486-X, 2023 WL 4304758, at *4 (N.D. Tex. June 30, 2023), *appeal dismissed*, No. 23-10869, 2024 WL 667645 (5th Cir. Jan. 3, 2024) ("Courts regularly apply the 'but for' causation standard of Section 1981 discrimination claims to Section 1981 retaliation claims."); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation.") **Plaintiff Twana Ahmed objects to use of this charge because it inaccurately states Mr. Ahmed's position and misstates the law with regard to what is protected activity, and with regard to a worker's good-faith belief that his report constituted a report of illegal discrimination. For example, Mr. Ahmed also maintains that he opposed discrimination. "'Oppose' goes beyond 'active, consistent' behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to 'oppose' slavery before Emancipation, or are said to 'oppose' capital punishment today, without writing public letters, taking to the streets, or**

resisting the government. And we would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 277 (2009).

**Defendant's Proposed Instruction No. 20: Business Judgment**

You should not return a verdict in favor of Twana Ahmed simply because you disagree with Allied Universal's actions or believe them to be too harsh or unreasonable. Under the law, employers are entitled to make employment decisions for a good reason, for a bad reason, for a mistaken reason, or for no reason at all, so long as the decision is not motivated by unlawful discrimination or retaliation. You should not second-guess Allied Universal's decisions or substitute your judgment for the Company's. The fact that you disagree with a particular decision or feel that it was not a good business decision, or even if you believe it was a mistake, is not a legal basis for concluding that Allied Universal's treatment of Twana Ahmed was in violation of the law.

You should keep in mind that not every difference in treatment establishes a discriminatory intent. Only similarly situated employees should be compared to Twana Ahmed. An employee is similarly situated to Twana Ahmed if he or she deals with the same supervisor and is subject to the same standards governing discipline and engaged in conduct identical or nearly identical to the conduct of Twana Ahmed. Not every supervisor will respond the same to violations of rules and different facts may warrant different results; therefore, various decisions by different supervisors may not be relevant.

Source*: Perez v. Texas Dep't of Criminal Justice*, 395 F.3d 206 (5th Cir. 2004) (other employees' misconduct had to be "nearly identical" to be similarly situated); *Morris v. Town of Independence*, 827 F.3d 396, 402; *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc*., 745 F. App'x 209, 212 (5th Cir. 2018), as revised (Aug. 10, 2018)("…the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."); *Reeves v. MCI Telecommunications Corp*., No. CIV. A. H-90-580, 1991 WL 574975, at *9 (S.D. Tex. June 5, 1991)("…the discrimination laws were not intended to be vehicles for judicial review of business judgments.") *McVille v. Inter-Cmty. Healthcare, Inc*., 460 F. App'x 353, 355 (5th Cir. 2012) ("the relevant issue in a Title VII case is whether an employer discriminated against its employee, not whether it made a correct disciplinary determination.") *Udoewa v. Plus4 Credit Union*, 754 F. Supp. 2d 850, 875 (S.D. Tex. 2010), *aff'd,* 457 F. App'x 391 (5th Cir. 2012)("Courts, however, have long abstained from second-guessing the prudence of an employer's business-judgment decision when there is no evidence raising a fact issue of discrimination."). **Twana Ahmed objects to use of this instruction, as it misstates the law, and is not part of the pattern jury instructions. For example, discrimination may be proven a number of ways, including direct evidence of racial or ethnic slurs. "We [the**

Fifth Circuit] have also previously observed that racial epithets undoubtably demonstrate racial animus." *Jones v. Robinson Prop. Group, L.P., 427, F.3d 987, 993 (5th Cir. 2005); see also Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

**<u>Plaintiff's Instruction No. 21: Vice Principals</u>**

Universal Protection Service, LP, which does business as Allied Universal is a company. Companies, of course can act only through human agents.

An individual with authority to employ, direct, and discharge employees of the company is deemed to be a "vice principal" of the company. When a "vice principal" of a company commits some act, that act is deemed to be the act of the company itself. A company may have more than one "vice-principal."

Source:    *Bennett v. Reynolds,* 315 S.W.3d 867, 883-84 (Tex. 2010). (**Mr. Ahmed requests this instruction because it is the state of the law in Texas. Mr. Ahmed also has claims under the Texas Labor Code. Defendant previously agreed to this instruction in our last joint jury charge. ECF Doc. No. 45-4, p. 24. Defendant Allied Universal objects to the use of this Charge. The cited authority involves a Texas state court case involving the sale of wandering cattle.)**

**Plaintiff's Instruction No. 23: Manager Liability [this instruction would only be submitted if the evidence supports a dispute as to who made the decision to terminate Twana Ahmed].**

In this case, there is conflicting evidence about who made the decision to fire Twana Ahmed. There is some evidence that the decision to fire Twana Ahmed was made by a panel of people at Allied Universal. Twana Ahmed may show that, even if there is no evidence of discriminatory or retaliatory bias on the part of Allied Universal's panel, there is evidence that Allied Universal's panel considered biased negative information provided by Allied Universal's Manager Patrick Freeney, in deciding to fire Twana Ahmed. Twana Ahmed is not required to prove that Allied Universal or Allied Universal's panel knew or should have known of Patrick Freeney's discriminatory or retaliatory bias. Twana Ahmed must prove that Allied Universal's Manager, Patrick Freeney, acted because of discrimination or retaliation against Twana Ahmed, and his actions were a proximate cause of Allied Universal's panel decision to fire Mr. Ahmed.

To succeed on this claim, Twana Ahmed must prove each of the following by a preponderance of the evidence:

1. Allied Universal's Manager Patrick Freeney was motivated either by Twana Ahmed's race, national origin, religion, or by his reports of or

opposition to discrimination in delivering a biased use of force report to Allied Universal's panel, representing that Mr. Ahmed refused to provide an incident report, or in recommending that Mr. Ahmed should be fired;

2. Allied's Manager Patrick Freeney intended that his actions would cause Twana Ahmed to be fired; and

3. Allied Universal's panel would not have decided to fire Twana Ahmed but for—in the absence of—the information that Allied's Manager Patrick Freeney provided about Twana Ahmed.

Source: Fifth Circuit District Judges Association, Pattern Jury Instructions (Civil Cases), § 11.7 Cat's Paw Theory of Employer Liability (revised ed. June 2020). **(Defendant Allied Universal objects to the use of this Charge as it contains factual argument and is not appropriate for a jury instruction.)**

**Defendant's Instruction No. 24: Consider Damages Only If Necessary**

If Twana Ahmed has proved his claims against Allied Universal by a preponderance of the evidence, you must determine the damages to which Twana Ahmed is entitled. You should not interpret the fact that I am giving instructions about Twana Ahmed's damages as an indication in any way that I believe that Twana Ahmed should, or should not, win this case.

It is your task first to decide whether Allied Universal is liable. I am instructing you on damages only so that you will have guidance in the event you decide that Allied Universal is liable and that Twana Ahmed is entitled to recover money from Allied Universal.

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 15.1. **Plaintiff objects to this instruction because this is addressed in a different instruction, which tracks the language in the pattern instructions that applies specifically to discrimination** cases--§11.14.

Instruction No. 25: Damages

If you found that Allied Universal discriminated against Twana Ahmed because of his race, ancestry, ethnicity, religion, or national origin, or retaliated against Twana Ahmed because of his protected activity, then you must determine whether Allied Universal has caused Twana Ahmed damages and, if so, you must determine the amount of those damages. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Twana Ahmed has proved liability.

Twana Ahmed must prove his damages by a preponderance of the evidence. Your verdict must be based on evidence and not on speculation or guesswork. On the other hand, Twana Ahmed need not prove the amount of his losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

Should you find for Twana Ahmed, the Court will determine past wages and benefits lost as a result of Allied Universal's wrongful action, and you should not address lost pay. You should consider the following elements of actual damages, and no others: (1) the amount of other damages sustained by Twana Ahmed, such as pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, emotional harm, **harm to name, harm to reputation,** and other noneconomic losses.

There is no exact standard for determining actual damages. You are to determine an amount that will fairly compensate Twana Ahmed for the harm he has sustained. Do not include as actual damages interest on wages or benefits.

**You may assess punitive damages if Twana Ahmed proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory act or practice was acting in a managerial capacity; (2) he or she engaged in the discriminatory act or practice while acting in the scope of his or her employment; and (3) he or she acted with malice or reckless indifference to Twana Ahmed's state and federally protected right to be free from discrimination.**

**If Twana Ahmed has proved these facts, then you may assess punitive damages, unless Allied Universal proves by a preponderance of the evidence that the conduct or act was contrary to its good-faith efforts to prevent discrimination in the workplace.**

**In determining whether an individual was a supervisor or a manager for Allied Universal, you should consider the type of authority the individual had over Twana Ahmed and the type of authority for employment decisions Allied Universal authorized the individual to make.**

An action is in "reckless indifference" to Twana Ahmed's state and federally protected rights if it was taken in the face of a perceived risk that the conduct would violate state or federal law. Plaintiff Twana Ahmed is not required to show egregious or outrageous discrimination to recover punitive damages. Proof that Allied Universal engaged in intentional discrimination, however, is not enough in itself to justify an assessment of punitive damages.

In determining whether Allied Universal made good-faith efforts to prevent discrimination in the workplace, you may consider whether it adopted antidiscrimination policies, whether it educated its employees on the federal antidiscrimination laws, how it responded to Twana Ahmed's complaint of discrimination, and how it responded to other complaints of discrimination.

If you find that Allied Universal acted with malice or reckless indifference to Twana Ahmed's rights and did not make a good-faith effort to comply with the law, then in addition to any other damages you find Twana Ahmed is entitled to receive, you may, but are not required to, assess an additional amount as punitive damages for the purposes of punishing Allied Universal for engaging in such wrongful conduct and deterring Allied Universal and others from engaging in such conduct in the future. You should presume that Twana

Ahmed has been made whole for his injuries by any actual damages you have determined.

If you decide to assess punitive damages against a defendant, you should consider the following in deciding the amount:

1. How reprehensible Allied Universal's conduct was. You may consider whether the harm Twana Ahmed suffered was physical or economic or both; whether there was violence, intentional malice, or reckless disregard for human health or safety; whether Allied Universal's conduct that harmed Twana Ahmed also posed a risk of harm to others; whether there was any repetition of the wrongful conduct or there was past conduct of the same sort that harmed Twana Ahmed.

2. How much harm Allied Universal's wrongful conduct caused Twana Ahmed and could cause him in the future.

3. What amount of punitive damages, in addition to the other damages already assessed, is needed, considering Allied Universal's financial condition, to punish Allied Universal for its conduct toward Twana Ahmed and to deter Allied Universal and others from similar wrongful conduct in the future.

**The amount of any punitive damages assessed should bear a reasonable relationship to the harm Allied Universal caused Twana Ahmed.**

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.14 Title VII and ADA Damages (revised ed. June 2020); *Haliburton v. Admin. Review Bd.*., 771 F.3d 254, 266 (5th Cir. 2014) (including emotional harm and reputational harm)**(Defendant Allied Universal objects to the bolded language in this Charge. Plaintiff did not plead harm to name or harm to reputation as damages. Defendant also objects that the instruction on damages should not include a reference to punitive damages. Defendant will be filing a motion to bifurcate the trial with a separate punitive damages phase. At odds with Defendant's motion for bifurcation is the notion that this instruction mentions both actual damages and punitive damages in the same instruction. Defendant would agree to the bolded punitive damages charge above if contained in a separate standalone instruction presented at any punitive stage of trial.)**

**Defendant's Instruction No. 26: Damages**

Allied Universal claims that Twana Ahmed failed to mitigate his damages. Twana Ahmed has a duty under the law to mitigate his damages, that is, to exercise reasonable diligence under the circumstances to minimize his damages.

To succeed on this defense, Allied Universal must prove, by a preponderance of the evidence: (a) that there was substantially equivalent employment available; (b) Twana Ahmed failed to use reasonable diligence in seeking those positions; and (c) the amount by which Twana Ahmed's damages were increased by his failure to take such reasonable actions.

"Substantially equivalent employment" in this context means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job he lost. Twana Ahmed does not have to accept a job that is dissimilar to the one he lost, one that would be a demotion, or one that would be demeaning. The reasonableness of Twana Ahmed's diligence should be evaluated in light of his individual characteristics and the job market.

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.14. **Plaintiff Twana Ahmed objects to use of this instruction. Allied Universal did not plead a defense of failure to mitigate and thus waived it. Failure to mitigate damages is an affirmative defense upon**

which Allied Universal bears the burden of proof. *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 738 (S.D. Tex. 2014) (citing *Ellerbrook v. Lubbock, Texas*, 465 Fed. App'x 324, 337 (5th Cir. 2012)). Allied Universal did not provide any information to support this defense during the discovery period or through today as of 10:35pm. Allied disagrees with the objection as the defense was fully developed during discovery and through document production from Plaintiff.

**Plaintiff's Proposed Jury Questions/Verdict Form**

Question No. 1

Did Defendant Allied Universal, either itself or through a vice-principal, deprive Twana Ahmed of employment opportunities or otherwise discriminate against Twana Ahmed because of his race, ancestry, or ethnicity?

Answer "Yes" or "No."

_____

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.1 Title VII—Discrimination (revised ed. June 2020) (modified to fit case); 42 U.S.C. § 1981;Title VII, 42 U.S.C. § 2000e-2; TEX. LAB. CODE § 21.051; *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024); *Bostock v. Clayton Cty.*, 590 U.S. 644 (2020).

Question No. 2

Did Defendant Allied Universal, either itself or through a vice-principal, deprive Twana Ahmed of employment opportunities or otherwise discriminate against Twana Ahmed because of his religion or national origin?

Answer "Yes" or "No."

_____

Source:    Fifth Circuit District Judges Association, Pattern Jury Instructions (Civil Cases), § 11.1 Title VII—Discrimination (revised ed. June 2020) (modified to fit case);Title VII, 42 U.S.C. § 2000e-2; Tex. Lab. Code § 21.051; *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024); *Bostock v. Clayton Cty.*, 590 U.S. 644 (2020).

Question No. 3

Did Defendant Allied Universal, either itself or through a vice-principal, retaliate against Twana Ahmed because of his reports of or opposition to discrimination based on his race, ancestry, or ethnicity?

Answer "Yes" or "No."

_____

Source:     42 U.S.C. § 1981; Fifth Circuit District Judges Association, Pattern Jury Instructions (Civil Cases), § 11.5 Title VII—Retaliation (revised ed. June 2020) (modified to fit case).

Question No. 4

Did Defendant Allied Universal, either itself or through a vice-principal, retaliate against Twana Ahmed because of his request for a religious accommodation, or because of his reports of discrimination based on his religion or national origin?

Answer "Yes" or "No."

_____

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.5 Title VII—Retaliation (revised ed. June 2020) (modified to fit case); TEX. LAB. CODE § 21.055.

Question No. 5a

Has Twana Ahmed proved that Allied's Manager Patrick Freeney delivered a biased use of force report to Allied Universal's panel, represented to the panel that Mr. Ahmed refused to provide an incident report, or recommended to the panel that Mr. Ahmed should be fired because of Twana Ahmed's race, ancestry, or ethnicity, or because Twana Ahmed reported or opposed discrimination based on his race, ancestry, or ethnicity?

Answer "Yes" or "No."

_____

Question 5b

Has Twana Ahmed proved that Allied's Manager Patrick Freeney delivered a biased use of force report to Allied Universal's panel, represented to the panel that Mr. Ahmed refused to provide an incident report, or recommended to the panel that Mr. Ahmed should be fired because of Twana Ahmed's religion or national origin, or because Twana Ahmed reported or opposed discrimination based on his religion or national origin?

Answer "Yes" or "No."

_____

If you answered "Yes" to EITHER Question 5a or 5b, then answer Question No. 5c.

<u>Question 5c</u>

Has Twana Ahmed proved that Allied's Manager Patrick Freeney acted with the

intent that Twana Ahmed would be fired as a result of Patrick Freeney's actions?

     Answer "Yes" or "No."

     _____

If you answered "Yes" to Question 5c, then answer Question No. 5d.

Question 5d

Has Twana Ahmed proved that Allied Universal's panel would not have decided to fire him without the information Patrick Freeney provided to the panel about Twana Ahmed?

Answer "Yes" or "No."

_____

If you have answered "yes" to ANY Question numbered 1 through 4, *or* if you have answered "yes" to Questions 5a *or* 5b, AND "yes" to Questions 5c and 5d, please answer Question No. 6. Otherwise, do not answer any more questions.

Source:  FIFTH  CIRCUIT  DISTRICT  JUDGES  ASSOCIATION,  PATTERN  JURY

INSTRUCTIONS (CIVIL CASES), § 11.7 Pattern Jury Questions, Title VII—Cat's Paw

Theory of Employer Liability (revised ed. June 2020).

Question No. 6

What sum of money, if paid now in cash, would fairly and reasonably compensate Twana Ahmed for the damages, if any, you have found Allied Universal caused Twana Ahmed?

Answer in dollars and cents for the following items and none other:

1. Past pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, emotional harm, harm to name, harm to reputation, and other noneconomic losses.

    $_____

2. Future pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, emotional harm, harm to name, harm to reputation, and other noneconomic losses.

    $_____

Source:    FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.14 Title VII and ADA Damages (revised ed. June 2020); *Haliburton v. Admin. Review Bd..*, 771 F.3d 254, 266 (5th Cir. 2014) (including emotional harm and reputational harm).

<u>Question No. 7</u>

Do you find that punitive damages should be assessed against Allied Universal?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 6, then answer Question No. 7.

Source: Fifth Circuit District Judges Association, Pattern Jury Instructions (Civil Cases), § 11.14 Title VII and ADA Damages (revised ed. June 2020)

<u>Question No. 8</u>

What sum of money should be assessed against Allied Universal as punitive damages?

Answer in dollars and cents:

$_____

Source:     FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 11.14 Title VII and ADA Damages (revised ed. June 2020).

**Defendant's Proposed Jury Questions/Verdict Form**

We, the jury in the above-captioned matter, unanimously answer the following questions:

## QUESTION NO. 1: TERMINATION

Has Twana Ahmed proven by a preponderance of the evidence that he was terminated from employment because of his religion or national origin?

_____ YES _____ NO

## QUESTION NO. 2: TERMINATION

Has Twana Ahmed proven by a preponderance of the evidence that he would not have been terminated from employment in the absence of - in other words, but for - his race, ancestry, or ethnicity?

_____ YES _____ NO

## QUESTION NO. 3: RETALIATION

Do you find that Twana Ahmed has proven by a preponderance of the evidence that he would not have been terminated from employment but for his complaint of discrimination?

_____ YES _____ NO

**If you answered "No" to Questions No. 1, No. 2 and No. 3, then your deliberations are complete and you should sign and date the verdict form on the last page.**

**If you answered "Yes" to Question No. 1, No. 2 or No. 3, then answer Question Number 4.**

## QUESTION NO. 4: DAMAGES

What sum of money, if paid now in cash, would fairly and reasonably compensate Twana Ahmed for the damages, if any, you have found Allied Universal caused Twana Ahmed?

Answer in dollars and cents for the following items and none other:

1. Past pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

**$_____**

2. Future pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

**$_____**

**Please proceed to Question No. 5.**

## QUESTION NO. 5

Do you find that Twana Ahmed failed to reduce his damages through the exercise of reasonable diligence in seeking, obtaining, and maintaining substantial equivalent employment from his last day worked with Allied Universal of April 4, 2022 to the present?

_____ YES _____ NO

**If you answered "Yes" to Question No. 5, then answer Question No. 6.**

## QUESTION NO. 6

How much would Twana Ahmed have earned had he exercised reasonable diligence under the circumstances to minimize his damages?

Answer in dollars and cents, if any.

**$_____**

## QUESTION NO. 7

Do you find by clear and convincing evidence that Allied Universal's conduct toward Twana Ahmed was with malice and reckless indifference and that punitive damages should be assessed against Allied Universal?

_____ YES _____ NO

**If you answered "No" to Question No. 7, then your deliberations end here.**

**If you answered "Yes" to Question No. 7, then answer Question No. 8.**

**<u>QUESTION NO. 8</u>**

What sum of money should be assessed against Allied Universal  as punitive damages?

Answer in dollars and cents, if any.

**$_____**

**Plaintiff Twana Ahmed objects to Defendant's proposed questions because they do not track the pattern questions, to not utilize the correct standard under that law, and because some of the questions deal with an affirmative defense Defendant never plead and thus waived. Plaintiff attaches his own questions herein.**

Instruction No. 28 Duty to Deliberate

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, your presiding juror should write the question and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

Source: FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), § 3.7 Duty to Deliberate; Notes (revised ed. June 2020).

**<u>Plaintiff's Alternative Question: Motivating Factor Causation</u>**

Twana Ahmed's attorneys do not presently believe this question will be necessary but would like to preserve the right to submit this question should we determine during trial that it is appropriate. If the question is submitted some of the preconditioning question language would need to change.

If you answered "No" both Question 1 AND "No" to Question 2, then answer this Question:

Was Twana Ahmed's race, ancestry, religion, or national origin a motivating factor **in any of Allied Universal's decisions listed below?**

> **Answer "Yes" or "No" for each:**
>
> **(1) repeatedly telling him to shave his beard despite requests to keep it for religious reasons:** _____
>
> **(2) depriving him of company equipment:** _____
>
> **(3) threatening to physically harm him:** _____
>
> **(4) subjecting him to racial or ethnic slurs:** _____

**(5) suspending him:** _____

**(6) terminating him:** _____

Source:     Fifth Circuit District Judges Association, Pattern Jury Instructions (Civil Cases), § 11.1 Title VII—Discrimination a § 2(m) case (revised ed. June 2020) (modified to fit case);Title VII, 42 U.S.C. § 2000e-2; Tex. Lab. Code § 21.051; *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) *Bostock v. Clayton Cty.*, 590 U.S. 644 (2020) **(Plaintiff Twana Ahmed requests the bold language; Defendant Allied objects and is submitting an alternative Verdict Form).**

**Defendant's Mixed Motive Affirmative Defense Instruction**

**If you find that Twana Ahmed's race, ancestry, religion, or national origin was a motivating factor in the Allied Universal's decision to suspend or terminate him, even though other considerations were factors in the decision, then you must determine whether Allied Universal  proved by a preponderance of the evidence that it would have made the same decision even if it had not considered Twana Ahmed's race, ancestry, religion, or national origin.**

Source: Fifth Circuit Jury Charge 11.13 **(Allied Universal requests this instruction. Twana Ahmed opposes this instruction as it is an affirmative defense that was not properly raised).**

**<u>Plaintiff's Instruction on Texas Penal Code Public Intoxication Offense</u>**

**You are instructed that the Texas Penal Code defines the offense of Public Intoxication as follows: "A person commits an offense if the person appears in a public space intoxicated to the degree that the person may endanger the person or another."**

Source: Tex. Penal Code § 49.02 **(Plaintiff Twana Ahmed requests this instruction, Defendant Allied Universal opposes.).**