## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TWANA AHMED, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:23-cv-02823 |
| | : | |
| v. | : | Hon. Judge David Hittner |
| | : | |
| UNIVERSAL PROTECTION SERVICE, | : | |
| LP d/b/a ALLIED UNIVERSAL | : | |
| SECURITY SERVICES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## DEFENDANT UNIVERSAL PROTECTION SERVICE, LP'S
## PRETRIAL MEMORANDUM OF LAW

Dated: October 14, 2025

Respectfully submitted,

**MARTENSON, HASBROUCK & SIMON LLP**

/s/ Jessica E. Chang
Jessica E. Chang, attorney-in-charge
(SDTX No. 3905098, IL6319080)
Nathan A. Shine (SDTX No. 3874604, IL6316753)
David C. Hamilton (Admitted PHV)
500 Davis Street, Suite 1010
Evanston, Illinois 60201
(224) 350-3127
jchang@martensonlaw.com
nshine@martensonlaw.com
dhamilton@martensonlaw.com

-and-

Marty N. Martenson (Admitted PHV)
2573 Apple Valley Road NE
Atlanta, Georgia 30319
(404) 909-8100
mnmartenson@martensonlaw.com

*Counsel for Defendant Universal Protection*
*Service, LP d/b/a Allied Universal Security*
*Services*

# Table of Contents

I.      INTRODUCTION. ...................................................................................1

II.     MOTION FOR SANCTIONS. ...............................................................3

III.    ISSUES PRESENTED. ...........................................................................5

      A.      Allied Universal Terminated Plaintiff Because He Violated Its Use of Force Policy And Not Because Of His Race, Ancestry, Religion, Or National Origin. ...............................................................................5

            i.      *Plaintiff cannot make a prima facie showing of race, ancestry, religion, or national origin discrimination.* ...............................7

            ii.     *Plaintiff Cannot Show That Allied Universal's Legitimate, Non-Discriminatory Explanation For His Termination Was Pretextual.* ...............................................................................8

            iii.    *Allied Universal Adamantly Denies That Plaintiff Was Subjected To Slurs Or Other Discriminatory Conduct.* ..............8

      B.      Allied Universal Did Not Retaliate Against Plaintiff, And Plaintiff Cannot Establish That Allied Universal's Legitimate, Nondiscriminatory Reason For His Termination Is Pretext for Retaliation. ...........................................................................................11

IV.     MITIGATION OF DAMAGES. ...........................................................14

      A.      Plaintiff Has Not Made Reasonably Diligent Efforts To Obtain Substantially Equivalent Employment. ...........................................14

V.      PUNITIVE DAMAGES. .......................................................................16

      A.      Plaintiff is Not Entitled to Punitive Damages. ...............................16

VI.     ALTERNATIVE THEORY – MIXED-MOTIVE. ..................................18

      A.      Allied Universal's Legitimate Nondiscriminatory Basis For Terminating Plaintiff, A Violation of Its Use of Force Policy, Standing Alone, Would Have Produced the Same Result. ............18

VII.    CONCLUSION. ....................................................................................19

Defendant Universal Protection Service, LP d/b/a Allied Universal Security Services (the "Defendant," the "Company," and/or "Allied Universal") submits this pretrial memorandum of law consistent with the Court's procedures concerning pretrial materials, and shows as follows:

## I.     INTRODUCTION.[1]

Plaintiff Twana Ahmed filed this lawsuit against Allied Universal alleging he was subjected to: (i) race and ancestry discrimination in violation of the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001 *et seq.* ("TCHRA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"); (ii) national origin and religious discrimination in violation of the TCHRA and Title VII; and (iii) retaliation in violation of the TCHRA, Title VII, and Section 1981.

Plaintiff's claims arise from his four-month period of employment as an armed Security Professional with Allied Universal. During this brief period of employment, Plaintiff alleges that he was pressured to shave his beard but that other Security Professionals outside of his protected class were not; that he was provided equipment that was substandard or did not work; that his supervisor directed racial slurs and

---

[1] On April 18, 2025, this Court denied Allied Universal's Motion for Summary Judgment (ECF No. 44.) For brevity and in order to limit the burden on the Court, Allied Universal does not restate all relevant facts as detailed in its Motion for Summary Judgment (ECF No. 27) and Reply in Support of its Motion for Summary Judgment (ECF No. 40), both incorporated here by reference as if fully set out and restated herein.

threats against him; and that he was terminated under false pretenses in retaliation for complaining about discrimination.

As demonstrated below, Plaintiff's claims are without merit. To that end, photographs from the period of Plaintiff's employment consistently show him with a beard. Further, there is simply no evidence to support Plaintiff's claim that he was provided substandard equipment. There is also no corroboration for any of Plaintiff's allegations regarding slurs and threats because he and his supervisor were conveniently the only people ever around when the alleged statements were made.

The only adverse employment action suffered by Plaintiff was his termination. However, Plaintiff's termination was warranted on the grounds that he violated the Company's Use of Force policy on April 4, 2022 when he aggressively detained and handcuffed a shoplifter without any justification or attempt to deescalate the situation. The decision to terminate Plaintiff's employment was made by a panel of Company personnel after they reviewed the facts and determined that Plaintiff had used excessive force in violation of the Company's Use of Force policy.

Moreover, multiple videos of the incident have now emerged that clearly and unmistakably show that Plaintiff violated Company policy, and also perjured himself repeatedly under oath when recounting the incident that led to his termination. Finally, with regard to Plaintiff's claim of retaliation, it is undisputed that the

decision to terminate Plaintiff's employment was made prior to him engaging in any protected activity.

## II.    <u>MOTION FOR SANCTIONS.</u>

On October 2, 2025, Allied Universal refiled its Renewed Motion for Sanctions seeking sanctions for Plaintiff's perjurious conduct. Throughout this case, Plaintiff has provided sworn testimony regarding the April 4, 2022 incident that led to his termination, including in his EEOC Charge of Discrimination, his deposition, his sworn declaration in opposition to Allied Universal's Motion for Summary Judgment, and in his written discovery responses that he verified under penalty of perjury. On August 4, 2025, three surveillance videos of the April 4, 2022 incident were discovered. The videos confirm that Plaintiff repeatedly perjured himself when describing his conduct and the actions of the shoplifter he detained and handcuffed. Plaintiff's sworn testimony was a grievous and deliberate fraud on this Court that must be met with the severest sanction.

A district court possesses the inherent power to dismiss claims with prejudice to protect the integrity of the judicial process. *See Ben E. Keith Co. v. Dining Alliance*, 80 F.4th 695, 702 (5th Cir. 2023); *Wagner v. Boh Bros. Const. Co., LLC*, 2012 WL 3637392, at *8 (E.D. La. Aug. 22, 2012) (upon proof that a fraud has been perpetrated upon the court, a court has the inherent power to impose sanctions, up to and including dismissal of the case). The proper administration of justice depends

3

on people, particularly litigants, testifying truthfully under oath. *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011). Perjury is a "serious offense that constitutes a severe affront to the courts and thwarts the administration of justice." *Id.* at 80. The Fifth Circuit Court of Appeals has held that dismissal with prejudice is an appropriate sanction for perjury, emphasizing the need for deterrence and preserving institutional integrity. *Id.* at 77-79. In fact, perjury is so deleterious to the administration of the courts and justice that "[f]raud on the court uniquely calls for dismissal after its very first occurrence." *See Farris v. Ben E. Keith Co.*, No. 6:17-CV-301, 2017 WL 6887055, at *5 (E.D. Tex. Dec. 14, 2017), *report and recommendation adopted*, No. 6:17-CV-301, 2018 WL 354762 (E.D. Tex. Jan. 10, 2018).

To support dismissal as a sanction for a party's perjury, the Court must find that the litigant acted in bad faith or willfully abused the judicial process. *Ben E. Keith Co.*, 80 F.4th at 702; Brown, 664 F.3d at 76-80 (affirming dismissal in response to plaintiff's perjury). In addition, the Court must find that lesser sanctions would not serve the best interests of justice. *Id.* The sanction of dismissal is more appropriate where, as here, the objectionable conduct is committed by the client rather than the client's attorney. *Brown*, 664 F.3d at 77.

Here, dismissal is the only appropriate sanction in this case given Plaintiff's blatant and repeated false statements. Any other sanction would fail to address the

4

seriousness of Plaintiff's misconduct and would have the effect of awarding Plaintiff's overt dishonesty. To that end, a monetary sanction would be largely symbolic, given the difficulties and additional expense to Allied Univeral in attempting to collect. *See Wagner v. Boh Bros. Const. Co., LLC*, 2012 WL 3637392, at \*10 (E.D. La. Aug. 22, 2012) (finding that a monetary sanction in response to plaintiff's perjury would be a "vain and useless act."). Further, any sanction other than dismissal with prejudice would fail to deter such conduct in the future. *Brown*, 664 F.3d at 79 ("[W]hen perjury is discovered, the penalty needs to be severe enough to deter such conduct.").

## III.    ISSUES PRESENTED.

### A.    Allied Universal Terminated Plaintiff Because He Violated Its Use of Force Policy And Not Because Of His Race, Ancestry, Religion, Or National Origin.

Discrimination claims asserted under Title VII, the TCHRA and Section 1981 are analyzed pursuant to the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hoang v. Microsemi Corp.*, No. 22-20004, 2023 WL 2346244, at \*2 (5th Cir. Mar. 3, 2023) (per curiam); *see also, Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (THCRA); *Body by Cook, Inc. v. State Farm Mut. Auto Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (§ 1981).

Under this framework, Plaintiff must first establish a *prima facie* claim by showing by a preponderance of the evidence that he: (i) is a member of a protected group; (ii) was qualified; (iii) was discharged or otherwise suffered an adverse employment action; and (iv) he was replaced by, or was treated less favorably than, someone outside of his protected group. *Septimus v. University of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). In a work rule violation case, such as this, Plaintiff "may establish *a prima facie* case by showing either that he did not violate the rule or that, if he did, [employees outside the protected class] who engaged in similar acts were not punished similarly." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (internal quotation marks and citation omitted).

If Plaintiff makes a *prima facie* showing, the burden shifts to Allied Universal to offer a legitimate, nondiscriminatory basis for its action(s). *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2109 (2000). After Allied Universal articulates such a basis, the burden shifts back to Plaintiff to demonstrate the stated reason is merely a pretext for discrimination. *Id*. (a plaintiff must present "sufficient evidence to find that the employer's asserted justification is false"). This is a high burden, and one that Plaintiff cannot satisfy by conclusory opinion or subjective belief. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (a "plaintiff's own good faith belief that his [protected category] motivated his employer's action is of little value"). Thus, Plaintiff must show that his protected status was a

determinative factor in Allied Universal's decision to terminate his employment. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996). Although intermediary evidentiary burdens shift under this framework, the ultimate burden of proving that discrimination occurred remains, always, with the Plaintiff. *Reeves*, 120 S. Ct. at 2106.

i.    *Plaintiff cannot make a prima facie showing of race, ancestry, religion, or national origin discrimination.*

Plaintiff cannot establish a prima facie claim for discrimination because he cannot show that he was qualified, that his actions did not violate Allied Universal's Use of Force policy and because he cannot identify any Allied Universal employees outside of his protected class that were treated more leniently.

The recently discovered videos demonstrate unequivocally that Plaintiff violated Allied Universal's Use of Force policy when he forcefully apprehended and handcuffed an alleged shoplifter despite the lack of any threatening behavior by the shoplifter. Plaintiff also failed to make any effort to deescalate the situation prior to handcuffing the individual. Plaintiff's actions were a clear violation of the Company's Use of Force policy, which prohibits using physical force unless necessary to protect the employee or another individual from imminent bodily harm and confirm that he was not qualified to continue in the role of Security Professional.

Plaintiff also cannot identify any Allied Universal employees outside of his protected class who were treated more leniently after violating the Company's Use

7

of Force policy. Accordingly, Plaintiff cannot establish a prima facie claim for discrimination.

       ii.    *Plaintiff Cannot Show That Allied Universal's Legitimate, Non-Discriminatory Explanation For His Termination Was Pretextual.*

Plaintiff's interaction with the alleged shoplifter on April 4, 2022 was captured by multiple security cameras at the store, which show Plaintiff acting aggressively and unjustifiably considering the lack of any threatening behavior by the alleged shoplifter. As a result, it is beyond question that Plaintiff's conduct violated Company policy. It is also beyond question that the Company's decision to terminate Plaintiff for his conduct was consistent with Company policy and prior disciplinary decisions by the Company. Indeed, the decision to terminate Plaintiff was made by a panel of Allied Universal managers, some of whom had never met Plaintiff and had no information regarding his race, ancestry, national origin, or religion. Under these circumstances, Plaintiff cannot establish that Allied Universal's explanation for its actions was pretext for unlawful discrimination.

       iii.    *Allied Universal Adamantly Denies That Plaintiff Was Subjected To Slurs Or Other Discriminatory Conduct.*

In an effort to support his claim that he was discriminatorily terminated, Plaintiff alleges that he was subject to various forms of discriminatory behavior, including: (1) that he was allegedly  pressured to shave his beard but that other Security Professionals outside of his protected class were not; (2) that he was

provided equipment that was substandard or did not work; and (3) that his supervisor directed racial slurs and threats against him.  Allied Universal adamantly denies that any of these alleged incidents occurred.

To that end, Allied Universal intends to present evidence that Plaintiff maintained a beard throughout his employment with the Company and that his allegation that his managers demanded that he shave are false.  Moreover, Plaintiff's own claims regarding his beard Plaintiff remain unsupported by his own testimony. (*See* ECF No. 27-6, pp. 83:14-19; 94:19-25; 94:16-17) (Plaintiff describing how he trimmed his beard rather than shaving it clean). Furthermore, Plaintiff identified that his religious practice only required that he maintain a beard (something Allied permitted him to do), without a specific length requirement. (*See* ECF No. 27-6, pp. 75:14-16; 76:4-17.) Finally, Plaintiff has not shown (nor could he) that he suffered an adverse employment action due to his beard. Notwithstanding his allegation that he was required to shave or otherwise trim his beard to avoid threatened discipline or termination, it is undisputed that Allied Universal took no action against him because of his beard.  *See Thomas v. Link Staffing*, 2019 WL 497617, at *4 (S.D. Tex. Jan. 8, 2019) (holding that, to establish prima face claim for religious discrimination, plaintiff must show that they were discharged or disciplined for failing to comply with employment requirement that conflicted with religious beliefs).

Allied Universal also intends to present evidence that all of the equipment provided to Plaintiff was in proper working order and that any issues with the equipment were due to Plaintiff's improper handling.

Finally, Patrick Freeney will testify that he never made any threats or slurs towards Plaintiff and never harbored any ill-will towards Plaintiff. Significantly, there are no witnesses, other than Plaintiff, who allegedly heard Patrick Freeney or anyone else make discriminatory comments to Plaintiff.

Even if Plaintiff could show that Freeney made these comments to him (which he cannot), the mere utterance of a racial epithet is not sufficient evidence to demonstrate indicia of discrimination. *Boyd v. State Farm Ins. Companies*, 158 F.3d 326, 329 (5th Cir. 1998), cert. denied, 526 U.S. 1051 (1999) (use of the term "Buckwheat" and "Porch Monkey" were stray remarks from which no inference of racial discrimination arose). Absent a causal link between the alleged statements and the conduct complained (*i.e.*, Plaintiff's termination), such epithets are merely stray remarks that cannot support the finding of discrimination. *Id*. at 330. Similarly, alleged verbal threats to terminate, without more, do not constitute an ultimate employment decision. *See Hernandez v. Crawford Bldg. Material Co*., 321 F.3d 528, 532 n.2 (5th Cir.2003) (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.1997) (oral threats to fire an employee did not amount to an ultimate employment decision), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53 (2006)). An unrealized threat is simply a threat as no tangible action has been taken. *Id.* Any alleged threats, which are denied, are not ultimate employment decisions nor do they rise above a mere tangential effect on a possible future ultimate employment decision.

**B.** **Allied Universal Did Not Retaliate Against Plaintiff, And Plaintiff Cannot Establish That Allied Universal's Legitimate, Nondiscriminatory Reason For His Termination Is Pretext for Retaliation.**

Plaintiff has the ultimate burden of proving that Allied Universal's action(s) were a pretext for retaliation. *Septimus*, 399 F.3d at 607; *see McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds*, *Hamilton v. Dallas Cnty*, 79 F.4th 494 (5th Cir. 2023) (en banc) (applying the *McDonnell Douglas* burden shifting framework where a plaintiff relies on circumstantial evidence). To recover for retaliation under the THCRA, Title VII, or Section 1981, Plaintiff must establish that: (i) he engaged in protected activity; (ii) he suffered an adverse employment action; and (iii) a causal connection exists between the protected activity and the adverse employment action. *Zamora v. City of Houston*, 798 F.3d 326, 332 (5th Cir. 2015). If Plaintiff can make this showing (which he cannot), the burden shifts to Allied Universal to state a legitimate, nondiscriminatory, nonretaliatory reason for its decision. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). When Allied Universal provides a legitimate, nondiscriminatory and nonretaliatory explanation, the burden shifts back

11

to Plaintiff to show "but for" his protected activity, the adverse employment action would not have occurred. *Id*. Plaintiff's subjective belief that there is a causal connection is insufficient. *Weems v. Dall. Indep. Sch. Dist*., 260 F. Supp. 3d 719, 736 (N.D. Tex. 2017) (Lindsay, J.).

Plaintiff's retaliation claim fails for the simple reason that he never engaged in any protected activity until *AFTER* the decision to terminate his employment had already been made. It is axiomatic that Allied Universal could not have terminated Plaintiff in retaliation for any protected activity that occurred after the decision to terminate had been made.

Plaintiff's allegation that he complained prior to the decision to terminate his employment is wholly unsupported by the record.  Allied Universal intends to offer evidence at trial that any complaints made by Plaintiff prior to the decision to terminate his employment did not concern discrimination and therefore do not qualify as protected activity.

As discussed more fully above, even if Plaintiff could establish a prima facie claim for retaliation, his retaliation claim would still fail because he cannot show that Allied Universal's legitimate, non-discriminatory and non-retaliatory explanation for his its actions – that it terminated Plaintiff for violating the Company's Use of Force policy – is pretextual.  While Plaintiff may disagree that his actions warranted termination, the jury should not be permitted to  second-guess

Allied Universal's legitimate business decision. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). Our "anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *Id.* "Even if evidence suggests that a decision was wrong" (and there is none here), courts and juries in the Fifth Circuit "will not substitute [their] judgment" for the employer's." *Scott v. Univ. of Miss.*, 148 F.3d 493, 509–10 (5th Cir. 1998).

Allied Universal has consistently maintained that Plaintiff would have been terminated regardless of any prior complaint because his conduct on April 4, 2022 violated the Company's Use of Force policy and because Allied Universal's disciplinary policy mandated termination, even for a first offense. (*See* ECF No. 27-1, p. 89:5-12.) Plaintiff's subjective belief that he did not violate the Company's Use of Force policy is irrelevant. An independent review panel convened to assess Plaintiff's conduct and determined, as a group, that his use of force was unjustified. (ECF No. 27-2, ¶¶7-9; 27-10, ¶¶6-8.).

When a plaintiff is terminated for failing to comply with a legitimate work rule, the issue is "whether the employer reasonably and in good faith believed the violation occurred." *Bardwell v. Global Santa Fe Drilling Co.*, No. H-06-0171, 2007 WL 2446801, at *11 (S.D. Tex. Aug. 23, 2007) (Rosenthal, J.). Thus, to satisfy his burden, Plaintiff must show that Allied Universal did not genuinely believe that he engaged in the misconduct which formed the basis for his termination.

13

The videos discovered on August 4, 2025 demonstrate unequivocally that Plaintiff violated the Company's Use of Force policy on April 4, 2022 when he detained and handcuffed an individual who had presented no threat to him or others without any effort to deescalate the situation. The videos were viewed at the time of the incident by Allied Universal employee Alexzander Bergeron, who then provided the Use of Force Panel with an account of what he saw. (ECF No. 27-3, p.14; 27-10, ¶¶6-8; 27-12, ¶6.) The information Alexzander Bergeron reported was included in the incident reporting documents used and considered by the Use of Force Review Panel in determining Plaintiff's violation of company policy. *Id*. Under these circumstances, Plaintiff cannot establish that Allied Universal's decision to terminate his employment was pretext for unlawful retaliation.

## IV.    MITIGATION OF DAMAGES.

### A.    Plaintiff Has Not Made Reasonably Diligent Efforts To Obtain Substantially Equivalent Employment.

It is well established that a plaintiff has a duty to mitigate his damages. *Rutherford v. Harris Cnty.*, 197 F.3d 173, 191 (5th Cir. 1999). A plaintiff must use "reasonable diligence" to secure substantially equivalent employment following termination. *Vaughn v. Sabine Cnty.*, 104 F. App'x 980, 984 (5th Cir. 2004). Substantially equivalent employment "affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). Although the

14

burden is on the employer to prove a failure to mitigate, once it establishes that the plaintiff has not made reasonable efforts to obtain work, it is relieved of its obligation to also establish the availability of substantially equivalent employment. *Id.* (citations omitted).

The duty to mitigate is not met by using reasonable diligence to obtain *any* employment; rather, Plaintiff must use reasonable diligence to obtain "substantially equivalent" employment. *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990). The effort made "must represent an honest effort to find substantially equivalent work." *Nabors Drilling*, 330 F.3d at 394 (citation omitted). Plaintiff's discovery responses demonstrate that he has not used reasonable diligence to obtain substantially equivalent employment. Specifically, in response to Allied Universal's Interrogatory Nos. 6 and 11 seeking the identification of all people and entities from whom he received compensation and with whom he held employment, Plaintiff identified working only for DoorDash, Inc. as an independent contractor.

At Plaintiff's deposition, he testified consistently with his interrogatory response that the only company where he has worked after his separation from Allied Universal on April 4, 2022, was DoorDash on a part-time basis. Furthermore, in response to Allied Universal's Request for Production No. 3 seeking the production of all documents demonstrating Plaintiff's efforts to seek employment after his termination, Plaintiff produced documents for applications made between March

2024 and July 2024, approximately two years after his termination of employment from Allied Universal. Plaintiff's supplemented wage records include an earned total income in 2022 of $16,825.03 ($10,589.25 of which was earned while employed by Allied Universal) and an earned total income in 2023 of $7,100.46. In August 2025, Plaintiff further supplemented his wage records suggesting new employment with Securitas, with a hire date of January 28, 2025. These wage records reflect a total earnings year to date (as of July 10, 2025) of $11,466.38. In short, the evidence shows that Plaintiff did not make an honest and reasonably diligent effort to find substantially equivalent work.

## V.    PUNITIVE DAMAGES.

### A.    Plaintiff is Not Entitled to Punitive Damages.

Punitive damages may be awarded only if Plaintiff shows that Allied Universal acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). This standard is higher than the showing necessary for compensatory damages. *Smith v. Xerox Corp.*, 602 F.3d 320, 335 (5th Cir. 2010), *abrogated on other grounds*, *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). Importantly, "not every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless indifference." *Id*. (citation omitted). The "availability of punitive damages turns on the defendant's state of mind, not the nature of the defendant's egregious conduct." *Id*. The required

subjective inquiry "focuses on whether the employer at least discriminated in the face of a perceived risk that its actions will violate federal law." *Id*. Under the "good faith" exception, an employer "will not be liable for punitive damages based on the discriminatory actions of its managerial agents if those actions are contrary to the employer's good faith efforts to comply with Title VII." *Id*. (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 528 (1999)).

Allied Universal has undertaken widespread efforts in good faith efforts to combat discrimination, including: (i) a written policy prohibiting discrimination, including discrimination on the basis of race, ancestry, religion, and national origin; (ii) a complaint mechanism with multiple reporting avenues that permits employees to report discrimination (including anonymously); (iii) a zero-tolerance policy prohibiting retaliation against employees for making a complaint; (iv) mandated training for all personnel on the prevention and reporting of discrimination, which includes a test on which employees must achieve a passing score; and (v) mandated compliance with the Company's anti-discrimination and anti-retaliation policy as a condition for continued employment. (*See* ECF No. 27, pp. 10-11.) Furthermore, Plaintiff acknowledged receipt of these policies and agreed the application of the policy included everyone. (*Id*. at p. 11.) Accordingly, punitive damages are inappropriate.

## VI.  **ALTERNATIVE THEORY – MIXED-MOTIVE.**

### A.  **Allied Universal's Legitimate Nondiscriminatory Basis For Terminating Plaintiff, A Violation of Its Use of Force Policy, Standing Alone, Would Have Produced the Same Result.**

To establish a mixed-motive defense in an employment case, the employer must show that its legitimate explanation for its actions, standing alone, would have produced the same employment decision (i.e., Plaintiff's termination). *Garcia v. City of Houston*, 201 F.3d 672, 676 (5th Cir. 2000). The employer can prove a mixed-motive defense by a preponderance of the evidence by showing: (i) objective proof that the same decision would have been made; (ii) the legitimate reason was present at the time the decision was made; and (iii) that its legitimate reason, alone, would have produced the same result. *Id*. If an employer makes this showing, "the plaintiff's relief is limited to injunctive and declaratory relief, costs, and attorneys' fees." *Id*.

Allied Universal has a Use of Force Policy applicable to all security professionals. (ECF No. 27-2, ¶4.) The Use of Force Policy is published in Allied Universal's employee handbook and is available to all employees on the Company's intranet. (ECF No. 27-3, ¶3.) Plaintiff acknowledged receipt of the employee handbook upon hire and testified that he understood Allied Universal's policies applied to him (ECF 27-6, pp. 52:19-54:12; 85:19-21; ECF No. 27-8.) While employed, Allied Universal provided training to Plaintiff on its Use of Force Policy

(ECF No. 27-9, ¶3.) Allied Universal's Use of Force Policy is strictly enforced, and any unjustified force results in termination. (ECF No. 27-1, p. 89:5-12.) A violation of the Company's Use of Force Policy is a legitimate reason for Plaintiff's termination that was available at the time and would have produced the same result. *Id*. Allied Universal consistently applies its Use of Force Policy and has terminated other employees for first offense violations. (ECF No. 27-18.) Accordingly, even if Plaintiff were able to establish that his race, ancestry, national origin, or religion were a motivating factor, his relief would be limited to injunctive and declaratory relief, costs, and attorneys' fees. *See* 42 U.S.C. § 2000e-5(g)(2)(B)(i).

## VII.    <u>CONCLUSION</u>.

Based on the foregoing, Allied Universal respectfully requests that judgment be entered for Defendant at trial.

Dated: October ___, 2025

Respectfully submitted,

**MARTENSON, HASBROUCK & SIMON LLP**

*/s/ Jessica E. Chang*
Jessica E. Chang, attorney-in-charge
(SDTX No. 3905098, IL6319080)
Nathan A. Shine (SDTX No. 3874604, IL6316753)
David C. Hamilton (Admitted PHV)
Martenson, Hasbrouck & Simon LLP
500 Davis Street, Suite 1010
Evanston, Illinois 60201
(224) 350-3127
jchang@martensonlaw.com

19

nshine@martensonlaw.com

-and-

Marty N. Martenson (Admitted PHV)
2573 Apple Valley Road NE
Atlanta, Georgia 30319
(404) 909-8100
mnmartenson@martensonlaw.com

*Counsels for Defendant Universal Protection Service, LP d/b/a Allied Universal Security Services*